The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19101

## Cover Sheet

Claimant Name: Barbara Clark

Claimid: 10996333

Dt.Of Birth: REDACTED

Claimant Age: 62

Dt. Of Disability: 08/20/2007

| No. | Document Type | Pgs | Lvl | ServiceFrom | ServiceTo | Physician Name | Diagnosis |
|---|---|---|---|---|---|---|---|
| 1 | Invoice | 4 | C | 07/14/2008 | | | |
| 2 | Miscellaneous Correspondence | 5 | C | 06/17/2008 | | | |
| 3 | Appeal Request | 5 | C | 06/02/2008 | | | |
| 4 | Physician's Note | 1 | C | 06/02/2008 | | | |
| 5 | Medical Records | 1 | C | 06/02/2008 | | | |
| 6 | Invoice | 4 | C | 02/25/2008 | | | |
| 7 | Medical Records | 7 | C | 02/14/2008 | | | |
| 8 | Appeal Request | 2 | C | 01/29/2008 | | | |
| 9 | Social Security Award Notice | 2 | C | 01/29/2008 | | | |
| 10 | Medical Records | 2 | C | 01/29/2008 | | | |
| 11 | Enrollment Cards | 2 | C | 11/05/2007 | | | |
| 12 | Job Description | 1 | C | 11/05/2007 | | | |
| 13 | Medical Records | 48 | C | 05/24/2006 | 08/24/2007 | Dr. Demetra Cox | |
| 14 | Invoice | 2 | C | 10/02/2007 | | | |
| 15 | Medical Records | 21 | C | 10/24/2006 | 09/05/2007 | Dr. Amy Shultz | |
| 16 | Claimant Statement | 2 | C | 09/12/2007 | | | |
| 17 | Medical Authorization | 1 | C | 09/12/2007 | | | |
| 18 | Tax Notice | 1 | C | 09/12/2007 | | | |
| 19 | Employer Statement - New | 2 | C | 09/12/2007 | | | |
| 20 | Attending Physician Statement - New | 3 | C | 09/12/2007 | | | |
| 21 | Miscellaneous Correspondence | 2 | C | 09/12/2007 | | | |

**EXHIBIT 1**

D 0001

# Facsimile



**The Prudential Insurance Company of America**
Tel
Fax

| To | claim | Fax Number | 8662858569 |
|---|---|---|---|
| From | Linda Nadzeika | Date | 07/14/2008 04:24:32 PM |
| Subject | Fw: Barbara Clark - 10996333 - Shavell - AODM Payes QME | Total Pages | |

**Comments:**

The information in this facsimile may be confidential, and is intended only for the use of the individual or entity addressed above. Any reader who is not the intended recipient of this communication, or an agent responsible for delivering it to the intended recipient, is strictly prohibited from disseminating, distributing, or duplicating it. If you have received this facsimile in error, please notify the sender by telephone immediately. Thank you.

From: Linda Nadzeika@PRUDENTIAL on 07/14/2008 04:24 PM
To: claim@8662858569@fax
cc:
Subject: Fw: Barbara Clark - 10996333 - Shavell - ADDENDUM QME

Linda Nadzeika CPS/CAP
Executive Assistant
DMS
973-548-5163
973-548-7690
----- Forwarded by Linda Nadzeika/GLDI/INST/Prudential on 07/14/2008 04:24 PM -----

D 0003

**"Janice Terrebrood"**
**<janicet@qmeime.com>**

Tue 06/17/2008 02:51 PM

To
   <Linda.nadzeika@prudential.com>

cc

Subject
   Barbara Clark - 10996333 - Shavell - ADDENDUM QME

**D 0004**



Qualified Medical Examiners, Inc.

June 17, 2008

Kim Boivin
The Prudential Insurance Co. of America
Disability Management Services
P.O. Box 13480
Philadelphia, PA 19101

# INVOICE

FOR PROFESSIONAL SERVICES
RE: Addendum Medical Record File Review
Claimant: Barbara Clark
Claim #: 10996333
Control #/Br: 80629 / 00001
Date of 06-16-2008
Physician: Joel Shavell, D.O.
Invoice #: 32964
QME Location: Southfield, Michigan

Addendum Medical Record File Review       $ 250.00
1 Hr. at $250.00

TOTAL AMOUNT DUE:                         $ 250.00

**TAX I.D. # 38-3399449**

Advance Building • 23077 Greenfield Road • Suite 245 • Southfield, MI 48075-3744
(248) 424-7200 • Fax (248) 424-5855 • E-mail: staff@qmeinc.com
www.qmeinc.com

D 0005

29 May, 2008

Kim Boivin
Prudential Insurance of America
p. O. Box 13480
Philadelphia PA 19176

This is to serve as an appeal to your disallowance dated February 22, 2008 of claimants appeal claim #10996333.

Be advised that I have studied your policy of LTD as set forth Group Benefits issued through Duncan Regional Hospital (S3) (80629-LTD-11) on page 10 of said manual "Titled long term disability coverage." It simply states that LTD occurs when 1) when you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury. 2) when you have 20% or more loss in your indexed monthly earnings due to that sickness or injury. It does not state a specific injury or disease.

You classify her job as medium duty and requiring lifting up to 50 pounds. Dr. Shults states under penalty of perjury that she cannot climb, no lifting over 1-10 pounds and then only 33% of the time. Her duties are not that of a nurse in a hospital where she would have access to a nurses aide or other type of help. She is a home care nurse and has no control over the type of sitting or environment the patients live in. These duties require climbing steps, moving patients around when needed, carrying supplies, walking various distances in inclement weather, snow and ice. In the event a patient falls out of bed or falls down she has to help the patient up. Her thought process is very limited and she at times cannot remember what she has done five minutes prior. She is simply in no condition to do any type of work. She is always fatigued and cannot walk or do the type of work required.

Statement in record by Doctor Amy Shults states that Mrs. Clark cannot do any type of gainful employment due to pain and fatigue, dated 5 September, 2007.

Your reviewing physician seems to ignore the disease that Mrs. Clark has stated in the record by attending board certified physician in rheumatology, Dr. Amy Shults. Does he feel that she is unqualified to determine the extend of her disease or sickness or simply incompetent?

The reviewing physician has never seen Mrs. Clark let alone examined her. It appears to me that he is basing his decision on diseases that she doesn't have or has alleged to have i.e. diabetes, high blood pressure etc., that causes her disability. In view of Mrs. Clark's condition, to believe she can perform in the capacity of a home care nurse is absolutely ridiculous.

D 0006

It has been well established that attending physicians statements receive more credibility than an evaluating physician that has no personal knowledge of the person being evaluated.

It is requested you adjudicate this claim in favor of claimant retroactive to the first submission of the claim.

I have been before many administrative law judges and arbitrators and I know of no sitting judge or arbitrator that would rule against the claimant Barbra Clark. There is not one shred of evidence that indicates Mrs. Clark can perform her usual job.

Trusting you will give this very close attention and consideration and render an honorable decision and save the trouble and expense of a law suit.

Thanking you in advance for careful review and consideration.

Respectfully submitted

O. D. Sanders
402 N. Main
Noble Ok 73068

Kim Boivin
Prudential Insurance of America          May 29, 2008
    PO Box 13480
Philadelphia, PA  19176


        This is to certify that I have
selected O.D. Sanders. 402 N Main St
Noble, Okla 73068, as my personal
representative to represent me in any
and all matters pertaining to appeal
of your disallowing my claim #10996333
on Feb 22, 2008.
        It is further requested that any
correspondence sent to me, a copy of
same be sent to my representative.


                Sincerely
                Barbara Diane Clark

D 0008

61

RESL <NUS

SS VjWS, 6A, 30506

ATTN: JOADDE HIGGINS

PRUDENTIAL INSURANCE COMPANY OF AMERICA

DIS #B5/L ITY MADRESS MGMT SERVICES

P.O. BOX 13480

PHILADELPHIA, PA, 19176

7006 2760 0002 8403 4885



U.S. POSTAGE
CUMMING, GA
30040
MAY 28 08
AMOUNT

$6.24
0002671-07

19176

6000

Ɗ 0010

6.2 2 002 Z7651 8/081*353/00/2/0 E005 2002

# Facsimile

 Prudential

**The Prudential Insurance Company of America**
Tel
Fax

| To | claim | Fax Number | 8662858569 |
|---|---|---|---|
| From | Dorothy Banda | Date | 02/14/2008 03:20:03 PM |
| Subject | Barbara Clark 10996333 QME Rheun FR report | Total Pages | 7 |

**Comments:**

The information in this facsimile may be confidential, and is intended only for the use of the individual or entity addressed above. Any reader who is not the intended recipient of this communication, or an agent responsible for delivering it to the intended recipient, is strictly prohibited from disseminating, distributing, or duplicating it. If you have received this facsimile in error, please notify the sender by telephone immediately. Thank you.

From:    Dorothy Banda@PRUDENTIAL on 02/14/2008 03:20 PM
To:      claim@8662858569@fax
cc:      Kimberly Boivin/GLDI/INST/Prudential@Prudential, Tara L Johnson/GLDI/INST/Prudential@Prudential
Subject: Barbara Clark 10996333 QME Rheun FR report



February 11, 2008


Kim Boivin
The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480
Philadelphia, PA 19101


RE:   Claimant:            Barbara Clark
      Claim Number:        10996333
      Control #/Br:        80629 / 00001
      Date of Birth:       REDACTED

Dear Ms. Boivin:

This is a Medical Records File Review on Ms. Barbara Clark, who is a 60-year-old LPN whose reason for claiming disability is upper and lower extremity pain discomfort associated with undifferentiated connective tissue disease, fibromyalgia, with significant hypertension, hyperlipidemia, and diabetes. Long-term benefits were disallowed because the medical opinion did not support degrees of impairment which would preclude her from performing her own occupation. I was asked to review the medical information that was given to me and offer an opinion on Ms. Clark's situation and answer the questions that have been given before me.

The records reviewed included but were not limited to the following:

- The SOAP notes on November 5, 2007, by Claim Manager Steven Malenfant, R.N.,
- I read the SOAP notes by Kimberly Boivin, claim manager, January 30, 2008.
- I read the Group Disability Insurance statements from Prudential Financial.
- Medical records from Demetra Cox, dated May 24, 2006.
- Labs on September 12, 2006.
- The notes from McBride Orthopedics, which primarily is Amy Schultz, M.D.
- Lab tests dated October 2, 2006.
- Medical records to Dr. Schultz, from Dr. Cook on October 24, 2006,
- Dr. Cox's notes of March 2, 2007; March 30, 2007; July 30, 2007.

Advance Building * 23077 Greenfield Road * Suite 245 * Southfield, MI 48076-3744
(248) 424-7200 * Fax (248) 424-5666 * E-mail slott@qmeinc.com
www.qmeinc.com
D 0013

RE: Barbara Clark
February 11, 2008
Page 2

- Additional lab work on the cholesterol and triglycerides.
- Reports from the Duncan Regional Hospital, and that was the myocardial stress study that was done on April 12, 2007.
- Additional lab work on August 2, 2007.
- Dated August 2, 2007, most recent lab, hemoglobin A1C 5, calculated blood glucose 79. The C-reactive protein also was 1.8.
- Screening mammogram August 24, 2007.
- Again, a report to Dr. Cook by Dr. Amy Schultz and lab work on October 24, 2006, which was a rheumatological profile lab.
- I read the last letter by Dr. Amy Clark to Dr. Barbara D. Clark.

QUESTIONS

1. *Based on the documentation reviewed, does the claimant have functional impairments from August 20, 2007, forward? If so, please list the functional impairments and the evidence supporting your opinion.*

Based on the documentation reviewed Ms. Clark does not have any functional impairment from August 20, 2007 forward.

2. *Please identify appropriate restrictions and/or limitations (sit, stand, walk, reach, lift, carry, perform repetitive and fine motor activities) based on any functional impairments you have noted. Please also note the duration of any applicable restrictions or limitations, temporary or permanent, and the evidence supporting your opinion if not elsewhere documented.*

I cannot identify any restrictions and/or limitations such as sitting, standing, walking, lifting, carrying, perform repetitive and fine motor activities.

3. *If medical records are indicating significant impairment, please comment on expected treatment, duration, and prognosis.*

The medical records do not indicate significant impairment. Therefore, there is no comment on treatment, duration, or prognosis.

RE: Barbara Clark
February 11, 2008
Page 3

*4. Is the claimant's self-reported chronic pain supported by and/or consistent with diagnostic testing and physical examination findings?*

There are no significant examination findings to support the self-reported chronic pain. She does give a history of pain in the shoulders and in the hips. Examinations by physicians pressing those points elicited pain. These are mainly subjective. There are no objective physical findings to support the pain manifestations that she is expressing.

*5. Do the medical records support significant adverse side effects, including cognitive deficit, or sedation, to any medication or combination of medications? Please specify which medications and for what time period providing evidence of your opinion.*

Review of the medical records does not support adverse side effects to include cognitive deficits or sedation from any medication or combination of medication.

*6. If you opine that the claimant is not functionally impaired, please provide a detailed explanation supporting your opinion.*

I will go according to the beginning of the records and how it was presented, which will give an opinion on all the things that were mentioned. One was the diabetes. She does not have diabetes. Lab work done recently, was hemoglobin A1C, which was 5. This is the most recent lab. The blood sugar was 79. This is not a diabetic. So diabetes is not a part of her disability. Two: hyperlipidemia. She has elevated cholesterol throughout the chart, elevated LDLs, very mild elevation. Her stress test was negative. There is no history of intermittent claudication. There are no examinations indicating bruits or any history of atherosclerotic disease. Therefore, she has mild hyperlipidemia. There are no sequelae as a result of it, and she can continue to function unlimited. As far as hypertension, she is mildly hypertensive. Blood pressure: Mostly systolic have been high, but she has had some where the diastolic has been 100, going through the charts. This is not limiting. This is a very mild hypertension, and she can continue to work and be monitored for blood pressure. She has no sequelae, no strokes, no heart disease, no claudication; nothing to indicate that she is limited as a result of her hypertension. The last is the undifferentiated connective tissue disease. Undifferentiated connective tissue disease is characteristic of collagen diseases which are a mix of lupus, rheumatoid arthritis, and scleroderma.

RE: Barbara Clark
February 11, 2008
Page 4

That is called undifferentiated collagen disease. What is seen on these diseases are 1) skin changes, hair loss, oropharyngeal ulcers, interstitial fibrosis of the lungs, persistent thick rashes, Raynaud's disease, ulcerations of the fingertips, severe arthritis, blood dyscrasias involving hemolytic anemias, anti clotting, anti phospholipid antibodies, renal disease with elevated BUN (blood urea nitrogen), creatinines, or combinations thereof. Any multiple combinations of these findings with positive laboratory results would indicate that the claimant had an undifferentiated connective tissue disease. Dr. Amy Schultz did a rheumatoid profile on October 24, 2006, which was negative except for a low titer ANA. Her results were not indicative of an undifferentiated connective tissue disease. In reviewing these charts, from Dr. Schultz in particular, I found her statements from her reports to Dr. Clark and Dr. Cox were that she had fibromyalgia most likely. I reviewed the laboratory work. The SED rates were 9 and 32, which is normal for her age group and weight. I would expect it to go even as high as 40, 45 would not be a spectacular SED rated elevation. There are no abnormal renal functions. There are no abnormal pulmonary functions. There are no abnormal cardiac functions. There is no report of severe arthritis or synovitis in any of her reports. There are no reports of Raynaud's, ulcers, sclerodactyly, and the list goes on and on. In other words, there is no differential diagnosis that would be involved in diagnosing an undifferentiated connective tissue disease. It is nonexistent in this claimant's medical history. She did have an ANA which is positive, which is 1/320. It is still not significant. It could go as high as 1/2500 and still not be significant if there are no signs and symptoms or changes that one can classify in an undifferentiated connective tissue disease. In other words, you cannot take a lab test without physical findings and make yourself a diagnosis. The C-reactive protein also was 1.8, which is certainly not significant. If you want the date of the myocardial scan, it is April 12, 2008. Her hemoglobin A1C was August 2, 2007.

Based on the information available, she has mild hyperlipidemia, hypertension without sequelae; she has no diabetes, and she has nothing physically, historically, or laboratory wise, to make a diagnosis of undifferentiated connective tissue disease.

Based on the records that I have reviewed this claimant is not functionally impaired.

RE: Barbara Clark
February 11, 2008
Page 5


Thank you for this referral. If you should require any further information, please
feel free to contact me at the offices of Qualified Medical Examiners, Inc.

Sincerely,

Joel M. Shavell, D.O.
Diplomate, American Board of Internal Medicine
Diplomate, American Board of Rheumatology

JMS/dcs  10-00956471.doc

# Facsimile

 **Prudential**

**The Prudential Insurance Company of America**
Tel
Fax

| To | claim | Fax Number | 8662858569 |
|---|---|---|---|
| From | Dorothy Banda | Date | 06/17/2008 04:47:32 PM |
| Subject | Barbara Clark 10996333 QME Rheum Addendum report | Total Pages | 5 |

**Comments:**

The information in this facsimile may be confidential, and is intended only for the use of the individual or entity addressed above. Any reader who is not the intended recipient of this communication, or an agent responsible for delivering it to the intended recipient, is strictly prohibited from disseminating, distributing, or duplicating it. If you have received this facsimile in error, please notify the sender by telephone immediately. Thank you.

**D 0018**

From:     Dorothy Banda@PRUDENTIAL on 06/17/2008 04:47 PM
To:       claim@8662858589@fax
cc:       Kimberly Boivin/GLDI/INST/Prudential@Prudential
Subject:  Barbara Clark 10996333 QME Rheum Addendum report

D 0019



## QME
Qualified Medical Examiners, Inc.

June 16, 2008

Kim Boivin
The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480
Philadelphia, PA 19101

RE:   Claimant:            Barbara Clark
      Claim Number:        10996333
      Control #/Br:        80629 / 00001
      Date of Birth:       REDACTED

Dear Ms. Boivin:

I am in receipt of additional medical records on Ms. Barbara Clark.  I had done a Medical Record File Review on Ms. Barbara D. Clark back on February 11, 2008.

I have reviewed all of my previous reports and looked at the additional medical records that were given to me, which included:

- A letter to Kim Boivin, Prudential Insurance Company of America, by Mr. O.D. Sanders, whom I believe is an attorney.

- I reviewed Barbara D. Clark's letter of appeal to Kim Boivin.

- I reviewed a letter dated March 24, 2008, by Dr. Demetra Cox, M.D.

- I reviewed a home care letter written by Anita Frogge, R.N./B.C., Clinical Supervisor of the Home Care Department of Duncan Regional Hospital.

Advance Building • 23077 Greenfield Road • Suite 245 • Southfield, MI 48075-3744
(248) 424-7200 • Fax (248) 424-5656 • E-mail staff@qmeinc.com
www.qmeinc.com

D 0020

RE: Barbara D. Clark
June 16, 2008
Page 2

## QUESTIONS

Based on these reports, I will answer the questions that you have put forth:

> 1. *Does review of the attached documentation alter your prior assessment?*
>    *If so, please detail how and why this alters your assessment, providing*
>    *information supporting your opinion.*

Reviewing the attached documentation does not alter my prior assessment.

> 2. *If review of the attached documentation does not alter your prior*
>    *assessment, please explain why not.*

The information that I received primarily includes a report to Kim Boivin by O.D. Sanders, whom I believe is an attorney, and this provides no additional information. The letter by Dr. Demetra Cox that I reviewed says really nothing that shows any reason for the disability and basically gives an opinion. Thirdly, I read the report by Anita Frogge, R.N./B.C., dated 05/19/08, and these are basically opinions on some observations that she has made stating that due to muscle work fatigue, weakness, and joint pain, they reduced Ms. Clark's hours, and then finally, Ms. Clark was unable to go past noontime and was not able to spend the necessary time or the energy to perform home care; this was basically her letter.

Then I reviewed my own report and found no changes at all from my previous assessment. The interesting thing is that there was no work capacity evaluation or functional capacity evaluation was done by anybody, and this could be done by PT to assess her work capacity, or OT, depending on which group could best do it, and this would at least provide some information that might be beneficial. Other than that, there is no medical reason or physical reason that is objectively established which demonstrates that she is totally disabled or unable to work.

D 0021

RE: Barbara D. Clark
June 16, 2008
Page 3


Thank you for this referral.  If you should require any further information, please
feel free to contact me at the offices of Qualified Medical Examiners, Inc.

Sincerely,

Joel M. Shavell, D.O.
Diplomate, American Board of Internal Medicine
Diplomate, American Board of Rheumatology

JMS/sjt          10-01122570.doc

*0*

*APPER EX 2*

# DUNCAN FAMILY PHYSICIANS, PC
## Demetra Cox, MD   Mathew Ivory, MD
### William Stewart, MD
#### 1324 Harville Road
#### Duncan, Oklahoma 73533
#### 580-252-1373

March 24, 2008

Re: Ms. Barbara Dianne Clark

To Whom It May Concern:

Mrs. Clark is a patient of mine with fibromyalgia. She applied for disablility and my records were reviewed. I made an error in saying that she retired from her job. She actually couldn't stand the pain from having to get in and out of her car. She was a traveling home health nurse and couldn't tolerate the pain and was also having such difficulty with concentration that she was scared she would make an error due to the medications she was required to take from the rhematologist for her fibromyalgia.

If you need any further information please contact my office.

Sincerely,

Demetra Cox, MD



D 0023

*APPeal Ex 1*



OF
DUNCAN
REGIONAL
HOSPITAL

5/19/08

Re: Barbara Dianne Clark

To Whom It May Concern,

Mrs. Barbara Dianne Clark was employed with Duncan Regional Hospital as an LPN from 08/06/1991 through 11/26/07. I was Dianne's direct supervisor for the last five years of her employment with our organization. At the time of Dianne's termination of employment she was unable to safely and successfully perform her job functions as an Licensed Practical Nurse.

Dianne began exhibiting an increase in problematic symptoms, which included fatigue, muscle weakness, and joint pain for approximately one year prior to her termination. We worked with Dianne during that time by being more flexible with her schedule, reducing the number of hours worked and adjusted the type of patients that she was assigned. Dianne was able to go to her home at noon and take a rest prior to finishing her day, when needed.

Unfortunately, Dianne's disease processes and previously mentioned symptoms continued to worsen and she began to experience significant memory problems to the extent that it was not safe for her to work in the role of an LPN, considering the critical thinking processes that are required to make safe decisions about patient care and medication administration.

Sincerely,

*Anita Frogge RN-BC*

Anita Frogge RN-BC
Clinical Supervisor
HomeCare Department
Duncan Regional Hospital

D 0024

# Facsimile

 Prudential

**The Prudential Insurance Company of America**
Tel
Fax

| To | claim | Fax Number | 8662858569 |
|---|---|---|---|
| From | Linda Nadzeika | Date | 02/25/2008 10:51:06 AM |
| Subject | Fw: Barbara Clark/10996333/Shavell/QME | Total Pages | 4 |

**Comments:**

The information in this facsimile may be confidential, and is intended only for the use of the individual or entity addressed above. Any reader who is not the intended recipient of this communication, or an agent responsible for delivering it to the intended recipient, is strictly prohibited from disseminating, distributing, or duplicating it. If you have received this facsimile in error, please notify the sender by telephone immediately. Thank you.

From:     Linda Nadzeika@PRUDENTIAL on 02/25/2008 10:51 AM
To:       claim@8662858569@fax
cc:
Subject:  Fw: Barbara Clark/10996333/Shavell/QME

Linda Nadzeika GPS/GAP
Executive Assistant
DMS
973-548-5163
973-548-7690
----- Forwarded by Linda Nadzeika/GLDI/INST/Prudential on 02/25/2008 10:51 AM -----

**"Janice Terrebrood"**
**<janicet@qmeime.com>**

Thu 02/14/2008 11:56 AM

To
    <Linda.nadzeika@prudential.com>
cc

Subject
    Barbara Clark/10996333/Shavell/QME



February 14, 2008

Kim Boivin
The Prudential Insurance Co. of America
Disability Management Services
P.O. Box 13480
Philadelphia, PA 19101

# INVOICE

FOR PROFESSIONAL SERVICES
RE: Medical Record File Review
Claimant: Barbara Clark
Claim #: 10996333
Control #/Br: 80629 / 00001
Social Sec. #: N/A
Employer: N/A
Date of Exam: 02-11-2008
Physician: Joel Shavell, D.O.
Invoice #: 32198
QME Location: Southfield, Michigan


Medical Record File Review                    $ 1,500.00
6 Hrs. at $250.00


TOTAL AMOUNT DUE                              $ 1,500.00

### TAX I.D. # 38-3399449

Advance Building • 23077 Greenfield Road • Suite 245 • Southfield, MI 48075-3744
(248) 424-7200 • Fax (248) 424-5555 • E-mail: staff@qmeinc.com
www.qmeinc.com                                              **D 0028**



**DUNCAN**
REGIONAL HOSPITAL
*Caring for Community*

1407 WHISENANT DR.
DUNCAN, OK 73533
(580)252-5300

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: **MICHAEL GREGORY** | FROM: **PATRICIA VAN DER BREGGEN** |
| COMPANY: **PRUDENTIAL** | DATE: **01/29/2008** |
| FAX NUMBER: **877-889-4885** | TOTAL NO. OF PAGES INCLUDING COVER: **6** |
| PHONE NUMBER: **800-842-1718** | SENDER'S PHONE NUMBER: **580-251-8838** |
| RE: **BARBARA D. CLARK #10996333** | SENDER'S FAX NUMBER: **580-251-8829** |

[X] URGENT    [ ] FOR REVIEW    [ ] PLEASE COMMENT    [ ] PLEASE REPLY    [ ] PLEASE RECYCLE

NOTES/COMMENTS:

PLEASE FIND THE ENCLOSED APPEAL LETTERS AS WELL AS MS. CLARK'S
APPROVAL FOR SOCIAL SECURITY DISABILITY.
PAT VAN DER BREGGEN
BENEFITS COORDINATOR
DUNCAN REGIONAL HOSPITAL

**\*\*CONFIDENTIALITY NOTICE\*\***

THE DOCUMENTS ACCOMPANYING THIS FACSIMILE TRANSMISSION CONTAIN CONFIDENTIAL
INFORMATION, BELONGING TO DUNCAN REGIONAL HOSPITAL, THAT IS LEGALLY PRIVILEGED. THIS
INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE.

IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE,
COPYING, DISTRIBUTION, OR ACTION TAKEN IN RELIANCE ON THE CONTENTS OF THESE DOCUMENTS IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE NOTIFY THE SENDER
IMMEDIATELY TO ARRANGE FOR RETURN OF THESE DOCUMENTS.

CO_2708

January 17, 2007

To whom it may concern;

    I am writing this in regards to the denial of my long term insurance benefits. I am a 60 year old woman who has wanted to be a nurse since I was a little girl. I had a "so-called" hospital/doctor's office set up on my porch, where I would play nurse to any doll, animal, sibling, or neighbor that I could. I know this is a ridiculous way to start a letter but I just want to show how much I loved being a nurse. I didn't get to go to nursing school until I was in my 40's and my three children were grown. My youngest daughter and I went to the nursing program together. I was so proud and happy. The past 16 years have been so rewarding and I felt so blessed to have a job that I loved. I never expected it to end so soon. The bouts of extreme pain, fatigue, insomnia and stiffness began approximately 1 1/2-2 years ago. The episodes became more frequent depending on my work schedule. Many weekends I would have 8-10 patients and barely time to break for lunch.

    When things were not getting better but seemed to be worse is when I began trying to determine what could be wrong. When I actually got the diagnosis after many tests I was relieved that I could begin treatment and begin to feel better. Over these 2 years I had to call in sick to work more and more often; requiring more time for my body to rest so I could finish out the work week. My patients were concerned with my increased limping, difficulty getting out of chairs, going up steps and getting out of the car. My legs have gotten so weak it was extremely difficult standing for any amount of time ( such as performing tedious wound care ). It became very hard for me to climb 2 or 3 stairs without the aid of handrails. I noticed my memory and concentration getting worse and that is when I became fearful I might cause injury to a patient. I began to doubt my ability to prefilling meds and syringes for patients and tedious wound care because I would catch myself having to repeat tasks or completely start over because I could not remember. It was very frustrating to forget names or words when speaking. I began having dizzy spells-yet still hoping it would get better. The 'good days' became fewer and far between and I began to realize I wasn't a physically or mentally strong nurse–this was very depressing. I would cry at the thought of not working or when discussing it with my family, Doctors, and boss. I was unable to tell my colleges at work that I was leaving until after I was gone. I just couldn't stand to say goodbye at that time. I didn't want to leave my job, my friends, or the patients I've known for years. I didn't want to leave the benefits that I had at the hospital–pharmacy benefits and health insurance. Since leaving work my memory has continued to decline where I have misplaced important documents, my billfold, and much-needed money.

    My decision to leave work was not a choice of convenience but one I made with the help of my Physician and my family and other health care professionals. It was a very depressing necessity. I would hope you could reconsider my request for long term insurance benefits. Thank you for your time;

Sincerely,
Dianne Clark

*Barbara Clark, 5547 RCP, 5/R*
*Claim No: 10996333*
*Control N: RR: 80629/0001*

# Social Security Administration
## Retirement, Survivors and Disability Insurance
Notice of Award

Mid-America Program Service Center
601 East Twelfth Street
Kansas City, Missouri 64106-2859
Date: January 20, 2008
Claim Number:  REDACTED

000076 MC5M76 N3  2.100

BARBARA D CLARK
5990 S 13TH
DUNCAN, OK 73533-8408

You are entitled to monthly disability benefits beginning February 2008.

### What We Will Pay And When

- You will receive $835.00 for February 2008 around March 12, 2008.

- After that you will receive $835.00 on or about the second Wednesday of each month.

- These and any future payments will go to the financial institution you selected. Please let us know if you change your mailing address, so we can send you letters directly.

The day we make payments on this record is based on your date of birth.

### Other Social Security Benefits

The benefit described in this letter is the only one you can receive from Social Security. If you think that you might qualify for another kind of Social Security benefit in the future, you will have to file another application.

### Your Responsibilities

You are due disability benefits because you are expected to be disabled under our rules for at least 5 full calendar months. Therefore, you should let us know if your health improves or you are able to return to work.

The decisions we made on your claim are based on information you gave us. If this information changes, it could affect your benefits. For this reason, it is important that you report changes to us right away.

Enclosure(s):
Pub 05-10153
Pub 05-10058

C                                    See Next Page

We have enclosed a pamphlet, "What You Need To Know When You Get Disability Benefits". It will tell you what must be reported and how to report. Please be sure to read the parts of the pamphlet which explain what to do if you go to work or if your health improves.

A provider of employment or vocational rehabilitation services may contact you about getting help to go to work. The provider may be a State vocational rehabilitation agency or a provider under contract with the Social Security Administration.

If you go to work, special rules allow us to continue your cash payments and health care coverage. For more information about how work and earnings affect disability benefits, call or visit any Social Security office and ask for the following publications:

- Social Security - Working While Disabled...How We Can Help (SSA Publication No. 05-10095).

- Social Security - If You Are Blind--How We Can Help (SSA Publication No. 05-10052).

## Do You Disagree With The Decision?

If you disagree with this decision, you have the right to appeal. We will review your case and consider any new facts you have. A person who did not make the first decision will decide your case. We will correct any mistakes. We will review those parts of the decision which you believe are wrong and will look at any new facts you have. We may also review those parts which you believe are correct and may make them unfavorable or less favorable to you.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an appeal.

- You have to ask for an appeal in writing. We will ask you to sign a Form SSA-561-U2, called "Request for Reconsideration". Contact one of our offices if you want help.

Please read the enclosed pamphlet, "Your Right to Question the Decision Made on Your Social Security Claim". It contains more information about the appeal.

## If You Want Help With Your Appeal

You can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

Claim No.: 10996333
Control No.: 1BR 80629/001



**McBride Clinic**
Orthopedics & Arthritis

December 27, 2007


RE:       BARBARA D. CLARK
CLAIM #:  10996333

To Whom It May Concern:

I am a board certified rheumatologist who takes care of Barbara Clark in arthritis clinic. This letter is in regards to the recent denial for her long-term disability benefits under group policy number 80629 issued from Duncan Regional Hospital. I have been seeing Mrs. Clark since October of 2006. At that time she suffered from diffuse pain in her muscles and her joints along with headaches, chronic fatigue, and insomnia. She, also, has a lot of joint pain with prolonged morning stiffness. She was found, on workup, to have a highly positive ANA, and I do indeed feel that she has an undifferentiated connective tissue disease. I also feel that she has significant fibromyalgia as outlined by the ACR criteria. These are both chronic illnesses, which have periods of exacerbations and remissions. The biggest problem with both of these conditions is severe profound fatigue. She has had, in the past, to miss many days of work secondary to fatigue and pain. She is a registered nurse and secondary to the chronic fatigue, the pain, and decreased ability to concentrate, she has not felt that it is safe to continue in her given profession. This makes her unable to perform many of the substantial duties of her occupation. She is currently on treatment for these conditions in an effort to make these symptoms better and more manageable. Due to the unpredictability of the symptoms, this makes it very difficult for her to work in any regular or predictable fashion. If you feel it necessary for her to undergo functional residual capacity testing in order to determine her fulfillment of your long-term disability criteria, then do so. However, I do not feel that it is necessary in this case.

Please do not hesitate to contact me with further questions.

Sincerely,

Amy Shultz, MD
AS/cmb  12/28/07

3700 36th Avenue NW • Norman, Oklahoma 73072 • 405.230.9600 • 405.230.9601 fax

www.mcbrideclinic.com

D 0033

Claim # 10996333
Control # Br. 80629/00001



**12/11/07 Barbara Dianne Clark**

**S:** Barbara is a 60-year-old in today to discuss her healthcare and her fibromyalgia. She has applied for disability and apparently there was a misunderstanding from one of my notes. I had understood her to say that she was going to be retiring because she really just couldn't stand the pain. Her concentration was becoming a problem. She was scared she was going to make a medication area because of the medications that she was required to take to control her pain, even though really she was still struggling physically she was also beginning to have some concentration and mental problems and therefore felt it was best to step down.

Dr. Schultz is really the one whose been following her for all of this but she needs a letter from me as well and I'd be happy to write that letter. I think there was just a misunderstanding of my note because when she told me she was stepping down I did not believe that it was just because she wanted to but more because she felt like she had to because of the physical and mental limitations that she now has. So I will write that note on her behalf.

**A: 1.** Fibromyalgia.

**P: 1.** Will write letter and call her to pick up the letter.
**DC/kb**



**DUNCAN**
REGIONAL HOSPITAL
*Caring for Community*

1407 WHISENANT DR.
DUNCAN, OK 73533
(580)252-5300

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO:  MIKE GREGORY | FROM:  PATRICIA VAN DER BREGGEN |
| COMPANY:  PRUDENTIAL | DATE:  11/05/2007 |
| FAX NUMBER:  877-889-4885 | TOTAL NO. OF PAGES INCLUDING COVER:  3 |
| PHONE NUMBER:  800-842-1718 | SENDER'S PHONE NUMBER:  580-251-8838 |
| RE:  BARBARA DIANNE CLARK #10996333 | SENDER'S FAX NUMBER:  580-251-8829 |

[X] URGENT  [ ] FOR REVIEW  [ ] PLEASE COMMENT  [ ] PLEASE REPLY  [ ] PLEASE RECYCLE

NOTES/COMMENTS:

COPIES AS REQUESTED.  PLEASE LET ME KNOW IF YOU NEED ADDITIONAL
INFORMATION
PATRICIA VAN DER BREGGEN
BENEFITS COORDINATOR
DUNCAN REGIONAL HOSPITAL

**\*\*CONFIDENTIALITY NOTICE\*\***

THE DOCUMENTS ACCOMPANYING THIS FACSIMILE TRANSMISSION CONTAIN CONFIDENTIAL
INFORMATION, BELONGING TO DUNCAN REGIONAL HOSPITAL, THAT IS LEGALLY PRIVILEGED. THIS
INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE.

IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE,
COPYING, DISTRIBUTION, OR ACTION TAKEN IN RELIANCE ON THE CONTENTS OF THESE DOCUMENTS IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE NOTIFY THE SENDER
IMMEDIATELY TO ARRANGE FOR RETURN OF THESE DOCUMENTS.

D 0035

CO 2706

**The Prudential**

**Group Coverage Enrollment and Record Card**

The Prudential Insurance Company of America

| Office use only Effective date | Social Security No. (or Certificate No.) REDACTED | Your name (Please print) Last Clark | First Barbara | Middle initial D |
|---|---|---|---|---|

| ☐ Male ☒ Female | Date of birth Month Day Year REDACTED | Date employed Month Day Year 91 | ☐ Single ☒ Married ☐ Widowed ☐ Divorced | Clock or Check No. | Occupation LPN | Department Homecare |

Is dependent coverage desired? ☐ Yes ☐ No    If yes, my dependent coverage is for: ☐ Spouse only    Spouse's birth date Month Day Year

☐ Spouse and children    ☐ One child    ☐ Two or more children

**Insurance Benefits – According to Plan**

| Employee Life | | | |
|---|---|---|---|
| Acc. Death & Dismemberment | | Weekly Dis. Income Benefit | |
| Long Term Dis. Mo. Benefit | | Medical Care | ☐ Employee ☐ Dependent |

My Beneficiary: Print (Example: Mary A. Doe, not Mrs. A. Doe)

| First Name Lex | Middle initial R | Last name Clark | Relationship Spouse |
|---|---|---|---|

If more than one beneficiary is designated, settlement will be made in equal shares to each of the designated beneficiaries (or beneficiary) as survive the insured, unless otherwise provided herein. If no designated beneficiary survives the insured, settlement will be made to the estate of the insured, unless otherwise provided in the Group Contract.

If contributions are required under the Plan, I authorize my employer to deduct from my earnings until further notice my contributions for insurance under a contract issued by The Prudential.

Employer's name: Duncan Regional Hosp.

Sign above, Print your resident address below: Barbara D. Clark

Date signed: 10-7-97    RT.5 Box 493 E, Duncan, OK 93533

GRP-52553-WD    Ed 3-86

---

**Prudential**    5852

**Group Coverage Enrollment and Record Card**

The Prudential Insurance Company of America

| Office use only Effective date | Social Security No. REDACTED | Certificate No. | Your name (Please print) Last Clark | First Barbara | Middle initial D |
|---|---|---|---|---|---|

| ☐ Male ☒ Female | Date of birth Month Day Year REDACTED | Date employed Month Day Year 8 9 91 | ☐ Single ☒ Married ☐ Widowed ☐ Divorced | Clock or Check No. 846B | Occupation LPN | Department Homecare |

Is dependent coverage desired? ☐ Yes ☒ No    If yes, my dependent coverage is for: ☐ Spouse only    Spouse's b'th date Month Day Year    Spouse's S.S. #

☐ Spouse and children    ☐ One child: B.D. #    ☐ Two or more Children; S.S. Numbers of Children

**Insurance Benefits – According to Plan**

| Employee Life | | | |
|---|---|---|---|
| Acc. Death & Dismemberment | | Weekly Dis. Income Benefit | |
| Long Term Dis. Mo. Benefit | ✓ | Medical Care | ☒ Employee ☐ Dependent |

My Beneficiary: Print (Example: Mary A. Doe, not Mrs. J. Doe)

| First Name Lex | Middle initial R | Last name Clark | Relationship Spouse | S.S. No. | Can. Social Ins. No. |
|---|---|---|---|---|---|

If more than one beneficiary is designated, settlement will be made in equal shares to each of the designated beneficiaries (or beneficiary) as survive the insured, unless otherwise provided herein. If no designated beneficiary survives the insured, settlement will be made to the estate of the insured, unless otherwise provided in the Group Contract.

If contributions are required under this Plan, I authorize my employer to deduct from my earnings until further notice my contributions for insurance under a contract issued by The Prudential.

Employee's name: Barbara Dianne Clark

Sign above, Print your resident address below: Barbara Dianne Clark

Date signed: 12-26-01    RT.5 Box 493 B, Duncan, OK 73533

GRP-52553-WD    Ed 12-96 Litho in U.S.A.

Barbara Diane Clark
Claim # 10996333

# WORKSTEPS
## AUTHORIZATION FOR JOB SPECIFIC TESTING

DUNCAN REGIONAL HOSPITAL UNDERSTANDS THAT AN ERGONOMIC JOB ANALYSIS MUST BE COMPLETED IN ORDER TO MEET THE REQUIREMENTS FOR THE AMERICAN'S WITH DISABILITIES ACT (ADA). ONE OF THE OUTCOMES OF THE ERGONOMIC JOB ANALYSIS IS THE DETERMINATION OF ONE OR MORE SPECIFIC TESTS THAT WILL EITHER QUALIFY OR DISQUALIFY THE POST-OFFER OR POST EMPLOYMENT (FIT FOR DUTY) CANDIDATE FOR THE POSITION.

### FOR THE POSITION OF
### Home Health Care  RN / LPN (D.O.T. 075.124-014) and
### Home Health Care CNA / Private Duty Home Care Providers(D.O.T. 355.674-014)

THE COMPANY HEREBY ACKNOWLEDGES THE FOLLOWING AS VALID JOB SPECIFIC TESTS:

## JOB SPECIFIC TEST I
Capable of pushing/pulling a hospital bed, requiring 49 pounds of horizontal force at relative handle height.  Simulated on the LIDO Workset under protocol "DRHHHC."

## JOB SPECIFIC TEST II
Capable of transferring a 150 pound patient, with moderate assistance, from supine to a sitting position using acceptable body mechanics.

## JOB SPECIFIC TEST III
Capable of transferring a 150 pound patient, with moderate assistance, from sitting on a bed to a chair using acceptable body mechanics.

THE COMPANY REPRESENTATIVE HEREBY ACKNOWLEDGES THE FOLLOWING AS VALID PHYSICAL REQUIREMENTS:

1. EMPLOYEE LIFTS / CARRIES _50 lb._ OCCASIONALLY ( LESS THAN 33% OF THE TIME OR 1 - 100 TIMES PER DAY ).

2. EMPLOYEE LIFTS / CARRIES 25 lb. FREQUENTLY ( 34% - 66% OF THE TIME OR 100 - 500 TIMES PER DAY ).

3. EMPLOYEE LIFTS / CARRIES 10 lb.  CONSTANTLY ( 67% - 100% OF THE TIME OR OVER 500 TIMES PER DAY ).

4. EMPLOYEE'S POSITION REQUIRES PUSHING A MAXIMUM FORCE OF  _49 lbs._

5. EMPLOYEE'S POSITION REQUIRES PULLING A MAXIMUM FORCE OF  _49 lbs._

COMPANY:      DUNCAN REGIONAL HOSPITAL
ADDRESS:      1407 WHISENANT DRIVE
              DUNCAN, OKLAHOMA  73533

_Mark Rhodes_                                    _3/11/98_
DRH HUMAN RESOURCES DIRECTOR SIGNATURE    DATE

_Flo Stuckert RN C_                              _8/11/98_
DRH UNIT MANAGER SIGNATURE                 DATE

_____                                _3/12/98_
AUTHORIZED REPRESENTATIVE SIGNATURE       DATE

Barbara Diane Clark
Claim # 10991.332

D 0037

# Prudential  Financial

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Tel: 800-842-1718  Fax: 877-889-4885
http://www.prudential.com/inst/gldi

## Group Disability Insurance Authorization

**1** | **Claimant's Information**

First Name: BARBARA
MI: D
Last Name: CLARK

Social Security Number: REDACTED
Employee Phone Number: 580 252 1111
Control Number: 80629

**2** | **Authorization for Release of Information to Prudential Insurance Company**

This Authorization is intended to comply with the HIPAA Privacy Rule

I authorize any health plan, physician, health care professional, hospital, clinic, laboratory, pharmacy, medical facility, or other health care provider that has provided treatment, payment or services to me or on my behalf ("My Providers") to disclose my entire medical record and any other health information concerning me to the Prudential Insurance Company of America (Prudential) and its agents, employees, and representatives. This includes information on the diagnosis or treatment of Human Immunodeficiency Virus (HIV) infection and sexually transmitted diseases. This also includes information on the diagnosis and treatment of mental illness and the use of alcohol, drugs, and tobacco, but excludes psychotherapy notes.

I authorize any insurance company, employer, the Social Security Administration, or other person or institutions to provide any information, data or records relating to my Social Security, Workers' Compensation, credit, financial, earnings, activities or employment history to Prudential.

Unless limits* are shown below, this form pertains to all of the records listed above.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this authorization and I instruct My Providers to release and disclose my entire medical record without restriction.

This information is to be disclosed under this Authorization so that Prudential may: 1) administer claims and determine or fulfill responsibility for coverage and provision of benefits; 2) obtain reinsurance; 3) administer coverage; and 4) conduct other legally permissible activities that relate to any coverage I have or have applied for with Prudential.

This authorization shall remain in force for 24 months following the date of my signature below, while the coverage is in force, except to the extent that state law imposes a shorter duration. A copy of this authorization is as valid as the original. I understand that I have the right to revoke this authorization in writing, at any time, by sending a written request for revocation to Prudential at: P.O. Box 13480, Philadelphia, PA 19176. I understand that a revocation is not effective to the extent that any of My Providers has relied on this Authorization or to the extent that Prudential has a legal right to contest a claim under any insurance policy or to contest the policy itself. I understand that any information that is disclosed pursuant to this authorization may be redisclosed and no longer covered by federal rules governing privacy and confidentiality of health information.

I understand that if I refuse to sign this authorization to release the entire medical record, Prudential may not be able to process my claim for benefits and may not be able to make any benefit payments. I understand that I have the right to receive a copy of this authorization.

*Limits, if any:

X _Barbara Dianne Clark_
Employee Signature (indicate how related if signed by other than claimant)

Date (MM DD YYYY): 09 06 2007

**NOTICE TO MONTANA RESIDENTS:** You or your authorized representative are entitled to receive a copy of this Authorization, and upon request, a record of any subsequent disclosures of personal or privileged information.

Prudential Financial and the Rock logo are registered service marks of The Prudential Insurance Company of America and its affiliates.

# MediConnect Request Information Sheet

## Request General Information

| | |
|---|---|
| Request ID: | E997-132213 |
| Date Received: | 10/8/2007 11:45:39 AM |
| Date Completed: | 10/23/2007 2:56:02 PM |
| Request Status: | RESEARCH |
| Request Type: | MEDICAL |
| Dates of Service: | Records from 09-01-2006 to 09-28-2007 (On-site and unarchived only.) |
| Instructions: | All records for time specified. |

## Patient Information

| | |
|---|---|
| Patient Name: | Clark, Barbara D |
| Patient DOB: | REDACTED |
| Patient SSN: | REDACTED |
| Policy #: | 10996333-2-1 |

## Request Location

| | |
|---|---|
| Location: | DR. DEMETRA COX |
| Address: | 1324 HARVILLE ROAD |
| | DUNCAN, OK 73533 |
| Phone: | 580-252-1373 |

## Requestor Information

| | |
|---|---|
| Requesting Agent: | Gregory, Jr.,  ALIIC, Michael |
| Phone: | 800-842-1718x4597 |

Name: CLARK,BARBARA DIANNE    Loc: OP
Acct: 000013267367    Dob: REDACTED Sex: F
Unit No: 012040    Status: REG REF
Attend Phys: COX,DEMETRA
Family Phys: COX,DEMETRA
Order Phys: COX,DEMETRA
Exam Date: 08/24/2007    Rad No: 58531

| EXAM# | STATUS | TYPE/EXAM | RESULT |
|---|---|---|---|
| 000189407 | S | RAD/SCREENING MAMMO EMPLOYEE | |

SCREENING MAMMOGRAM; 08/24/2007

DX AND CC: 59-year-old female here for annual screening mammogram.

COMPARISON: 09/21/2006.

FINDINGS:
CC and MLO mammograms of both breasts demonstrate heterogeneously
dense breast parenchyma with benign calcifications. No new masses,
skin thickening, or architectural distortion appreciated. No
suspicious microcalcifications seen.

IMPRESSION
BI-RADS 2; BENIGN FINDINGS.

RECOMMENDATION: RECOMMEND CONTINUED ANNUAL SCREENING MAMMOGRAPHY.

THE STUDY WAS INTERPRETED USING R2 COMPUTER ASSISTED DETECTION.


Transcribed by Medical Data Services, Inc./lkd


           ** REPORT SIGNATURE ON FILE 08/28/2007 **
           Reported By: UZQUIANO M.D.,NELSON
           Signed By: UZQUIANO M.D.,NELSON

CC: COX,DEMETRA
Technologist: RODEN,KAREN
Transcribed Date/Time: 08/27/07 (2122)
Transcriptionist: MR-LD
Printed Date/Time: 08/28/07/0930

D 0040

Patient: CLARK, BARBARA DIANNE       Room#:       OP       Status: REG REF    Admit: 08/02/07
Age/Sex: 59/F                  MR#: 012040        Fam Phys: COX, DEMETRA
  DOB: REDACTED              Acct#: 000013275025   Other Phys:

Specimen: 0802:C00053R      Collected: 08/02/07-0826    Ord Phys: COX, DEMETRA
                            Received: 08/02/07-1001
Ordered: COM MET PANEL-E, LIPID PANEL-E
     [ H = High  L = Low  ** = Abnormal  * = Critical  # = Significant Change ]

| Test | Result | Abnormal | Flag | Reference Ranges |
|---|---|---|---|---|
| *COM MET PANEL-E* | | | | |
| *LIPID PANEL-E* | | | | |
| Sodium | 137 | | | 135-147 mEq/L |
| Potassium | 4.1 | | | 3.5-5.1 mEq/L |
| Chloride | 102 | | | 98-108 mEq/L |
| Carbon Dioxide | 26 | | | 24-32 mEq/L |
| Glucose | 85 | | | 70-100 mg/dL |
| Bun | | 19 | H | 7-18 mg/dL |
| Creat. (Serum) | 0.61 | | | 0.50-0.90 mg/dL |
| Bun/Creat Ratio | | 31 | H | 8-29 Ratio |
| Anion Gap | 9 | | | 1-16 mEq/L |
| SGOT (AST) | 14 | | | 0-31 U/L |
| SGPT (ALT) | 15 | | | 0-30 U/L |
| Alkaline Phos | 62 | | | 39-117 U/L |
| Total Bilirubin | 0.4 | | | 0.15-1.2 mg/dL |
| Calcium | 9.1 | | | 8.2-10.2 mg/dL |
| Corrected CA | 9.0 | | | 8.2-10.2 mg/dL |
| Total Protein | 6.8 | | | 6.3-8.0 g/dL |
| Albumin | 4.1 | | | 3.4-5.0 g/dL |
| Globulin | 2.7 | | | 2.0-4.0 g/dL |
| A/G Ratio | 1.5 | | | 1.1-2.4 Ratio |
| Triglycerides | | 173 | H | 40-150 mg/dL |
| Cholesterol | | 224 | H | 100-200 mg/dL |
| HDL Cholesterol | 54 | | | > 50 mg/dL |
| LDL -Calculated | 136 | | | mg/dL |

> *LDL-Cholesterol GOAL TABLE*
> *<160  mg/dL- Without CHD and with 0-1 risk factors*
> *<130  mg/dL- Without CHD and with 2 or more risk factors*
> *<=100 mg/dL- With CHD*
> *< 70  mg/dL- Goal for very high-risk patient (CHD plus*
> *  diabetes, or continued smoking, or metabolic syndrome)*

| Test | Result | Abnormal | Flag | Reference Ranges |
|---|---|---|---|---|
| LDL/HDL Ratio | 2.5 | | | 2.0-3.0 Ratio |
| VLDL Fraction | 35 | | | 6-35 mg/dL |
| Chol/HDL Ratio | 4.1 | | | 3.1-5.0 Ratio |

D 0041

Patient: CLARK,BARBARA DIANNE      Room#:    OP        Status: REG REF    Admit: 08/02/07
Age/Sex: 59/F                   MR#: 012040        Fam Phys: COX,DEMETRA
   DOB: REDACTED              Acct#: 000013275025    Other Phys:

Specimen: 0802:H00061R      Collected: 08/02/07-0826   Ord Phys: COX,DEMETRA
                             Received: 08/02/07-1001
Ordered:   [CBC]-E
       [ H = High  L = Low  ** = Abnormal  * = Critical  # = Significant Change  ]

| Test | Result | Abnormal | Flag | Reference Ranges |
|---|---|---|---|---|
| [CBC]-E | | | | |
| [HEMOGRAM] | | | | |
| WBC | 8.6 | | | 4.8-10.8 10x3/uL |
| RBC | 5.24 | | | 4.20-5.40 10x6/uL |
| Hgb | 15.1 | | | 12.0-16.0 g/dL |
| Hct | 45.5 | | | 37.0-47.0 % |
| MCV | 86.8 | | | 81.0-99.0 fL |
| MCH | 28.8 | | | 27.0-33.0 pg |
| MCHC | 33.2 | | | 31.0-35.0 g/dL |
| RDW | 13.5 | | | 11.5-14.5 % |
| Platelets | 172 | | | 130-400 10x3/uL |
| MPV | | 13.5 | H | 8.4-12.0 fL |
| [DIFF %] | | | | |
| Neutrophil | 62.5 | | | 40-75 % |
| Lymphocyte | 28.4 | | | 20-45 % |
| Monocyte | 5.9 | | | 2-10 % |
| Eosinphil | 2.7 | | | 0-6 % |
| Basophil | 0.5 | | | 0-1 % |
| NRBC | 0 | | | 0-10 /100WBC |
| Smear Review? | Not Required | | | |

D 0042

```
Patient: CLARK,BARBARA DIANNE      Room#:     OP      Status: REG REF   Admit: 08/02/07
Age/Sex: 59/F                    MR#: 012040          Fam Phys: COX,DEMETRA
   DOB: REDACTED               Acct#: 000013275033   Other Phys:
```

```
Specimen: 0802:CH00016R    Collected: 08/02/07-0826    Ord Phys: COX,DEMETRA
                           Received: 08/02/07-0950
Ordered: HEMOGLOBIN A1C
        [ H = High  L = Low  ** = Abnormal  * = Critical  # = Significant Change ]
```

| Test | Result | Abnormal | Flag | Reference Ranges |
|------|--------|----------|------|------------------|
| *HEMOGLOBIN A1C* | | | | |
| [HGB A1C] | 5.0 | | | 4.4-6.4 % A1C |
| Calc Blood Gluc | 79 | | | mg/dl |

D 0043

8/20/07 Barbara Diane Clark
252-7111

Will you increase xanax
.25mg to 3 daily
retired & is anxious

AUDRA COOK, M.D.
DEMETRA COX, M.D.
JAMIE HOKETT, M.D.
MATHEW IVORY, M.D.
WILLIAM STEWART, M.D.

RCPH Barbara Clark
Xanax 0.25mg
#90
Tpo TID prn

Cox

DEMETRA COX, M.D.
JAMIE HOKETT, M.D.
MATHEW IVORY, M.D.
WILLIAM STEWART, M.D.

AUG

D 0044

RUN DATE: 08/19/07
RUN TIME: 0933
RUN USER: Z-CMK

ICAN REGIONAL NPR PHARMACY
HA CLINICAL INTERVENTION

PAGE 1

PATIENT: CLARK,BARBARA DIANNE    ACCT #: P001872    LOC: MXEMR    H #: P001866
AGE/SX: 69/F    ROOM:    REG: 11/15/98
REG DR: CROW,THOMAS R    STATUS: REG RX    BED:    DIS:

**STATUS:** RESOLVED    RESOLVED INTERVENTION    **START:** 08/19/07 0932
**TYPE:** REFILL    TEAM MEMBER REFILL REQUEST    **USER:** Z-CMK    **MR FORM?** N
    **WL FUNCTION:**    **CNT:**

| **STAFF TYPE** | **STAFF MEMBER** |
| --- | --- |
| P | CODE    COX,DEMETRA |

| **DRUG** | **GENERIC** | **CLASS** | **KEYWORD** | **RELATED Rx** |
| --- | --- | --- | --- | --- |
| | | | REFILL | |

**SEVERITY:** NA    NOT APPLICABLE

**TEXT:**

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S).  PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY.  THANK YOU.

MED,SIG AND QTY: NEURONTIN 300MG # 90 1 PO TWO TO THREE TIMES DAILY
            LAST FILLED 11/28/06

        OK TO REFILL: (YES) or  NO    AND    # OF ADDITIONAL REFILLS: 1 yr

AUTHORIZING SIGNATURE: _Cox wo_____ DATE: _8/20/07_

COMMENTS: _____

_____

_____

**LAST EDIT:** 08/19/07 0933 by Z-CMK



FAXED
AUG 2 0 2007
10:12 PM

D 0045

Patient: CLARK, BARBARA DIANNE        Room#:     OP          Status: REG REF     Admit: 08/02/07
Age/Sex: 59/F                     MR#: 012040        , Fam Phys: COX, DEMETRA
     DOB: REDACTED                Acct#: 000013275025      Other Phys:

Specimen: 0802:SC00009R        Collected: 08/02/07-0826       Ord Phys: COX, DEMETRA
                               Received: 08/02/07-1001
Ordered:  TSH-E
     [  H = High  L = Low  ** = Abnormal  * = Critical  # = Significant Change  ]

| Test | | Result | | Abnormal | Flag | Reference Ranges |
|------|---|--------|---|----------|------|------------------|
| TSH-E | \| | 1.166 | \| | | \| | 0.350-4.940 uIU/ml |

D 0046

PATIENT: CLARK,BARBARA DIANNE          ACCT #: P001872     LOC: RXEMD        D #: P00196
                                       AGE/SX: 55/F         ROOM:            REG: 11/11/99
REG DR: CROW,THOMAS R                  STATUS: REG RCR      BED:             DIS:

STATUS: RESOLVED          RESOLVED INTERVENTION           START: 08/06/07 1701
TYPE:   REFILL            TEAM MEMBER REFILL REQUEST      USER:  Z-TMH         MR FORM? N
                                                         WL FUNCTION:          CNT:

**STAFF TYPE**      **STAFF MEMBER**
P                   CODE          COX,DEMETRA

**DRUG**            **GENERIC**       **CLASS**          **KEYWORD**          **RELATED Rx**
                                                         REFILL

SEVERITY: NA        NOT APPLICABLE

TEXT:

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S).  PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY.  THANK YOU.

MED,SIG AND QTY: XANAX 0.25MG  #30  LAST FILLED 7/9/07

            OK TO REFILL:  YES  or  NO     AND  # OF ADDITIONAL REFILLS:  2



AUTHORIZING SIGNATURE: _COX,mD_____  DATE: _8/8/07_

COMMENTS: _____

_____

_____

LAST EDIT: 08/06/07 1701 by Z-TMH



D 0047

```
RUN DATE: 08/06/07              DUNCAN REGIONAL NPR PHARMACY              PAGE 1
RUN TIME: 1703                  PHA CLINICAL INTERVENTION
RUN USER: Z-TMH
```

| PATIENT: CLARK,BARBARA DIANNE | ACCT #: P0018772 | LOC: RXEMP | U #: P00136 |
|---|---|---|---|
| | AGE/SX: 59/F | ROOM: | REG: 12/15/98 |
| REG DR: CROW,THOMAS E | STATUS: REG RCE | BED: | DIS: |

```
STATUS: RESOLVED      RESOLVED INTERVENTION       START: 08/06/07 1701
TYPE:   REFILL        TEAM MEMBER REFILL REQUEST  USER:  Z-TMH        MR FORM? N
                                                  WL FUNCTION:        CNT:
```

**STAFF TYPE**     **STAFF MEMBER**
P                  COAU        COOK,AUDRA KAY

**DRUG**           **GENERIC**      **CLASS**        **KEYWORD**        **RELATED Rx**
                                                     REFILL

**SEVERITY:** NA        NOT APPLICABLE

**TEXT:**

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S).  PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY.  THANK YOU.

MED,SIG AND QTY:  ULTRAM  #60  LAST FILLED 6/12/07

        OK TO REFILL:  YES  or  NO   AND   # OF ADDITIONAL REFILLS: 1YR

AUTHORIZING SIGNATURE: _Crow_     DATE: 8/7/07

COMMENTS: _____

_____

_____

**LAST EDIT:** 08/06/07 1702 by Z-TMH

FAXED

AUG 7 2007

```
RUN DATE: 02/05/07          DUNCAN REGIONAL NPR PHARMACY                    PAGE 1
RUN TIME: 0816                 PHA CLINICAL INTERVENTION
RUN USER: Z-CMK
```

PATIENT: CLARK,BARBARA DIANNE    ACCT #: P00187  LOC: INTEMD  U.#: P00186
                         AGE/SX: 59/F    ROOM:      REG: 11/15/99
REG DR: CROW,THOMAS R.    STATUS: REG ECK   BED:    DIS:

```
STATUS: RESOLVED      RESOLVED INTERVENTION            START: 02/05/07 0814
TYPE:   REFILL        TEAM MEMBER REFILL REQUEST       USER:  Z-CMK        MR FORM? N
                                                       WL FUNCTION:        CNT:


STAFF TYPE      STAFF MEMBER
P               COAU       COOK,AUDRA KAY


DRUG            GENERIC         CLASS           KEYWORD           RELATED Rx
                                                REFILL


SEVERITY: NA      NOT APPLICABLE

TEXT:

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S).  PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY.  THANK YOU.

MED,SIG AND QTY: ULTRAM 50MG # 60 TAKE 102 TABS PO Q4-6H PRN
                 LAST FILLED 12/26/07

           OK TO REFILL:   YES or  NO    AND   # OF ADDITIONAL REFILLS:  3

AUTHORIZING SIGNATURE: _____      DATE: 2/5/07

COMMENTS: _____

_____

_____

LAST EDIT: 02/05/07 0815 by Z-CMK
```



Date: 2/5/2007 Time 8:17:58 AM

RUN DATE: 02/05/07      DUNCAN REGIONAL NPR PHARMACY         PAGE 1
RUN TIME: 0816            PHA CLINICAL INTERVENTION
RUN USER: Z-CMK

PATIENT: CLARK, BARBARA DIANNE     ACCT #: P001872     LOC: RXEMP     D #: P00136
                            AGE/SX: 59/F       ROOM:      REG: 1/11/98
REG DR: CROW, THOMAS R          STATUS: REG-RCR     BED:       DIS:

STATUS: RESOLVED      RESOLVED INTERVENTION         START: 02/05/07 0815
TYPE:    REFILL         TEAM MEMBER REFILL REQUEST     USER:   Z-CMK     MR FORM? N
                                                    WL FUNCTION:          CNT:

**STAFF TYPE**      **STAFF MEMBER**
P             CODE        COX, DEMETRA

**DRUG**          **GENERIC**         **CLASS**         **KEYWORD**         **RELATED Rx**
                                                    REFILL

SEVERITY: NA       NOT APPLICABLE

TEXT:

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S). PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY. THANK YOU.

MED, SIG AND QTY: XANAX 0.25MG #30 TAKE 1 PO TID
                  LAST FILLED 12/26/07

       OK TO REFILL:   YES or NO     AND    # OF ADDITIONAL REFILLS: _2_

AUTHORIZING SIGNATURE: _COX MD_       DATE: _2/5/07_

COMMENTS: _____

LAST EDIT: 02/05/07 0816 by Z-CMK



FEB - 5 2007

11:05 KA

D 0050

Patient's Name: B Dianne Clark DOB: REDACTED

Date: 12/4/06 Start Time: 7:30 Am

☒ Procedure in OR ☐ Procedure in ACU ☐ Other _____

**POST PROCEDURE STATUS**
Inpatient: ☐ General Care
Outpatient: ☒ ACU

**SHORT H.& P**
**INVASIVE PROCEDURE FORM**
**DUNCAN REGIONAL HOSPITAL, INC**

☐ CXR, Dx/Sx: _____
☐ PreOp test: _____ Dx/Sx: _____
☐ PreOp test: _____ Dx/Sx: _____
☐ Additional: _____

# PREOPERATIVE ASSESSMENT:
☐ ASA I - Normal   ☐ ASA II - Mild Systemic Disease
☐ ASA III - severe systemic disease (not incapacitating)
☐ ASA IV - Incapacitating Systemic Disease (threat to life)

DX/INDICATION FOR PROCEDURE
① bunion (R)   ② hammer toe (R)
2nd toe

CONSENT FORM ① Austin bunionectomy
(R) 1st   ② Arthroplasty (R) 2nd
proximal interphalangeal joint

**PreoperativeMedication:** _____
☐ None
☐ C.R.N.A. to order _____

Orders per C.R.N.A.;   ☐ None
Patient to take the following meds A.M. of surgery:
_____
_____
_____

Date of Examination: __/__/__ History: _____

Signature: C.R.N.A: _____ Date: _____

Exam specific to Procedure ① Healthy, adult to surface bunion (R) 1st MPJ
mildly thick bowl pedal ② and skin hammer toe (R) 2nd PIPJ

| | | | |
|---|---|---|---|
| Neuro | ☒ WNL | ☐ Other, describe | _____ |
| Cardiovascular | ☒ WNL | ☐ Other, describe | _____ |
| Pulmonary | ☒ WNL | ☐ Other, describe | _____ |
| Abdomen | ☒ WNL | ☐ Other, describe | _____ |
| Extremities | ☒ WNL | ☐ Other, describe | _____ |

Allergies: _____ ☒ NKDA Physician Signature _____ 11/28/06

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Procedure(s) Performed: _____
Findings: _____
_____

Post Op Diagnosis: _____
EBL: _____ Specimen(s) removed: _____

**Post Anesthesia Care Unit Orders:**   ☐ See separate Post Op Orders
☐ Discharge when criteria Met   ☐ Not applicable

**Ambulatory Care Unit Orders:**   ☐ Discharge when criteria met   ☐ Follow my standing orders
Activity: _____   Diet: _____
Medications: _____   Date of follow up visit: _____
☐ Rx _____

Other Instructions: _____
_____

OPINV18DOC6/9/97

Physician Signature: _____

NOV 2 8 2006

D 0051



**JOHN K. CAUTHON, D.P.M.**

2120 W. Elk Ave.
Duncan, OK 73533
Telephone: (580) 255-6600
Fax: (580) 255-7887

## FAX COVER SHEET

Date: 11/20/06

To: Dr. Cox

Re: Medical Clearance for Surgery for patient: *Barbara Dianne Clark*

Date of Surgery: 12/4/06

**Comments:** This is a request for medical clearance for foot surgery. Please complete this form and fax to our office before 11/29/06 . This will allow us to provide safe quality care to our patients. Please feel free to contact us with any questions. We appreciate your assistance in this matter.

**Notice:** This fax contains private and confidential information and should only be distributed to the individual(s) listed above.

```
ID:
767        07-30-07  8:35AM

CLARITY: _____
COLOR: LT.  YELLOW

MULTISTIX 10 SG

GLU  NEGATIVE
BIL  NEGATIVE
KET  NEGATIVE
SG   1.015
BLO  NEGATIVE
PH   5.0
PRO  NEGATIVE
URO  0.2 E.U./dL
NIT  NEGATIVE
LEU  NEGATIVE
```

D 0053

```
RUN DATE: 07/11/07              :AN REGIONAL NPR PHARMACY              PAGE 1
RUN TIME: 0905                  PHA CLINICAL INTERVENTION
RUN USER: Z-CMK
```

**PATIENT:** CLARK,BARBARA DIANNE   **ACCT #:** P001872   **LOC:** RXEMP   **U #:** P00186
    **AGE/SX:** 59/F   **ROOM:**   **REG:** 11/13/98
**REC DR:** CROW,THOMAS R   **STATUS:** REG DCR   **BED:**   **DIS:**

**STATUS:** RESOLVED     RESOLVED INTERVENTION     **START:** 07/11/07 0904
**TYPE:** REFILL     TEAM MEMBER REFILL REQUEST     **USER:** Z-CMK     **MR FORM?** N
    **WL FUNCTION:**     **CNT:**

| **STAFF TYPE** | **STAFF MEMBER** |
| --- | --- |
| P | COAU     COOK,AUDRA KAY |

| **DRUG** | **GENERIC** | **CLASS** | **KEYWORD** | **RELATED Rx** |
| --- | --- | --- | --- | --- |
| | | | REFILL | |

**SEVERITY:** NA     NOT APPLICABLE

**TEXT:**

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S). PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY. THANK YOU.

MED,SIG AND QTY: ULTRAM 50MG TAB # 60 1-2 TABS PO Q 4-6HPRN
         LAST FILLED 6/12/07

         OK TO REFILL:   YES   or   NO     AND     # OF ADDITIONAL REFILLS: _prn_

AUTHORIZING SIGNATURE: _C. Cook_        DATE: _7/11/07_

COMMENTS: _____

_____

_____

**LAST EDIT:** 07/11/07 0904 **by** Z-CMK



FAXED   JUL 1 1 2007   8:02:45

D 0054

```
RUN DATE: 07/09/07            DUNCAN REGIONAL NPR PHARMACY                      PAGE 1
RUN TIME: 1657                 PHA CLINICAL INTERVENTION
RUN USER: Z-TMH
```

| PATIENT: CLARK,BARBARA DIANNE | ACCT #: P0001872 | LOC#: EXERP | U #: P00186 |
|---|---|---|---|
| | AGE/SX: 53/F | ROOM: | REG: 11/13/98 |
| REG DR: CROW,THOMAS R | STATUS: REG RCR | BED: | DIS: |

```
STATUS: RESOLVED      RESOLVED INTERVENTION              START: 07/09/07 1654
TYPE:   REFILL        TEAM MEMBER REFILL REQUEST         USER: Z-TMH        MR FORM? N
                                                         WL FUNCTION:          CNT:


STAFF_TYPE     STAFF MEMBER
P              CODE         COX,DEMETRA


DRUG              GENERIC         CLASS         KEYWORD         RELATED Rx
                                                REFILL


SEVERITY: NA       NOT APPLICABLE

TEXT:

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S).  PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY.  THANK YOU.


MED,SIG AND QTY: B-12 INJECTION  #1  LAST FILLED 6/12/07

          OK TO REFILL: YES or NO    AND   # OF ADDITIONAL REFILLS: 1yr

AUTHORIZING SIGNATURE: _COX mD_____   DATE: _7/10/07_

COMMENTS: _____

_____

_____


LAST EDIT: 07/09/07 1657 by Z-TMH
```

FAXED
JUL 1 0 2007
ED 5:04

D 0055

```
RUN DATE: 07/09/07              DUNCAN REGIONAL NPR PHARMACY                    PAGE 1
RUN TIME: 1657                  PHA CLINICAL INTERVENTION
RUN USER: Z-TMH
```

**PATIENT:** CLARK, BARBARA DIANNE  **ACCT #:** P0018?2  **LOC#:** RXEMP  **U #:** P00186
**AGE/SX:** 59/F  **ROOM:**  **REG:** 1/13/98
**REG DR:** CROW, THOMAS W  **STATUS:** REG RCU.  **BED:**  **DIS:**

**STATUS:** RESOLVED     RESOLVED INTERVENTION           **START:** 07/09/07 1652
**TYPE:** REFILL        TEAM MEMBER REFILL REQUEST        **USER:** Z-TMH          **MR FORM?** N
                                                         **WL FUNCTION:**          **CNT:**

**STAFF TYPE**     **STAFF MEMBER**
P                  CODE          COX, DEMETRA

**DRUG**           **GENERIC**          **CLASS**          **KEYWORD**          **RELATED Rx**
                                                           REFILL

**SEVERITY:** NA          NOT APPLICABLE

**TEXT:**

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S).  PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY.  THANK YOU.

MED, SIG AND QTY:  HCTZ 25MG  #180  LAST FILLED 11/28/06

         OK TO REFILL:  (YES) or  NO     AND  # OF ADDITIONAL REFILLS: 1 yr

MED, SIG AND QTY:  ESTRACE 1MG  #90  LAST FILLED 5/19/07

         OK TO REFILL:  (YES) or  NO     AND  # OF ADDITIONAL REFILLS: 1 yr

AUTHORIZING SIGNATURE: _____COX MD_____     DATE: __7/10/07__

COMMENTS: _____

_____

_____

**LAST EDIT:** 07/09/07 1653 **by** Z-TMH



FAXED
JUL 1 0 2007
ED 145

D 0056

```
RUN DATE: 06/12/07            DUNCAN REGIONAL NPR PHARMACY              PAGE 1
RUN TIME: 1447                 PHA CLINICAL INTERVENTION
RUN USER: Z-TMH
```

PATIENT: CLARK, BARBARA DIANNE      ACCT #: P00187?      LOC: EXEMP      U #: P00186
                                    AGE/SX: 59/F         ROOM:           REG: 11/13/98
REC DR: CROW, THOMAS R              STATUS: REG RCR      BED:            DIS:

```
STATUS: RESOLVED      RESOLVED INTERVENTION           START: 06/12/07 1447
TYPE:   REFILL        TEAM MEMBER REFILL REQUEST      USER:  Z-TMH        MR FORM? N
                                                      WL FUNCTION:            CNT:
```

**STAFF TYPE      STAFF MEMBER**
P                COAU          COOK, AUDRA KAY

**DRUG          GENERIC          CLASS          KEYWORD          RELATED Rx**
                                                REFILL

SEVERITY: NA      NOT APPLICABLE

TEXT:

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S).  PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY.  THANK YOU.


MED, SIG AND QTY:   ULTRAM 50MG  # 60   LAST FILLED 5/9/07

          OK TO REFILL:   YES  or  NO     AND  # OF ADDITIONAL REFILLS: _____

AUTHORIZING SIGNATURE: _a Cook_____      DATE: _6/12/07_

COMMENTS: _____

_____

_____

LAST EDIT: 06/12/07 1447 by Z-TMH

FAXED

JUN 1 2 2007

TO S'00

D 0057

```
RUN DATE: 05/09/07            DUNCAN REGIONAL NPR PHARMACY                    PAGE 1
RUN TIME: 1524                 PHA CLINICAL INTERVENTION
RUN USER: Z-RKR
```

PATIENT: CLARK,BARBARA DIANNE        ACCT #: P001972      LOC: RXEMR      U #: P00196
                                     AGE/SEX: 59/F        ROOM:           REG: 11/13/98
REG DR: CROW,THOMAS R                STATUS: REG,OCR      BED:            DIS:

STATUS: RESOLVED        RESOLVED INTERVENTION          START: 05/09/07 1522
TYPE:   REFILL          TEAM MEMBER REFILL REQUEST     USER:  Z-RKR      MR FORM? N
                                                       WL FUNCTION?           CNT?

STAFF TYPE         STAFF MEMBER
P                  CODE          COX,DEMETRA

DRUG               GENERIC          CLASS             KEYWORD
                                                      REFILL

SEVERITY: NA       NOT APPLICABLE

TEXT:

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S).  PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY.  THANK YOU.

MED,SIG AND QTY:   XANAX 0.25 MG #30  1 PO TID  LAST FILLED: 4/2/07

                  OK TO REFILL:   YES  or  NO    AND   # OF ADDITIONAL REFILLS: _2_

AUTHORIZING SIGNATURE: _Cox mo_____  DATE: _5/9/07_

COMMENTS: _____

_____

LAST EDIT: 05/09/07 1523 by Z-RKR

D 0058

| | |
|---|---|
| Name: CLARK,BARBARA DIANNE | Loc: OP |
| Acct: 00001291630   Dob: REDACTED | Sex: F |
| Unit No: 012040 | Status: REG REF |
| Attend Phys: HUGHES,DENNIS F | |
| Family Phys: COX,DEMETRA | |
| Order Phys: HUGHES,DENNIS F | |
| Exam Date: 04/12/2007      Rad No: 58531 | |

| EXAM# | STATUS | TYPE/EXAM | RESULT |
|---|---|---|---|
| 000172675 | S | NUC/MYOCARDIAL PERFUSION SPECT | |

Myocardial perfusion stress rest exam, ejection fraction exam, wall motion exam.

History: Chest pain.

Radiopharmaceutical:

11.3 mCi technetium 99m Tetrofosmin IV for the resting study.

33.2 mCi technetium 99m Tetrofosmin IV for the stress study.

84mg of adenosine for pharmacologic stress.

Findings: Stress and rest SPECT imaging of the heart show a normal distribution of the radiopharmaceutical in the left and right ventricular myocardium.

Left ventricular ejection fraction is estimated at 65%.

Wall motion is normal.

Impression:
#1. Normal stress myocardial study.

Dictated: 04/13/07 1607

```
        ** eSigned in Dictaphone Powerscribe **
        ** REPORT SIGNATURE ON FILE 04/13/2007 **


            ** REPORT SIGNATURE ON FILE        **
            Reported By: KIRBY MD,AMY
            Signed By:
```

CC: HUGHES,DENNIS F
Technologist: COSPER,GEORGE H
Transcribed Date/Time: 04/13/07 (1611)
Transcriptionist: SCRIPTPWS
Printed Date/Time: 04/16/07/0930




# DUNCAN FAMILY PHYSICIANS, P.C.

1324 Harville Road, Duncan, Oklahoma 73533
(580) 252-1373



Audra Cook, M.D.
Demetra Cox, M.D.
Jamie Hokett, M.D.
Mathew Ivory, M.D.
William Stewart, M.D.

April 10, 2007

Dianne Clark
5990 S 13th
Duncan, OK 73533

Dear Dianne:

I'm writing with results of your recent cholesterol profile that we did and it looks better than it did in September of '06. Your total cholesterol is at 218 with goal less than 200. Your HDL, or good and protective cholesterol, is good at 54 with goal greater than 40. Your LDL, or bad cholesterol, is mildly elevated at 137 with goal less than 130. Your triglycerides are 136 with goal less than 150. At this point I think we're in much better shape than we were in September. I'd recommend that you just continue watching your diet closely and we'll just have this rechecked when you have your yearly labs done in September. If you have any questions or concerns give me a call.

Sincerely,

Demetra Cox, M.D.
DC/kb

MAILED
ED 4/11/07

 **Diagnostic Laboratory of Oklahoma**

Diagnostic Laboratory of Oklahoma
CLIENT SERVICE 800.891.2917

**PATIENT INFORMATION**
**CLARK, BARBARA**

REPORT STATUS **Final**

DOB: REDACTED  Age: 59
GENDER: F    Fasting: Y

ORDERING PHYSICIAN
**COX, DEMETRA G**
CLIENT INFORMATION
00042739
COX, DEMETRA, MD
DUNCAN FAMILY PHYSICIANS
1324 N HARVILLE RD
DUNCAN, OK 73533-1514

SPECIMEN INFORMATION
SPECIMEN:    XO241167H
REQUISITION: 7682017
LAB REF NO:

COLLECTED:  04/03/2007    09:00
RECEIVED:   04/03/2007    22:59
REPORTED:   04/03/2007    23:11

| Test Name | In Range | Out of Range | Reference Range | Lab |
|-----------|----------|--------------|-----------------|-----|
| LIPID PANEL | | | | |
| TRIGLYCERIDES | 136 | | <150 mg/dL | XO |
| CHOLESTEROL, TOTAL | | 218 H | 125-200 MG/DL | XO |
| HDL CHOLESTEROL | 54 | | > OR = 40 mg/dL | XO |
| LDL-CHOLESTEROL | | 137 H | <130 mg/dL (calc) | XO |

DESIRABLE RANGE <100 MG/DL FOR PATIENTS WITH CHD OR
DIABETES AND <70 MG/DL FOR DIABETIC PATIENTS WITH
KNOWN HEART DISEASE.

| | | | | |
|---|---|---|---|---|
| CHOL/HDLC RATIO | 4.0 | | < OR = 5.0 (calc) | XO |

---

**Performing Laboratory Information:**

XO    Diagnostic Laboratory of Oklahoma-DLO 1001 Cornell Pkwy Oklahoma City OK  73108
      Laboratory Director: Ronnie G. Schlesinger, M.D.



```
RUN DATE: 04/02/07          DUNCAN REGIONAL NPR PHARMACY              PAGE 1
RUN TIME: 1000                PHA CLINICAL INTERVENTION
RUN USER: Z-RKR
```

| | | | |
|---|---|---|---|
| PATIENT: CLARK,BARBARA DIANNE | ACCT #: P001872 | LOC: RTEMP | H #: P00186 |
| REG DR: CROW,THOMAS P | AGE/SX: 59/F | ROOM: | REG: 11/11/98 |
| | STATUS: REG RCR | MED: | Dta: |

```
STATUS: RESOLVED    RESOLVED INTERVENTION        START: 04/02/07 0959
TYPE:   REFILL      TEAM MEMBER REFILL REQUEST   USER:  Z-RKR    MR FORM? N
                                                 WL FUNCTION:            CNT:
```

| STAFF TYPE | STAFF MEMBER | | | |
|---|---|---|---|---|
| P | CODE        COX,DEMETRA | | | |

| DRUG | GENERIC | CLASS | KEYWORD | RELATED Rx |
|---|---|---|---|---|
| | | | REFILL | |

SEVERITY: NA        NOT APPLICABLE

TEXT:

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S).  PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY.  THANK YOU.

MED,SIG AND QTY:   CAPOTEN 50MG #180  1 PO BID  *TID*

          OK TO REFILL:  (YES) or NO     AND   # OF ADDITIONAL REFILLS:  *14R*

AUTHORIZING SIGNATURE:  *COX no*          DATE: *4/2/07*

COMMENTS: _____

_____

_____

LAST EDIT: 04/02/07 1000 by Z-RKR

FAXED
APR - 2 2007

D 0062

## CLINICAL IMMUNOLOGY LAB REP. f

NAME: CLARK, BARBARA D
FACILITY: MCBRIDE CLINIC
MD NAME: SHULTZ
COMMENTS: N/A

OMRF: 62619   DATE: 10/24/2006
FACILITY #: 180737
SPECIMEN: SERUM

| TEST NAME | (UNITS) | TEST RESULTS | NORMAL VALUES |
|---|---|---|---|
| **REICHLIN PROFILE** | | | |
| HEp-2 cells [ANA by IFA] [TITER] | | 1080 NUCLEO (See abbreviations below) | NEG or <40 |
| Anti-dsDNA by IFA | (TITER) | NEG | NEG or <10 |
| ENA [Precipitating Ab w/ CTE] | | Summary of ENA Results = NEG | |
| | | Ro NEG   La NEG   Sm NEG | NEG |
| | | nRNP NEG   P NEG   PmScl NEG | |
| | | Jo-1 NEG   RNA-2 NEG   UIL NEG | |
| [RTE used for anti SCL-70] | | Scl-70 N/A | RTE: NEG |
| CH-50 [pt/normal] [C:150 UNITS] | | — Possible undifferentiated connective tissue disease ⊕ I feel she has fibromyalgia as well. ⊕ response to tramadol. Start Plaquenil 200g po BID, co week. | 40-70 |
| [Total Hemolytic Complement] | | | |
| ANCA by IFA | (TITER) | | NEG or <20 |
| PR3 by ELISA | (U/mL) | | <15 U/ML |
| MPO by ELISA | (U/mL) | | <15 U/ML |
| CCP by ELISA | | | NEG |
| Cryoglobulins | (mg/mL) | | <0.05 or NEG |
| Anti-ssDNA by RIA   RIA method discontinued 09/01/01 | (%) | | <    % |
| Anti-ssDNA by ELISA | | | NEG |
| Anti-Ribosomal P by ELISA | | | NEG |
| **ANTI-PHOSPHOLIPID A 3 by EIA [aPL]** | | | |
| [Cardiolipin Substrate] | | | |
| HIGH = > 90 | (PL UNITS) | | |
| MOD = 20-89 | IgG | | <10 |
| LOW = 10-19 | IgM | | <10 |
| NEG = < 10 | IgA | | NEG |

_SS..., MD_
_Shultz_

## ANA PATTERN ABBREVIATIONS

NS=NUCLEAR SPECKLED, NH=NUCLEAR HOMOGENEOUS, RIM=PERIPHERAL
MITO=MITOCHONDRIAL, CYTO=CYTOPLASMIC, CD=CYTOPLASMIC DOTS,
CENT=CENTROMERE, PSEUDOCENT OR SBS=PSEUDO-CENTROMERE
NUCLEO OR NO=NUCLEOLAR, MSA=MITOTIC SPINDLE APPARATUS

N/A = The test is Not Applicable because it was not ordered.  UTA=Unable to Analyze



**McBride**Clinic
Orthopedics & Arthritis

October 24, 2006


AUDRA COOK, MD
1324 HARVILLE RD
DUNCAN, OK 73533

RE: BARBARA D CLARK

Dear Dr. Cook,

I had the pleasure of seeing your patient, Barbara Clark, in arthritis clinic today. She presents for the evaluation of diffuse pain. She reports that this pain is located mainly in her shoulders, hips and along her low back. She was seen earlier this year by Dr. Hynd who is a rheumatologist. He felt that she has fibromyalgia. She reports that she has had this pain for years. It is there daily, but does seem to have episodes of exacerbation. The pain is mostly in the top of her shoulders, her neck and along the lateral hips. The muscles in her upper arms and thighs are very painful at times. She denies to me any problems with any other joints or joint swelling. She does report prolonged morning stiffness, sometimes lasting for hours. She has very poor sleep with frequent awakenings due to pain. She has taken Naproxen for years and she does feel that it helps some. She takes Neurontin at night, which helps her relax to sleep. She was recently started on Tramadol, which she reports really helps her pain. She also has problems with chronic headaches and the Tramadol has seemed to help this as well. About two weeks ago she had an episode of low grade fevers, shortness of breath and a rash on her arms, which has now resolved.

Pertinent findings on physical examination reveal an obese, white female. She has no evidence of synovitis in any of her joints. She has decreased abduction of her bilateral shoulders due to pain along the top of her shoulders and the back of her neck. She has good range of motion of



**McBride Clinic**
Orthopedics & Arthritis

RE: BARBARA D CLARK
OCTOBER 24, 2006
PAGE TWO

her bilateral hips. The left knee has some crepitus, but no effusions. The right knee has been replaced. She has tenderness to palpation over multiple muscle groups along her upper arms and across her trapezius area. She has tenderness to palpation over muscle groups along her lateral thighs and the paraspinous muscles of her lumbar spine.

This is a patient with diffuse pain located mainly in the musculature along her shoulders, low back and hips with chronic headaches, chronic fatigue and poor sleep. I feel that she most likely has fibromyalgia. I have discussed the syndrome at length with the patient. Since she has prolonged morning stiffness I will go ahead and send lab to rule out an inflammatory cause for her pain and stiffness, but I feel that she most likely has fibromyalgia. I have recommended that she continue the Tramadol since it does seem to help her pain. I have given her some samples of Ultram extended release to take at bedtime to see if this will help control her pain throughout the night to allow her to get better sleep. I will send a CBC, CMP, ESR, CRP, Reichlin profile, rheumatoid factor and anti-CCP today.

Thank you for this consultation.

Appreciatively,

Amy Shultz, MD
AS/cmb  10/25/06



# McBride Clinic
## Orthopedics & Arthritis

| | |
|---|---|
| **Patient Name:** CLARK, BARBARA D | **Account Number:** 180737 |

**Date and Time:** October 24, 2008

**Allergies:** NKDA

**Meds:**

**CC:** pain    consult–Dr. Audra Cook    **Meds:** capoten, HCTZ, estrace, xanax, neurontin, naproxen, ultram

**HPI:** Pt. presents for evaluation of pain. She reports that it is mostly in her shoulder and hip area and along her low back. She was seen by Dr. Hynd earlier this year who felt that she had fibromyalgia. She reports that she has had this pain for years. It is there daily, but seems to have episodes of excerbation. The pain is mostly in the top of her shoulders, the neck, and along the lateral hips. The muscles in her upper arms and thighs are very painful at times. She denies to me any problems in any other joints or joint swelling. She reports + morning stiffness lasting for hours. She has very poor sleep with frequent wakenings due to pain. She has taken naproxen for years and she does feel that it helps some. She takes neurontin only at night and it does seem to help her relax to sleep. She was recently started on tramadol, which she reports really helps the pain.

**PMH:** HTN, headaches, insomnia, anxiety

**Surgeries:** hysterectomy, cholecystectomy, right TKA

**FMHx:** none

**Social:** Pt. lives in Duncan, OK. No smoking or ETOH. Home health nurse

## ROS: (Normal or not present if checked)

☐ Constitutional ☑ Skin ☑ Eyes ☑ ENT ☑ Lungs ☑ Heart ☑ GI ☑ Muscle ☑ Neuro

☑ Psyche ☐ Fever ☑ Weight changes ☑ Alopecia ☐ Rash ☑ Dry Eyes ☑ Dry Mouth

☑ Oral ulcers ☑ Reflux ☑ SOB ☑ CP ☑ N/V/D

| PE: VS– Height: | Weight: 234 | Systolic: 160 Diastolic: 110 Pulse: 84 Temperature: |
|---|---|---|
| Gen: | Normal ☑ | ROS:+ fatigue, recent episode of low grade fever and rash on |
| Skin: | Normal ☑ | arms now resolved |
| Eyes: | Normal ☑ | |
| ENT: | Normal ☑ | WDWN obese WF in NAD, A&Ox3 |
| Lymph nodes: | Normal ☑ | left knee crepitus with no effusions. |
| Lungs: | Normal ☑ | no evidence of synovitis. |
| Cardiac: | Normal ☑ | decreased abduction of the bilateral shoulders due to pain along |
| Abdomen: | Normal ☑ | the top of the shoulders and back of the neck |
| Extremities: | Normal ☑ | TTP over multiple muscle groups along upper arms and |
| Muscular: | Normal ☐ | Good ROM bilateral hips |
| Neuro: | Normal ☑ | TTP over muscle groups all along her lateral thighs and para- |
| Joints: | Normal ☐ | spinous muscles in her lumber spine |

D 0066



**McBride Clinic**
**Orthopedics & Arthritis**

| Labs reviewed pertinent findings: | | Date:10/24/2006 |
|---|---|---|

**ANA:**      **DS:**      **RF:**

**HLA-B27:**      **ENA:**      **Anti-CCP:**

A/P:1. diffuse pain mainly located in musculature along her shoulders, low back, and hips with chronic headaches, chronic fatigue, and poor sleep. I feel that she most likely has fibromyalgia. I have discussed this syndrome at length with the patient. Since she has prolonged joint stiffness, I will go ahead and send lab to rule out inflammatory cause for her pain and stiffness, but I feel that she most likely has fibromyalgia. I have recommended recommended that she continue the tramadol since it does seem to be helping the pain.

I have given her some samples of Utram ER to take at bedtime to see if it will help her pain enough to get better sleep.

CBC, CMP, ESR, CRP, Reichlin profile, RF, anti-CCP today

I will call patient with the results of the above testing.

RTC_4 months

Amy Shultz, M.D.

PATIENT: CLARK BARBARA DIANNE          ACCT #: 000612         LOC.: RXEMR        U MS: ROOLEC
                                       AGE/SX: 63/F           ROOM:              REG: 11/11/00
REG DR: CROL THOMAS R                   STATUS: REG SCH       BED:               DIS:

STATUS: RESOLVED         RESOLVED INTERVENTION         START: 10/20/06 1635
TYPE:   REFILL           TEAM MEMBER REFILL REQUEST    USER:  Z-TMH        MR FORM? N
                                                        WL FUNCTION:        CNT:

STAFF TYPE      STAFF MEMBER
P               CODE          COX,DEMETRA

DRUG            GENERIC          CLASS            KEYWORD          RELATED Rx
                                                  REFILL.

SEVERITY: NA          NOT APPLICABLE

TEXT:

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S).  PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY.  THANK YOU.

MED,SIG AND QTY:  XANAX 0.25MG  #30  LAST FILLED 9/29/06

          OK TO REFILL:  YES  or  NO    AND   # OF ADDITIONAL REFILLS: 3

AUTHORIZING SIGNATURE: _COX m_____   DATE: 10/23/06

COMMENTS: _____

_____

_____

LAST EDIT: 10/20/06 1635 by Z-TMH

OCT 2 3 2006

10:00 KA

D 0068

```
Name:   CLARK,BARBARA DIANNE
Acct#: 000012383924
Unit#: 012040
Loc:    OP
DOB:    REDACTED
Age:.   58      Sex: F
Phys:   COOK,AUDRA KAY
Exam Date:   10/02/2006
Exam Status: REG REF
Rad No:      58531
```

**EXAM#____TYPE/EXAM_____RESULT_____**

000148883 RAD/CHEST, 2 VIEWS, PA & LAT*

Chest PA and lateral. Oct  2 2006 12:32PM

Clinical information: flulike symptoms

PA and lateral views of the chest show no infiltrate, effusion, or nodule. The heart and mediastinum are unremarkable.

*Impression:*

*#1. normal chest.*

Dictated: 10/02/06 1324

```
        ** eSigned in Dictaphone Powerscribe **
        ** REPORT SIGNATURE ON FILE 10/02/2006 **


        --------------------------------
        Reported By: KIRBY MD,AMY
```

CC: COOK,AUDRA KAYCOX,DEMETRA

Technologist: LANDRUM,JANET MARIE

Transcribed Date/Time: 10/02/2006 (1328)
Transcriptionist: SCRIPTPWS
Printed Date/Time: 10/09/2006

D 0069

Printed: 10/09/06 - 0941  Duncan Regional Hospital  Page
Phone: 580-251-8876  1407 Whisenant Drive  CLIA #: 37D0472271
Fax: 580-251-8874  Duncan, OK 73533  MEDICARE #: 37-0023

Patient: CLARK,BARBARA DIANNE Room#: OP  Status: REG REF Admit: 10/02/06
Age/Sex: 58/F  MR#: 012040  Fam Phys: COX,DEMETRA
 DOB: REDACTED  Acct#: 000012383924  Other Phys:

Specimen: 1002:SH00005R  Collected: 10/02/06-1205  Ord Phys: COOK,AUDRA KAY
        Received: 10/02/06-1222
Ordered: Sed Rate
   [ H = High L = Low ** = Abnormal * = Critical # = Significant Change ]

| Test | | Result | | Abnormal | Flag | Reference Ranges |
|------|---|--------|---|----------|------|------------------|
| Sed Rate | | | | 32 | H | 0-30 mm/hr |

D 0070

Printed: 10/04/06 - 1530      Duncan Regional Hospital                    Page
Phone: 580-251-8876        1407 Whisenant Drive              CLIA #: 37D0472277
Fax: 580-251-8874          Duncan, OK 73533            MEDICARE #:   37-0023

Patient: CLARK,BARBARA DIANNE    Room#:    OP      Status: REG REF   Admit: 10/02/06
Age/Sex: 58/F              MR#: 012040          Fam Phys: COX,DEMETRA
DOB: REDACTED        Acct#: 000012383924    Other Phys:

Specimen: 1002:CR00008R   Collected: 10/02/06-1205   Ord Phys: COOK,AUDRA KAY
                  Received: 10/02/06-1222
Ordered:  ANA, Lyme ABS Serum
    [  H = High  L = Low  ** = Abnormal  * = Critical  # = Significant Change  ]

| Test | Result | Abnormal | Flag | Reference Ranges |
|------|--------|----------|------|------------------|

ANA
    ...
    *Analyte*                     *Result*
    *Antinuclear Antibodies (ANA)*   *8 IU/mL*   *A

    *Reference Range:*
    *IU/mL Method of Reporting*      *Titer Method of reporting*
       *< 7.5*                  *Not Detected*
        *8*                   *1:40-1:80*
        *15*                 *1:80-1:320*
        *30*              *1:160-1:640*
        *50*             *1:320-1:1280*
        *75*            *1:1290-1:5120*
       *100*          *1:2560-1:10240*
      *>=200*             *>=1:10240*

    *The compares previously reported ANA titers from Specialty*
    *with the standardized International Unit format of*
    *reporting.  Titers from other laboratories cannot be*
    *directly equated to the IU system employed by Specialty.*

    *Test Performed by:*
    *Specialty Laboratories, Inc*
    *27027 Tourney Road*
    *Valencia, CA  91355-5386*
    *CLIA #05D0550302*

Lyme ABS SERUM
    ...
    *Analyte*                   *Result*      *Reference*
    *Borrelia burgdorferi IgG Ab's*  *< 0.8 Index*   *< 0.8*
    *Borrelia burgdorferi IgM Ab's*  *< 0.8 Index*   *< 0.8*

    *Test Performed by:*
    *Specialty Laboratories, Inc*
    *27027 Tourney Road*
    *Valencia, CA  91355-5386*
    *CLIA #05D0550302*

D 0071

Patient: CLARK,BARBARA DIANNE          Room#:          OP          Status: REG REF     Admit: 10/02/06
Age/Sex: 58/F                    MR#: 012040          Fam Phys: COX,DEMETRA
DOB: REDACTED              Acct#: 000012383924          Other Phys:

Specimen: 1002:SH00005R          Collected: 10/02/06-1205          Ord Phys: COOK,AUDRA KAY
                                 Received: 10/02/06-1222
Ordered:  Sed Rate
     [  H = High  L = Low   ** = Abnormal   * = Critical   # = Significant Change  ]

| Test | | Result | | Abnormal | Flag | Reference Ranges |
|------|---|--------|---|----------|------|------------------|
| Sed Rate | | | | 32 | H | 0-30 mm/hr |

Printed: 10/02/06 - 1530    Duncan Regional Hospital        CLIA #: 37D0472271
  Phone: 580-251-8876      1407 Whisenant Drive      MEDICARE #:  37-0023
    Fax: 580-251-8874        Duncan, OK 73533

Patient: CLARK, BARBARA DIANNE    Room#:    OP     Status: REG REF   Admit: 10/02/06
Age/Sex: 58/F           MR#: 012040      Fam Phys: COX, DEMETRA
  DOB: REDACTED      Acct#: 000012383924   Other Phys:

Specimen: 1002:I00002R    Collected: 10/02/06-1205   Ord Phys: COOK, AUDRA KAY
              Received: 10/02/06-1222

Ordered:  RA Test
     [  H = High  L = Low  ** = Abnormal  * = Critical  # = Significant Change  ]

| Test | Result | Abnormal | Flag | Reference Ranges |
|------|--------|----------|------|-------------------|
| RA Test | Negative | | | Negative |

Name: CLARK,BARBARA DIANNE          Loc: OP
Acct: 00001226961    Dob: REDACTED   Sex: F
Unit No: 012040                Status: REG REF
Attend Phys: COX,DEMETRA
Family Phys: COX,DEMETRA
Order  Phys: SELF REFERRAL
Exam Date: 09/21/2006      Rad No: 58531

| EXAM# | STATUS | TYPE/EXAM | RESULT |
|-------|--------|-----------|--------|
| 000147545 | S | RAD/SCREENING MAMMO EMPLOYEE | |

SCREENING MAMMOGRAM

COMPARISON: September 28, 2005

FINDINGS:
CC and MLO views of the breasts demonstrate no worrisome interval
change.  Fibroglandular density is noted bilaterally.  Vascular
calcifications are again seen on the right.  There is no suspicious
microcalcification, mass or architectural distortion.

IMPRESSION
NO MAMMOGRAPHIC EVIDENCE OF MALIGNANCY BI-RADS 2.

RECOMMEND ANNUAL EXAMINATION IN ONE YEAR.


Transcribed by Medical Data Services, Inc./dls


                    ** REPORT SIGNATURE ON FILE          **
                    Reported By: KIRBY MD,AMY
                    Signed By:

CC: COX,DEMETRA
Technologist: SNIDER,VIRGINIA
Transcribed Date/Time: 09/25/06 (0919)
Transcriptionist:  MR-DLS
Printed Date/Time: 10/02/06/0930

D 0074

Printed: 09/12/06 - 1500     Duncan Regional Hospital     Page 1
Phone: 580-251-8876     1407 Whisenant Drive     CLIA #: 37D0472271
Fax: 580-251-8874     Duncan, OK 73533     MEDICARE #:   37-0023

Patient: CLARK,BARBARA DIANNE    Room#:   OP    Status: REG REF   Admit: 09/12/06
Age/Sex: 58/F    MR#: 012040    Fam Phys: COX,DEMETRA
DOB: REDACTED    Acct#: 000012322488    Other Phys:

*252-1111 —H* (handwritten)
*74 8750 —W* (handwritten)

Specimen: 0912:C00048R    Collected: 09/12/06-0740    Ord Phys: COX,DEMETRA
            Received: 09/12/06-0806
Ordered:   COM MET PANEL-E, LIPID PANEL-E
    [   H = High   L = Low   ** = Abnormal   * = Critical   # = Significant Change   ]

| Test | Result | Abnormal | Flag | Reference Ranges |
|------|--------|----------|------|------------------|
| COM MET PANEL-E | | | | |
| LIPID PANEL-E | | | | |
| Sodium | 136 | | | 135-147 mEq/L |
| Potassium | 3.9 | | | 3.5-5.1 mEq/L |
| Chloride | 98 | | | 98-108 mEq/L |
| Carbon Dioxide | 30 | | | 24-32 mEq/L |
| Glucose | | 118 | H | 70-100 mg/dL |
| Bun | 18 | | | 7-18 mg/dL |
| Creat. (Serum) | 0.8 | | | 0.5-0.9 mg/dL |
| Bun/Creat Ratio | 22 | | | 8-29 Ratio |
| Anion Gap | 8 | | | 1-16 mEq/L |
| SGOT (AST) | 28 | | | 0-31 U/L |
| SGPT (ALT) | 30 | | | 0-30 U/L |
| Alkaline Phos | 75 | | | 39-117 U/L |
| Total Bilirubin | 0.6 | | | 0.15-1.2 mg/dL |
| Calcium | 9.9 | | | 8.2-10.2 mg/dL |
| Corrected CA | 9.6 | | | 8.2-10.2 mg/dL |
| Total Protein | 7.3 | | | 6.3-8.0 g/dL |
| Albumin | 4.4 | | | 3.4-5.0 g/dL |
| Globulin | 2.9 | | | 2.0-4.0 g/dL |
| A/G Ratio | 1.5 | | | 1.1-2.4 Ratio |
| Triglycerides | | 160 | H | 40-150 mg/dL |
| Cholesterol | | 254 | H | 100-200 mg/dL |
| HDL Cholesterol | 63 | | | > 50 mg/dL |
| LDL -Calculated | 159 | | | mg/dL |

LDL-Cholesterol GOAL TABLE
<160   mg/dL- Without CHD and with 0-1 risk factors
<130   mg/dL- Without CHD and with 2 or more risk factors
<=100 mg/dL- With CHD
< 70   mg/dL- Goal for very high-risk patient (CHD plus
    diabetes, or continued smoking, or metabolic syndrome)

| | | | | |
|------|--------|----------|------|------------------|
| LDL/HDL Ratio | 2.5 | | | 2.0-3.0 Ratio |
| VLDL Fraction | 32 | | | 6-35 mg/dL |
| Chol/HDL Ratio | 4.0 | | | 3.1-5.0 Ratio |

*PN* (handwritten)
*10 10 06* (handwritten)
*Call – Rec. Trial of Crestor 5 mg qd ✓ HFP/LP 3mos* (handwritten)

```
Patient: CLARK,BARBARA DIANNE        Room#:     OP       Status: REG REF   Admit: 09/12/06
Age/Sex: 58/F                    MR#: 012040        Fam Phys: COX,DEMETRA
    DOB: REDACTED              Acct#: 000012322488   Other Phys:
```

```
Specimen: 0912:H00048R      Collected: 09/12/06-0740   Ord Phys: COX,DEMETRA
                             Received: 09/12/06-0806
Ordered:  [CBC]-E
       [ H = High  L = Low  ** = Abnormal  * = Critical  # = Significant Change  ]
```

| Test | Result | Abnormal | Flag | Reference Ranges |
|------|--------|----------|------|------------------|
| [CBC]-E | | | | |
| [HEMOGRAM] | | | | |
| WBC | | 11.2 | H | 4.8-10.8 10x3/uL |
| RBC | | 5.42 | H | 4.20-5.40 10x6/uL |
| Hgb | 15.9 | | | 12.0-16.0 g/dL |
| Hct | 46.8 | | | 37.0-47.0 % |
| MCV | 86.3 | | | 81.0-99.0 fL |
| MCH | 29.3 | | | 27.0-33.0 pg |
| MCHC | 34.0 | | | 31.0-35.0 g/dL |
| RDW | 13.2 | | | 11.5-14.5 % |
| Platelets | 185 | | | 130-400 10x3/uL |
| MPV | | 12.9 | H | 8.4-12.0 fL |
| [DIFF %] | | | | |
| Neutrophil | 61.3 | | | 40-75 % |
| Lymphocyte | 29.0 | | | 20-45 % |
| Monocyte | 6.0 | | | 2-10 % |
| Eosinphil | 3.2 | | | 1-6 % |
| Basophil | 0.5 | | | 0-1 % |
| NRBC | 0 | | | 0-10 /100WBC |

Patient: CLARK,BARBARA DIANNE      Room#:      OP        Status: REG REF    Admit: 09/12/06
Age/Sex: 58/F                MR#: 012040        Fam Phys: COX,DEMETRA
    DOB: REDACTED          Acct#: 000012322488    Other Phys:

Specimen: 0912:SC00016R      Collected: 09/12/06-0740    Ord Phys: COX,DEMETRA
                            Received: 09/12/06-0806
Ordered: TSH-E
        [  H = High  L = Low  ** = Abnormal  * = Critical  # = Significant Change  ]

| Test | Result | Abnormal | Flag | Reference Ranges |
|------|--------|----------|------|------------------|
| TSH  | 2.120  |          |      | 0.32-5.0 uIU/L   |

RUN DATE: 10/02/06
RUN TIME: 0739
RUN USER: Z-RKR

DUNCAN REGIONAL NPR PHARMACY
PHA CLINICAL INTERVENTION

PAGE 1

PATIENT: CLARK,BARBARA DIANNE          ACCT #: P001892          LOC: DXEMP          U #: V00186
                                       AGE/RA: 59/F             ROOM:               REG: 11/15/98
REG DR: CROW,THOMAS R                  STATUS: REG RCR          BED:                DIS:

STATUS: RESOLVED          RESOLVED INTERVENTION                 START: 09/29/06 1741
TYPE:   REFILL            TEAM MEMBER REFILL REQUEST            USER:   Z-TMH          MR FORM? N
                                                               WL FUNCTION:                CNT:

STAFF TYPE          STAFF MEMBER
P                   CODE          COX,DEMETRA

DRUG                GENERIC          CLASS               KEYWORD          RELATED Rx
                                                         REFILL

SEVERITY: NA          NOT APPLICABLE

TEXT:

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S). PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY. THANK YOU.

MED,SIG AND QTY:  NAPROSYN 500MG  #60   LAST FILLED 7/31/06

          OK TO REFILL:  YES or NO    AND    # OF ADDITIONAL REFILLS: _1 yr_

AUTHORIZING SIGNATURE: _____        DATE: _10/2/06_

COMMENTS: _____

_____

_____

LAST EDIT: 10/02/06 0738 by Z-RKR

OCT - 2 2006

2:35 KA

**Duncan Regional Hospital, Inc.**
*Radiology Service*
PO Box 2000          Duncan, OK 73534
Phone (580)251-8901 Fax (580)251-8907

| |
Name: CLARK,BARBARA DIANNE          Loc: OP
Acct: 00001226961   Dob: REDACTED Sex: F
Unit No: 012040              Status: REG REF
Attend Phys: COX,DEMETRA
Family Phys: COX,DEMETRA
Order  Phys: SELF REFERRAL
Exam Date: 09/21/2006      Rad No: 58531

| EXAM# | STATUS | TYPE/EXAM | RESULT |
|-------|--------|-----------|--------|
| 000147545 | D | RAD/SCREENING MAMMO EMPLOYEE | |

SCREENING MAMMOGRAM

COMPARISON: September 28, 2005

FINDINGS:
CC and MLO views of the breasts demonstrate no worrisome interval
change.  Fibroglandular density is noted bilaterally.  Vascular
calcifications are again seen on the right.  There is no suspicious
microcalcification, mass or architectural distortion.

IMPRESSION
NO MAMMOGRAPHIC EVIDENCE OF MALIGNANCY BI-RADS 2.

RECOMMEND ANNUAL EXAMINATION IN ONE YEAR.

Transcribed by Medical Data Services, Inc./dls

```
                ** REPORT SIGNATURE ON FILE          **
                Reported By: KIRBY MD,AMY
                Signed By:
```

CC: COX,DEMETRA
Technologist: SNIDER,VIRGINIA
Transcribed Date/Time: 09/25/06 (0919)
Transcriptionist:  MR-DLS
Printed Date/Time: 09/25/06/0930

D 0079

RUN DATE: 07/31/06           DUNCAN REGIONAL NPR PHARMACY                PAGE 1
RUN TIME: 1646                PHA CLINICAL INTERVENTION
RUN USER: Z-RKR

**PATIENT:** CLARK,BARBARA DIANNE    **ACCT.#** P00187:    **LOC:** RXEMP    **U.R.** P00100:
                               **AGE/SX:** 58/F     **ROOM:**      **REG:** 11/13/91
**REG DR:** CROW,THOMAS R        **STATUS:** REG RCR    **BED:**       **DIS:**

| | | | |
|---|---|---|---|
| **STATUS:** RESOLVED | RESOLVED INTERVENTION | **START:** 07/31/06 1645 | |
| **TYPE:** REFILL | TEAM MEMBER REFILL REQUEST | **USER:** Z-RKR | **MR FORM?** N |
| | | **WL FUNCTION:** | **CNT:** |

**STAFF TYPE**    **STAFF MEMBER**
D              CODE         COX,DEMETRA

**DRUG**          **GENERIC**        **CLASS**          **KEYWORD**      **RELATED Rx**
                                                        REFILL

**SEVERITY:** NA        NOT APPLICABLE

**TEXT:**

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S). PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY. THANK YOU.

MED,SIG AND QTY:    XANAX 0.25MG #30  1 PO TID    LAST: 6/30/06

                OK TO REFILL: (YES) or NO    AND    # OF ADDITIONAL REFILLS: *2*

AUTHORIZING SIGNATURE: *Cox*            DATE: *8/1/06*

COMMENTS: _____

_____

_____

**LAST EDIT:** 07/31/06 1645 **by** Z-RKR

AUG - 1 2006

10:55 XA

D 0080

RUN DATE: 06/30/06        DUNCAN REGIONAL NPR PHARMACY        PAGE 1
RUN TIME: 1542           PHA CLINICAL INTERVENTION
RUN USER: Z-TMH

PATIENT: CLARK, BARBARA DIANNE   ACCT#: P901212   LOC: RCCMP   U/N: FULJ06

AGE/SX: 58/F   ROOM:   REG: 11/15/06

REG DR: CROW THOMAS B   STATUS: REG RCR   BED:   DIS:

---

**STATUS:** RESOLVED   RESOLVED INTERVENTION      **START:** 06/30/06 1541
**TYPE:** REFILL   TEAM MEMBER REFILL REQUEST      **USER:** Z-TMH   **MR FORM?** N

                                                    **WL FUNCTION:**   **CNT:**

**STAFF TYPE**   **STAFF MEMBER**
P           CODE       COX, DEMETRA

**DRUG**        **GENERIC**      **CLASS**       **KEYWORD**       **RELATED Rx**
                                                  REFILL

**SEVERITY:** NA      NOT APPLICABLE

**TEXT:**

DEAR DOCTOR,

REFILL AUTHORIZATIONS ARE NEEDED FOR THE FOLLOWING MED(S). PLEASE PHONE (580.251.8787) OR
FAX (580.251.8789) YOUR REPLY TO DUNCAN REGIONAL HOSPTIAL PHARMACY. THANK YOU.

MED,SIG AND QTY: NAPROSYN 500MG  #60   LAST FILLED 1/20/06

           OK TO REFILL:  YES or  NO    AND   # OF ADDITIONAL REFILLS: ①

AUTHORIZING SIGNATURE: _____    DATE: _____

COMMENTS: _____

_____

_____

---

**LAST EDIT:** 06/30/06 1541 **by** Z-TMH



JUN 3 0 2006

4:40 pA

**3/30/07 Barbara Dianne Clark**

**S:** Dianne is a 59-year-old in today for follow up on her blood pressure. We increased her **Capoten** to 50 mg tid and her **HCTZ** is just 25 each morning. She's brought in blood pressures today that show extremely good control of her systolics now in the 110-130 area and seem very well controlled.

She's a little concerned, however. Her sister-in-law who was 59 died of a heart attack recently and she's had some pains in her left elbow and left arm although she's had no exertional chest pressure or chest pain. She's just very concerned about this. I've asked her to start taking an Aspirin daily that she's not taking and she did have some hyperlipidemia on her annual labs in September so I've told her we need to aggressively get after that and recheck it. If that's a problem, get her cholesterol down.

**O:** Weight 219. Blood pressure 160/80. Pulse 68. She's A&O x4, NAD. Lungs clear. Heart- regular sinus rhythm, no murmur. No pedal edema.

**A:** 1. Hypertension.
2. Left arm pain.
3. Hyperlipidemia.

**P:** 1. We've given her an EBT pamphlet for a heart scan at Baptist, she's willing to go do that.
2. Will schedule an adenosine thallium because of the left arm pain and hypertension and risk factors of hyperlipidemia.
3. Schedule fasting lipid panel within the next week and see her back in four months for recheck.

DC/kb

---

**7/30/07 Barbara Dianne Clark**

**S:** Barbara is a 59-year-old in today for four month follow up on hypertension, hyperlipidemia and hyperglycemia. She also sees Dr. Amy Schultz in Norman for rheumatology for unspecified connective tissue disease and fibromyalgia. She takes **Ultram 50 mg prn, Plaquenil 200 mg bid, B-12 1 cc q** four weeks for fatigue, **Capoten 50 mg tid and HCTZ 25 mg q a.m.**

She is currently doing pretty well. Her blood pressure is a little elevated today but she says it wasn't before she came here. She's been checking it, its been very good. She's actually thinking about quitting work in the next month or so. She works for Home Care through the hospital and it's just really starting to take its wear and tear on her body.

**O:** Weight 222. Blood pressure 160/80. Pulse 68. She's A&O x4, NAD. HEENT benign. Lungs clear. Heart- regular sinus rhythm, no murmur. Abdomen is soft, nt/nd, no HSM. Extremities- no c/c/e.

**A:** 1. Hypertension.
2. Hyperlipidemia.
3. Hyperglycemia/insulin resistance.

**P:** 1. Continue diet and weight control.
2. I have added a hemoglobin A1C to when she gets her employee labs which really should be in the next month.
3. I'll see her back in six months for recheck.

DC/kb

**3/2/07 Barbara Dianne Clark**

**S:** Barbara is a 59-year-old in today concerned about her blood pressure. She is a Home Health nurse and was actually at a lady's house and turned around to talk to her and sort of just blacked out for a minute. She also has had some ringing in her ears and has started taking her blood pressures in the last week and about 150 to 160 systolically. Most of her diastolic numbers have been normal.

She currently takes **Capoten 50 bid and HCTZ 25 bid**

**O:** Weight 220. Blood pressure 142/100. Pulse 80. Her exam is benign. Lungs clear. Heart- regular sinus rhythm, no murmur.

**A: 1.** Hypertension uncontrolled.

**P: 1.** Increase Capoten to 50 tid, decrease HCTZ to 25 q a.m. See her back in four weeks to see how this new regimen is working. If it's not working then we'll try adding a different antihypertensive.

DC/kb *Cox*

AUDRA COOK, M.D.
DEMETRA COX, M.D.
JAMIE HOKETT, M.D.
MATHEW IVORY, M.D.
WILLIAM STEWART, M.D.

Diane Clark
252-1111

wants phenergan gel very Nausea

AUDRA COOK, M.D.
DEMETRA COX, M.D.
JAMIE HOKETT, M.D.
MATHEW IVORY, M.D.
WILLIAM STEWART, M.D.

**FAXED**

R3S Diane Clark
#3 Barbara

Phenergan gel
25mg/syringe
10
easey 1 syringe q 4-6°
NMA men nausea como

D 0083

**5/24/06 Barbara Dianne Clark**

**S:** Dianne is a 58-year-old who comes in today for recheck. She has been checking her blood sugars because she was feeling poorly. She's been checking them at work and has found some high fasting numbers. She also has been diagnosed by a rheumatologist with neuropathic pains. She also has obesity and is working on trying to lose some weight. Her current meds are **Paxil 20 mg half qd, HCTZ 25 mg bid, Capoten 50 mg bid, Estrace 1 every third day, Naprosyn 500 mg bid prn and Neurontin 300 mg q hs to tid.**

**O:** Weight 234. Blood pressure 180/80. Pulse 88. She's A&O x4, NAD. HEENT benign. Lungs clear. Heart- regular sinus rhythm, no murmur. Abdomen is soft, nt/nd, no HSM. Extremities- no c/c/e.

**A:** **1.** Glucose intolerance.
  **2.** Neuropathic pain.
  **3.** Obesity.

**P:** **1.** Check hemoglobin A1C and BMP.
  **2.** Continue above bolded medications.
DC/kb

---

**BARBARA DIANE CLARK**
**Birthdate 11/4/1947**

10/2/06

**S:** 58-year-old white female here for several complaints. For the past several weeks, she has felt very ill. She can't really think of a precipitating event and it has gotten worse. Her symptoms include a low grade fever, diffuse muscle aches but worse in her shoulders, back and upper leg. She has also been very fatigued and developed a rash on her trunk and upper arms. She has been more short of breath than normal but denies chest pain. She has also been nauseated and had a severe headache with visual changes. Her past medical history includes hypertension and fibromyalgia. She saw a rheumatologist several months ago for diffuse myalgias and she denied that he did any sort of blood work. She also denies that she has ever had any rheumatologic blood work done. She has not had any medication changes or noticed any tick bites.

**O:** VS—weight 233, BP 160/88, pulse 72. Gen. WDWN female. NAD.

**HEENT:** PERRLA with EOMs intact.

**HEART:** RRR without murmurs, rubs or gallops.

**LUNGS:** CTA bilaterally.

**ABD:** Soft, nontender, nondistended. NBS.

**MS:** Movements are somewhat slow due to the pain. She has diffuse muscle tenderness although strength appears intact.

**A/P:** 1) Fatigue and myalgias—this sure seems rheumatologic in nature so we will check a Sed. Rate, ANA, Rheumatoid factor, CK and Lyme disease titers and follow up with blood work including a CMP and CBC done at the hospital a couple of weeks ago. Follow up in 2 weeks and we will consider a steroid trial.
    2) Headache—Ultram 50 mg.
    3) Shortness of breath—chest x-ray.

AKC:dlm

S:    58-year-old white female here to follow up a spell in which she had polymyalgia, arthralgias and severe fatigue. I checked her basic rheumatologic panel and her Sed. Rate was slightly elevated at 32 and ANA was weakly positive with a negative RF. Her flare up has since started to improve on its own. I gave her Ultram for the headaches and this has also been helping her pain. She does not think she has seen a rheumatologist although I do have a letter from Dr. Hynd in OKC who appears to be a rheumatologist. She says he did not draw any blood and he did not do an exam and told her problems were because she wasn't sleeping well and she was overweight. She has never been tried on prednisone for any of these flare ups.

O:    VS—weight 232, BP 154/94, pulse 84. Gen. She seems to be in better spirits.

A/P:    1) Polymyalgia and fatigue—we will refer to Dr. Shults who is a rheumatologist in Norman for further evaluation. I did offer to give her a trial of steroids but since she is improving on her own, she would prefer to hold off for now and will call us if she decides to try it. I refilled her Ultram #60 with 3 refills.

AKC:dlm    *ac*

10/19/06    *Diane Clark*

*Dr. Amy Shultz-Rheum.*
*Norman*
*Tues. Oct. 24 @ 4:00*

PN
KH

AUDRA COOK, M.D.
DEMETRA COX, M.D.
JAMIE HOKETT, M.D.
MATHEW IVORY, M.D.
WILLIAM STEWART, M.

*Barbara Clark*
*252-1111.*

*Ultram ER 100mg*
*over $300. wants samples*

*Hosp.* *OK ac #24*
*Brians* *no 11-2 NM*
*NMA*

MediConnect.net, Inc.
866-540-0304
TIN# : 87-0584534

**Remit to:** **MediConnect.net, Inc.**
**PO BOX 673377**
**DETROIT MI 48267-3377**

| DATE 09/24/07 | INVOICE # E413-SP404977 |

---

## BILL TO

Prudential Disability-STD/LTD
Attn: David Baker
PO BOX 13480
Philadelphia, PA 19101

| CLAIMANT | | TERMS |
|---|---|---|
| Clark, Barbara D | | Net 30 |

---

| DESCRIPTION | COMPLETED | REQUEST ID | CLAIM # | AMOUNT |
|---|---|---|---|---|
| Retrieving medical records; Clark, Barbara D; AMY SHULTZ; 19 pages. | 09/20/07 | E997-129901 | 10996333-1-1 | 16.00 |

Any disputed items must be addressed with MediConnect within 30 days from the date of invoice.

| | **Total** | 16.00 |

**D 0086**

MediConnect.net, Inc.
866-540-0304
TIN# : 87-0584534

**Remit to:** MediConnect.net, Inc.
PO BOX 673377
DETROIT MI 48267-3377

| DATE | 09/24/07 | INVOICE # E413-SP404977 |
|---|---|---|

**BILL TO**

Prudential Disability-STD/LTD
Attn: David Baker
PO BOX 13480
Philadelphia, PA 19101

| CLAIMANT | TERMS |
|---|---|
| Clark, Barbara D | Net 30 |

## Summary Invoice

| Description | Quantity | Amount |
|---|---|---|
| Medical Record Retrieval Fees | 1 | 16.00 |
| Provider & Handling Fees | 0 | 0.00 |
| No Records at Facility | 0 | 0.00 |
| No Patient at Facility | 0 | 0.00 |
| Cancelled Records | 0 | 0.00 |
| Other/miscellaneous Charges | | 0.00 |

| To insure proper credit, Please return a copy of this invoice with your payment. Thank You. | **Total** | 16.00 |
|---|---|---|

Any disputed items must be addressed with MediConnect within 30 days from the date of invoice.

**Remit to:** MediConnect.net, Inc.
PO BOX 673377
DETROIT MI 48267-3377

Approval: _____

Date: _____

D 0087

# Prudential  Financial

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Tel: 800-842-1718  Fax: 877-889-4885
http://www.prudential.com/inst/gldi

## Group Disability Insurance Authorization

**1 Claimant's Information**

First Name: BARBARA

MI: D

Last Name: CLARK

Social Security Number: REDACTED

Employee Phone Number: 580 252 1111

Control Number: 80629

**2 Authorization for Release of Information to Prudential Insurance Company**

This Authorization is intended to comply with the HIPAA Privacy Rule

I authorize any health plan, physician, health care professional, hospital, clinic, laboratory, pharmacy, medical facility, or other health care provider that has provided treatment, payment or services to me or on my behalf ("My Providers") to disclose my entire medical record and any other health information concerning me to the Prudential Insurance Company of America (Prudential) and its agents, employees, and representatives. This includes information on the diagnosis or treatment of Human Immunodeficiency Virus (HIV) infection and sexually transmitted diseases. This also includes information on the diagnosis and treatment of mental illness and the use of alcohol, drugs, and tobacco, but excludes psychotherapy notes.

I authorize any insurance company, employer, the Social Security Administration, or other person or institutions to provide any information, data or records relating to my Social Security, Workers' Compensation, credit, financial, earnings, activities or employment history to Prudential.

Unless limits* are shown below, this form pertains to all of the records listed above.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this authorization and I instruct My Providers to release and disclose my entire medical record without restriction.

This information is to be disclosed under this Authorization so that Prudential may: 1) administer claims and determine or fulfill responsibility for coverage and provision of benefits; 2) obtain reinsurance; 3) administer coverage; and 4) conduct other legally permissible activities that relate to any coverage I have or have applied for with Prudential.

This authorization shall remain in force for 24 months following the date of my signature below, while the coverage is in force, except to the extent that state law imposes a shorter duration. A copy of this authorization is as valid as the original. I understand that I have the right to revoke this authorization in writing, at any time, by sending a written request for revocation to Prudential at: P.O. Box 13480, Philadelphia, PA 19176. I understand that a revocation is not effective to the extent that any of My Providers has relied on this Authorization or to the extent that Prudential has a legal right to contest a claim under any insurance policy or to contest the policy itself. I understand that any information that is disclosed pursuant to this authorization may be redisclosed and no longer covered by federal rules governing privacy and confidentiality of health information.

I understand that if I refuse to sign this authorization to release the entire medical record, Prudential may not be able to process my claim for benefits and may not be able to make any benefit payments. I understand that I have the right to receive a copy of this authorization.

*Limits, if any:

X _Barbara Dianne Clark_

Employee Signature (indicate how related if signed by other than claimant)

Date (MM DD YYYY): 09 06 2007

**NOTICE TO MONTANA RESIDENTS:** You or your authorized representative are entitled to receive a copy of this Authorization, and upon request, a record of any subsequent disclosures of personal or privileged information.

Prudential Financial and the Rock logo are registered service marks of The Prudential Insurance Company of America and its affiliates.

# MediConnect Request Information Sheet

## Request General Information

Request ID:        E997-129901
Date Received:     9/17/2007 9:15:19 PM
Date Completed:    9/20/2007 3:39:03 PM
Request Status:    RESEARCH
Request Type:      MEDICAL
Dates of Service:  Records from 09-01-2006 to 09-17-2007 (On-site and unarchived only.)
Instructions:      All records frm 9/1/06 to present. All records for time specified.

## Patient Information

Patient Name:  Clark, Barbara D
Patient DOB:   REDACTED
Patient SSN:
Policy #:      10996333-1-1

## Request Location

Location:  AMY SHULTZ
Address:   3700 36TH AVE NW
           NORMAN, OK 73072
Phone:     405-230-9600

## Requestor Information

Requesting Agent:  Gregory, Jr., ALHC, Michael
Phone:             800-842-1718x4597



# McBride Clinic
## Orthopedics & Arthritis

**Patient Name:** CLARK, BARBARA D      **Account Number:** 180737

**Date and Time:** October 24, 2006

**Allergies:** NKDA

**Meds:**

**CC:** pain   consult--Dr. Audra Cook     Meds: capoten, HCTZ, estrace, xanax, neurontin, naproxen, ultram

**HPI:** Pt. presents for evaluation of pain. She reports that it is mostly in her shoulder and hip area and along her low back. She was seen by Dr. Hynd earlier this year who felt that she had fibromyalgia. She reports that she has had this pain for years. It is there daily, but seems to have episodes of exacerbation. The pain is mostly in the top of her shoulders, the neck, and along the lateral hips. The muscles in her upper arms and thighs are very painful at times. She denies to me any problems in any other joints or joint swelling. She reports + morning stiffness lasting for hours. She has very poor sleep with frequent wakenings due to pain. She has taken naproxen for years and she does feel that it helps some. She takes neurontin only at night and it does seem to help her relax to sleep. She was recently started on tramadol, which she reports really helps the pain.

**PMH:** HTN, headaches, insomnia, anxiety

Surgeries: hysterectomy, cholecystectomy, right TKA

**FMHx:** none

**Social:** Pt. lives in Duncan, OK. No smoking or ETOH. Home health nurse

## ROS: (Normal or not present if checked)

☐ Constitutional ☑ Skin ☑ Eyes ☑ ENT ☑ Lungs ☑ Heart ☑ GI ☑ Muscle ☑ Neuro

☑ Psyche ☐ Fever ☑ Weight changes ☑ Alopecia ☐ Rash ☑ Dry Eyes ☑ Dry Mouth

☑ Oral ulcers ☑ Reflux ☑ SOB ☑ CP ☑ N/V/D

**PE:** VS- Height:    Weight: 234- Systolic: 190 Diastolic: 110 Pulse: 84   Temperature:

| | | |
|---|---|---|
| Gen: | Normal ☑ | ROS:+ fatigue. recent episode of low grade fever and rash on |
| Skin: | Normal ☑ | arms now resolved |
| Eyes: | Normal ☑ | |
| ENT: | Normal ☑ | WDWN obese WF in NAD. A&Ox3 |
| Lymph nodes: | Normal ☑ | left knee crepitus with no effusions. |
| Lungs: | Normal ☑ | no evidence of synovitis. |
| Cardiac: | Normal ☑ | decreased abduction of the bilateral shoulders due to pain along |
| Abdomen: | Normal ☑ | the top of the shoulders and back of the neck |
| Extremities: | Normal ☑ | TTP over multiple muscle groups along upper arms and |
| Muscular: | Normal ☐ | Good ROM bilateral hips |
| Neuro: | Normal ☑ | TTP over muscle groups all along her lateral thighs and para- |
| Joints: | Normal ☐ | spinous muscles in her lumbar spine |

D 0090



## McBride Clinic
### Orthopedics & Arthritis

| **Labs reviewed pertinent findings:** | | **Date:** 10/24/2006 |
|---|---|---|

**ANA:**          **DS:**          **RF:**

**HLA-B27:**          **ENA:**          **Anti-CCP:**

A/P:1. diffuse pain mainly located in musculature along her shoulders, low back, and hips with chronic headaches, chronic fatigue, and poor sleep. I feel that she most likely has fibromyalgia. I have discussed this syndrome at length with the patient. Since she has prolonged joint stiffness, I will go ahead and send lab to rule out inflammatory cause for her pain and stiffness, but I feel that she most likely has fibromyalgia. I have recommended recommended that she continue the tramadol since it does seem to be helping the pain.

I have given her some samples of Utram ER to take at bedtime to see if it will help her pain enough to get better sleep.

CBC, CMP, ESR, CRP, Reichlin profile, RF, anti-CCP today

i will call patient with the results of the above testing.

RTC_4 months

Amy Shultz, M.D.

D 0091

Name: _Barbara Dianne Clark_     Date: _10-24-06_
Complaint: _Pain_

Past medical history:
Surgery: _hysterectomy 1986_ ~~Gallbladder~~    Date: _1986_
          _Gallbladder_          Date: _1999_
          _R Total Knee_         Date: _2004_
hospitalization (other than surgery):
                           Date:
                           Date:
                           Date:

Have you ever had any of the following?         Circle the correct answer

Anemia ......................................................................yes    date:    no
Blood transfusion.....................................................yes    date:    no
Heart catherization...................................................yes    date:    no
Heart attack..............................................................yes    date:    no
Treadmill exam.........................................................yes    date:    no
Heart murmur............................................................yes    date:    no
Asthma......................................................................yes    date:    no
Gout..........................................................................yes    date:    no
Cancer.......................................................................yes    date:    no
Thyroid.....................................................................yes    date:    no
Glaucoma..................................................................yes    date:    no
Phlebitis...................................................................yes    date:    no
Rheumatic fever.......................................................yes    date:    no
Immunization: polio ✓ tetanus ✓ mumps ✓ Measles ✓ small pox ✓ diphtheria ✓
             Skin test for tuberculosis ✓
Do you have any tattoos? _NO_
Smoke?   Yes ____ no _X_ how long _____ type of smoker _____
Alcohol?   yes _X_ no ____ type _Beer_ _____ how may times a week? _occasionally_

| Present medication | dosage you take | times a day |
|---|---|---|
| _Capoten_ | _50 mg_ | _BID_ |
| _HCTZ_ | _25 mg_ | _BID_ |
| _Estrace_ | _1 mg_ | _daily_ |
| _Xanax_ | _0.25 mg_ | _prn TID_ |
| _Neurotin_ | _300 mg_ | _1 bedtime_ |
| _naproxen_ | _500 mg_ | _BID_ |
| _Ultram_ | _50 mg_ | _1-2 prn_ |

allergic to an medications? _None_
Ladies only: have you ever been pregnant? _yes_   how many times? _4_
How many living? _3_   how many miscarriages? _1 stillborn_
Referring physician _Dr Cook_

D 0092

October 24, 2006


AUDRA COOK, MD
1324 HARVILLE RD
DUNCAN, OK 73533

RE: BARBARA D CLARK

Dear Dr. Cook,

I had the pleasure of seeing your patient, Barbara Clark, in arthritis clinic today. She presents for the evaluation of diffuse pain. She reports that this pain is located mainly in her shoulders, hips and along her low back. She was seen earlier this year by Dr. Hynd who is a rheumatologist. He felt that she has fibromyalgia. She reports that she has had this pain for years. It is there daily, but does seem to have episodes of exacerbation. The pain is mostly in the top of her shoulders, her neck and along the lateral hips. The muscles in her upper arms and thighs are very painful at times. She denies to me any problems with any other joints or joint swelling. She does report prolonged morning stiffness, sometimes lasting for hours. She has very poor sleep with frequent awakenings due to pain. She has taken Naproxen for years and she does feel that it helps some. She takes Neurontin at night, which helps her relax to sleep. She was recently started on Tramadol, which she reports really helps her pain. She also has problems with chronic headaches and the Tramadol has seemed to help this as well. About two weeks ago she had an episode of low grade fevers, shortness of breath and a rash on her arms, which has now resolved.

Pertinent findings on physical examination reveal an obese, white female. She has no evidence of synovitis in any of her joints. She has decreased abduction of her bilateral shoulders due to pain along the top of her shoulders and the back of her neck. She has good range of motion of

RE: BARBARA D CLARK
OCTOBER 24, 2006
PAGE TWO

her bilateral hips. The left knee has some crepitus, but no effusions. The right knee has been replaced. She has tenderness to palpation over multiple muscle groups along her upper arms and across her trapezius area. She has tenderness to palpation over muscle groups along her lateral thighs and the paraspinous muscles of her lumbar spine.

This is a patient with diffuse pain located mainly in the musculature along her shoulders, low back and hips with chronic headaches, chronic fatigue and poor sleep. I feel that she most likely has fibromyalgia. I have discussed the syndrome at length with the patient. Since she has prolonged morning stiffness I will go ahead and send lab to rule out an inflammatory cause for her pain and stiffness, but I feel that she most likely has fibromyalgia. I have recommended that she continue the Tramadol since it does seem to help her pain. I have given her some samples of Ultram extended release to take at bedtime to see if this will help control her pain throughout the night to allow her to get better sleep. I will send a CBC, CMP, ESR, CRP, Reichlin profile, rheumatoid factor and anti-CCP today.

Thank you for this consultation.

Appreciatively,


Amy Shultz, MD
AS/cmb 10/25/06

**D 0094**

10/31/06 TUE 11:37 FAX 405 271 7524      OMRF IMMUNOLOGY

# OMRF CLINICAL IMMUNOLOGY LAB REPORT

| | | |
|---|---|---|
| NAME: | CLARK, BARBARA D | OMRF:   62619   DATE:   10/24/2006 |
| FACILITY: | MCBRIDE CLINIC | FACILITY #:   180737 |
| MD NAME: | SHULTZ | SPECIMEN:   SERUM |
| COMMENTS: | N/A | |

| TEST NAME     (UNITS) | TEST RESULTS | NORMAL VALUES |
|---|---|---|
| **REICHLIN PROFILE** | | |
| HEp-2 cells [ANA by IFA] [TITER] | 1080 NUCLEO (See abbreviations below) | NEG or <40 |
| Anti-dsDNA by IFA    (TITER) | NEG | NEG or <10 |
| ENA [Precipitating Ab w/ CTE] | **Summary of ENA Results = NEG**<br><br>**Ro** NEG   **La** NEG   **Sm** NEG<br>**nRNP** NEG   **P** NEG   **PmScl** NEG<br>**Jo-1** NEG   **Mi-2** NEG   **Ul1** NEG<br>**Scl-70** N/A | NEG<br>RTE: NEG |
| [RTE used for anti SCL-70] | | |
| CH-50 [pt/normal] [CH50 UNITS] [Total Hemolytic Complement] | — *Possible undifferentiated connective tissue disease* ⊕ *I feel she has Fibromyalgia as well.* ⊕ *response to tramadol. Start Plaquenil 200mg PO BID, co weeks.* | 40-70 |
| ANCA by IFA    (TITER) | | NEG or <20 |
| PR3 by ELISA    (U/mL) | | <15 U/ML |
| MPO by ELISA    (U/mL) | | <15 U/ML |
| CCP by ELISA | | NEG |
| Cryoglobulins    (mg/mL) | | <0.05 or NEG |
| Anti-ssDNA by RIA    (%)<br><span style="font-size:small">RIA method discontinued 09/01/01</span> | | <   % |
| Anti-ssDNA by ELISA | | NEG |
| Anti-Ribosomal P by ELISA | | NEG |
| **ANTI-PHOSPHOLIPID AB by EIA [aPL]** [Cardiolipin Substrate] | *[signature] MD Shultz* | |
| HIGH = > 90    (PL UNITS) | | |
| MOD = 20-89    IgG | | <10 |
| LOW = 10-19    IgM | | <10 |
| NEG = < 10    IgA | | NEG |

## ANA PATTERN ABBREVIATIONS

NS=NUCLEAR SPECKLED, NH=NUCLEAR HOMOGENEOUS, RIM=PERIPHERAL
MITO=MITOCHONDRIAL, CYTO=CYTOPLASMIC, CD=CYTOPLASMIC DOTS,
CENT=CENTROMERE, PSEUDOCENT OR SBS=PSEUDO-CENTROMERE
NUCLEO OR NO=NUCLEOLAR, MSA=MITOTIC SPINDLE APPARATUS

N/A = The test is Not Applicable because it was not ordered.   UTA=Unable to Analyze

**MCBRIDE CLINIC, INC**
1110 NORTH LEE
OKLAHOMA CITY, OKLAHOMA 73103
(405)552-9477
FINAL SAMPLE REPORT

Page: 2

Patient ID:   180737.0                    Reported: 10/27/06 10:09
Patient Name: **CLARK, BARBARA D.**       Doctor: AMY L SHULTZ MD
DOB: **REDACTED**  Sex: F                  Location: LAB CORRAL EZ CHART
Comments: IN1                             no fast

Lab No:   06297083    Drawn: **10/24/06 16:54**  Tech: JNM  Rec'd: **10/25/06 15:15**  Tech: JG
Comments:

| PROCEDURE | NORMAL | ABNORMAL | UNITS | REFERENCE RANGE | |
|-----------|--------|----------|-------|-----------------|---|
| *** GENERAL CHEMISTRIES *** | | | | | |
| CRP-1 | | **1.8** H | mg/dL | <    0.7 | R |
| CK | 99 | | U/L | 21 -   205 | R |
| | | | | | |
| *** SEROLOGY/IMMUNOLOGY *** | | | | | |
| CCP ANTIBODY, IGG | 1 | | UNITS | <    20 | J |

REFERENCE RANGE:
NEGATIVE:      LESS THAN 20
WEAK POSITIVE: 20-39
STRONG POSITIVE:60 OR GREATER


RF TITER               Negative                      Negative          J

**D 0096**

# MCBRIDE CLINIC, INC
## 1110 NORTH LEE
### OKLAHOMA CITY, OKLAHOMA 73103
### (405)552-9477
### FINAL SAMPLE REPORT

Page: 1

Patient ID:   180737.0
Patient Name: **CLARK, BARBARA D.**
DOB: REDACTED    Sex: F
Comments: IN1

Reported: 10/27/06 10:09
Doctor: AMY L SHULTZ MD
Location: LAB CORRAL EZ CHART
no fast

Lab No:   06297083    Drawn: **10/24/06 16:54**   Tech: JNM   Rec'd: **10/25/06 15:15** Tech: JG
Comments:

| PROCEDURE | NORMAL | ABNORMAL | UNITS | REFERENCE RANGE |
|---|---|---|---|---|
| *** HEMATOLOGY *** | | | | |
| WESTERGREN SEDIMENTATION RA | 9 | | MM/HR | 0 - 20  q |

D 0097

CLARK, BARBARA D
00000180737  SEX: F
REDACTED
SX-LAB:
SHULTZ    1/16/07

**McBride** Clinic
Orthopedics & Arthritis

| Labs reviewed pertinent findings: | Date: 10/27/06 |
|---|---|

ESR - 9
CRP - 1.8

ANA: 1:1080 Nucleolus  Abs: ⊖     RF: ⊖     HLA-B27:
ENA: ⊖     Anti-CCP: ⊖

**A/P:**

1. UCTD - ⊕ ANA, ? rash, arthritis - started on plaquenil will see how she does.

2. fibromyalgia - symptoms currently better today since she has been getting more rest being off from work due to recent foot surgery. Good response to tramadol prn during day + Ultram ER 100g QHS. Cont naproxen as well

3. RTC 3-4 months

J.R. ___ MD
Shultz

CLARK, BARBARA D
00000180737    SEX: F
REDACTED
SX-LAB:
SHULTZ     1/16/07

# *McBride* Clinic
## Orthopedics & Arthritis

| | |
|---|---|
| **Date and Time:** 1:30pm | **Allergies:** NLDA |
| **CC:** Flu, UCTD + Fibromyalgia | **Meds:** |

**HPI:** Pt presents for flu. 1st seen (?) today for diffuse pain when shoulder + hip area + also has low back. (?) fatigue + extremely poor sleep. She had a recent episode (?) low grade fever + pain on her arms. At last visit, I sent lab work became back (?) a (+) ANA 1:160 nucleolar 1:320 x 0.853, TNPLN I started her on plaquenil I also feel that she has fibromyalgia. She has felt (?) greatly also + has been off work. She has really contacted me. She also feels that the ultram + GHS helps a lot, as well

Meds (right column):
Caroten
HCTZ
Neurontin 300 QHS
ASA
naproxen 500 BID
ultram 50mg - QID 60
ultram 100 QHS
plaquenil 200 0.853 TNPLN
plaquenil 200 BID

**PMH:** HTN
Fibromyalgia - fatigue, insomnia, headaches, diffuse muscle pain
UCTD

Surgeries:
hysterectomy
cholecystectomy
TKA

**FMHx:** See previous
**Social:** See previous

**ROS:** Normal or not present if checked: □Constitutional □Skin □Eyes □ENT □Lungs □Heart □GI □Muscle □Neuro □Psycho □Fever □Weight changes □Alopecia □Rash □Dry Eyes □Dry Mouth □Oral ulcers □Reflux □SOB □CP □N/V/D    (+) fatigue (+) insomnia

| wt: 235 | P: 100 | B: 110/96 |
|---|---|---|

**PE: VS-**

| | | |
|---|---|---|
| **Gen:** | Normal □ | WDWN wt in NAD AAOX3 |
| **Skin:** | Normal □ | |
| **Eyes:** | Normal □ | |
| **ENT:** | Normal □ | (+) synovitis |
| **Lymph nodes:** | Normal □ | |
| **Lungs:** | Normal □ | Good nom (B) shoulders + hips |
| **Cardiac:** | Normal □ | |
| **Abdomen:** | Normal □ | TTP in muscle groups along (B) |
| **Extremities:** | Normal □ | upper arms + occipital process |
| **Muscular:** | Normal □ | musculature |
| **Neuro:** | Normal □ | |
| **Joints:** | Normal □ | (+) TTP over (B) trochanteric bursa |

(+) knee effusions



## McBrideClinic
### Orthopedics & Arthritis

Patient Name _Barbara Dianne Clark_          Date _1-16-07_

Address & Phone Number (if changed) _no Change_

How are you feeling? _Good mild pain, achy-Tired_

Please list all medications you are currently taking with dosage and how many times a day that you are taking them:

| | |
|---|---|
| Capoten 50mg Bid | Xanax .25mg TID PRN |
| HCTZ 25mg BID | Estrce 1 mg OD |
| Neurontin 300mg hr sleep | Phguant BID |
| Paxil 20mg 10D | |
| Naproxen 500mg BID prn | |
| Ultram 50mg 1-2 q 4-6hrs | |
| Ultram 100mg 1 HS prn | |

List any medications written by this doctor that you need a WRITTEN RX for today.

Please mark on the diagram where you hurt.

Right Side          Left Side

CLARK, BARBARA D
00000180737    SEX:  F
REDACTED
SX=LAB:
SHULTZ

### CIRCLE A NUMBER FROM 0 TO 10 THAT BEST DESCRIBES YOUR PAIN

| NO PAIN | | | | DISTRESSING PAIN | | | | | | UNBEARABLE PAIN |
|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |

CLARK, BARBARA D
00000180737    SEX:  F
**REDACTED**
SX-LAB:
SHULTZ          5/8/07


**McBride Clinic**
Orthopedics & Arthritis

| Labs reviewed pertinent findings: | Date: |
|---|---|

ANA: 1:1080 nucleolos BS: ⊖        RF: ⊖        HLA-B27:
ENA: ⊖                             Anti-CCP: ⊖

A/P:

1. UCTD — ⊕ ANA, rash, arthritis — somewhat
better since starting plaquenil. Difficult to fully
ascertain due to coexist'g fibromyalgia, as well.

— continue plaquenil 200g PO BID
— Depo-medrol — 160 g IM x 1
— CBC, CMP, ESR, CRP, CK, Vit B₁₂ today

2. fibromyalgia — ⊕ fatigue which w/ meds is bad
she reports. she is sleeping a little better.

— continue ultram ER & PRN tramadol, beglos her
hyper so she cannot take it at night. Gave
her Darvocet-N-100 to take as needed for pain
prn @ bedtime

RTC — 3 months

Shultz

CLARK, BARBARA D
00000180737   SEX: F
REDACTED
SX-LAB:    5/8/07
SHULTZ

# *McBride* Clinic
## Orthopedics & Arthritis

| | |
|---|---|
| **Date and Time:** 2:30pm | **Allergies:** NKDA |
| **CC:** flu, UCTD + fibromyalgia | **Meds:** Capoten |

**HPI:** Pt. presents for flu. She reports that she is tired & achy. She has days where she feels good & other days where she is so fatigued and hurting. Main area of pain lately has been her upper arms. She denies any jnt swelling. She reports that she has been sleeping somewhat better than before. ER + P tramadol during the day. She is leery to take it too close to bedtime since it seems to keep her awake. Mainly suffering from fatigue.

NCTZ
Estrace
FSA
daquine? 2000
W Hamson Per
as proven prn

Taken an wition
P.R + P tramadol

**PMH:** HTN
fibromyalgia — fatigue, insomnia, headaches, diffuse muscle pain
UCTD — ⊕ ANA, rash, arthritis

synovectomy L hand
carpectomy
R TKA

**FMH:** see prev. visit
**Social:** see prev. visit

**ROS:** Normal or not present if checked: □Constitutional □Skin □Eyes □ENT □Lungs □Heart □GI □Muscle □Neuro □Psyche □Fever □Weight changes □Alopecia □Rash □Dry Eyes □Dry Mouth □Oral ulcers □Reflux □SOB □CP □N/V/D    ⊕ fatigue ⊕ insomnia

| wt: 220 | P: 84 | BP: 160/100 |
|---|---|---|

| PE: VS- | | |
|---|---|---|
| **Gen:** | Normal ☒ | WDWN wf in NAD, A+O×3 |
| **Skin:** | Normal ☒ | |
| **Eyes:** | Normal ☒ | ⊘ synovitis in any joints |
| **ENT:** | Normal ☒ | |
| **Lymph nodes:** | Normal ☒ | ↓'d abduction of ® shoulders due to pain |
| **Lungs:** | Normal ☒ | |
| **Cardiac:** | Normal ☒ | |
| **Abdomen:** | Normal ☒ | good rom hips |
| **Extremities:** | Normal ☒ | ® TKA replacement |
| **Muscular:** | Normal □ | L knee crepitus c̄ effusion |
| **Neuro:** | Normal ☒ | |
| **Joints:** | Normal □ | ⊘ ankle swelling |
| | | ⊕ TTP over in triceps & upper arms & along trochanteric bursa |

PATIENT INFORMATION

**CLARK, BARBARA D**

REPORT STATUS **Final**

Diagnostic Laboratory of Oklahoma
CLIENT SERVICE 800.891.2917

DOB: REDACTED    Age: 59
GENDER: F

ORDERING PHYSICIAN

**SCHULTZ, AMY**

CLIENT INFORMATION

SPECIMEN INFORMATION
SPECIMEN: X0387938H
REQUISITION: 0001133
LAB REF NO:

ID: 180737
PHONE: 580-252-1111

00039050
MCBRIDE CLINIC-NORMAN
3700 36TH AVE NW
NORMAN, OK 73072-1801

COLLECTED: 05/08/2007   15:35
RECEIVED: 05/08/2007   15:39
REPORTED: 05/16/2007   08:42

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| VITAMIN B12 | 345 | | 200-1100 pg/mL | XO |

PLEASE NOTE: ALTHOUGH THE REFERENCE RANGE FOR VITAMIN
B12 IS 200 1100 PG/ML, IT HAS BEEN REPORTED THAT BETWEEN
5 AND 10% OF PATIENTS WITH VALUES BETWEEN 200 AND 400
PG/ML MAY EXPERIENCE NEUROPSYCHIATRIC AND HEMATOLOGIC
ABNORMALITIES DUE TO OCCULT B12 DEFICIENCY; LESS THAN 1%
OF PATIENTS WITH VALUES ABOVE 400 PG/ML WILL HAVE SYMPTOMS.

**Performing Laboratory Information:**

XO   Diagnostic Laboratory of Oklahoma-DLO 1001 Cornell Pkwy Oklahoma City OK 73108
    Laboratory Director: Ronnie G. Schlesinger, M.D.

1-580-252-1111

Duncan Regional Hospital
Brooke, Pharmacy
1-580-252-5300 - main #
Call in to this pharmacy
Cyanocobalamin
1000 mcg/mL
Inject 1 mL 1m every
Give syringes to
month

CLARK, BARBARA D - X0387938H

**D 0103**

## MCBRIDE CLINIC, INC
### 1110 NORTH LEE
### OKLAHOMA CITY, OKLAHOMA 73103
### (405)552-9477
### FINAL SAMPLE REPORT

Page: 2

Patient ID:   180737.0
Patient Name: **CLARK, BARBARA D.**
DOB: REDACTED Sex: F
Comments: IN1

Reported: 05/09/07 17:29
Doctor: AMY L SHULTZ MD
Location: LAB CORRAL EZ CHART
no fast

---

Lab No:   70001883   Drawn: **05/08/07 15:13**   Tech: JNM   Rec'd: **05/09/07 15:46** Tech: mo
Comments:

---

| PROCEDURE | NORMAL | ABNORMAL | UNITS | REFERENCE RANGE | |
|-----------|--------|----------|-------|-----------------|---|
| *** COMPREHENSIVE METABOLIC PROFILE *** | | | | | |
| SODIUM | 141 | | mmol/L | 136 - 145 | R |
| POTASSIUM | 3.8 | | mmol/L | 3.5 - 5.0 | R |
| CHLORIDE | 101 | | mmol/L | 100 - 109 | R |
| CARBON DIOXIDE | 28 | | mmol/L | 22 - 34 | R |
| ANION GAP | 12 | | RATIO | 5 - 14 | R |
| GLUCOSE | | **65** L | mg/dL | 70 - 110 | R |
| BUN | 16 | | mg/dL | 6 - 20 | R |
| CREATININE | 0.7 | | mg/dL | 0.6 - 1.3 | R |
| AST (SGOT) | 23 | | U/L | 9 - 34 | R |
| ALT (SGPT) | 43 | | U/L | 20 - 65 | R |
| ALK. PHOS. | 84 | | U/L | 40 - 136 | R |
| TOTAL BILIRUBIN | 0.41 | | mg/dL | < 1.00 | R |
| TOTAL PROTEIN | 7.3 | | g/dL | 6.4 - 8.2 | R |
| ALBUMIN | 4.0 | | g/dL | 3.4 - 4.5 | R |
| A/G RATIO | 1.2 | | CALC | 1.0 - 2.2 | R |
| CALCIUM | 9.5 | | mg/dL | 8.4 - 10.1 | R |
| | | | | | |
| *** GENERAL CHEMISTRIES *** | | | | | |
| CRP-1 | | **1.5** H | mg/dL | < 0.7 | R |
| CK | 86 | | U/L | 21 - 205 | R |

*[signature]* Amy Shultz, M.D.

D 0104

# MCBRIDE CLINIC, INC
## 1110 NORTH LEE
### OKLAHOMA CITY, OKLAHOMA 73103
### (405)552-9477
### FINAL SAMPLE REPORT

Page: 1

Patient ID: 180737.0
Patient Name: **CLARK, BARBARA D.**
DOB: **REDACTED** Sex: F
Comments: IN1

Reported: 05/09/07 17:29
Doctor: AMY L SHULTZ MD
Location: LAB CORRAL EZ CHART
no fast

Lab No: 70001883    Drawn: **05/08/07 15:13**   Tech: JNM   Rec'd: **05/09/07 15:46**   Tech: mo
Comments:

| PROCEDURE | NORMAL | ABNORMAL | | UNITS | REFERENCE RANGE | |
|---|---|---|---|---|---|---|
| *** HEMATOLOGY *** | | | | | | |
| WBC | 9.1 | | | x10^3/uL | 4.0 - 10.8 | G |
| RBC | | 5.45 | H | x10^6/uL | 4.20 - 5.40 | G |
| HGB | 15.7 | | | g/dL | 12.0 - 16.0 | G |
| HCT | | 50.3 | H | % | 37.0 - 47.0 | G |
| MCV | | 92.3 | H | fL | 82.0 - 92.0 | G |
| MCH | 28.8 | | | pg | 27.0 - 31.0 | G |
| MCHC | | 31.2 | L | g/dL | 32.0 - 36.0 | G |
| RDW_CV | 14.3 | | | % | 12.7 - 14.5 | G |
| PLT | 207 | | | x10^3/uL | 140 - 440 | G |
| MPV | | 12.9 | H | fL | 9.7 - 11.5 | G |
| ** AUTO DIFF *** | | | | | | |
| NEUT# | 5.68 | | | x10^3/uL | 2.40 - 7.70 | G |
| LYMPH# | 2.44 | | | x10^3/uL | 1.00 - 4.30 | G |
| MONO# | 0.68 | | | x10^3/uL | 0.10 - 1.30 | G |
| BASO# | 0.04 | | | x10^3/uL | 0.00 - 0.10 | G |
| EOS# | 0.24 | | | x10^3/uL | 0.00 - 0.40 | G |
| NEUT% | 62.6 | | | % | 45.0 - 85.0 | G |
| LYMPH% | 26.9 | | | % | 10.0 - 50.0 | G |
| MONO% | 7.5 | | | % | 0.0 - 10.0 | G |
| BASO% | 0.4 | | | % | 0.0 - 3.0 | G |
| EOS% | 2.6 | | | % | 0.0 - 7.0 | G |
| WESTERGREN SEDIMENTATION RA | 10 | | | MM/HR | 0 - 20 | R |

*Dr. Shultz, M.D.* (signature)

**D 0105**

Barbara Clark

180737

9-5-07

# McBride Clinic
## Orthopedics & Arthritis

plaquenil

| Date and Time: 1230 | Allergies: NKDA |
|---|---|
| CC: Flu, UCTD + FMS | Meds: Xanax |

**HPI:** Pt presents for Flu. She reports that she is doing about the same. She still is having trouble c sleep + chronic fatigue. Her pain is mostly in her shoulder region + muscles of her upper arms + hip region. She denies any joint swelling, stiffness, or rashes since last visit. She is on plaquenil also, takes the Ultram ER + tramadol prn pain during the day + darvocet at night. She has noticed some blotched area of skin on her (R) thigh. Occ. steroid injections help alot.

ultram 1-2 prn
ultram ER 100s
darvocet prn
naproxen 500s
naprotin 500s
B12 month
the not see
med list plays

**PMH:** HTN
FMS - fatigue, insomnia diffuse muscle soreness
UCTD ⊕ ANA, rash, arthritis prn hysterectomy
headaches
cholecystectomy
⊕ TT-V

| FMHx: | see previous |
|---|---|
| Social: | see previous |

see HPI

**ROS:** Normal or not present if checked: ☐Constitutional ☐Skin ☐Eyes ☐ENT ☐Lungs ☐Heart ☐GI ☐Muscle ☐Neuro ☐Psych ☐Fever ☐Weight changes ☐Alopecia ☐Rash ☐Dry Eyes ☐Dry Mouth ☐Oral ulcers ☐Reflux ☐SOB ☐CP ☐N/V/D
⊕fatigue
⊕insomnia

see HPI

| wt: 224 | P: 88 | BP: 160/80 |
|---|---|---|

**PE: VS-**

| Gen: | Normal ☐ | WDWN WF in NAD. Afebrile |
|---|---|---|
| Skin: | Normal ☐ | - small well circumscribed hyperpigmented area on her right thigh. |
| Eyes: | Normal ☐ | |
| ENT: | Normal ☐ | |
| Lymph nodes: | Normal ☐ | |
| Lungs: | Normal ☐ | no synovitis in any joints |
| Cardiac: | Normal ☐ | mildly ↓'d abduction ® shoulder |
| Abdomen: | Normal ☐ | due to pain. ⊕ TTP over muscles |
| Extremities: | Normal ☐ | in her upper arms. |
| Muscular: | Normal ☐ | |
| Neuro: | Normal ☐ | Good ROM hips |
| Joints: | Normal ☐ | ⊕ TTP over lateral thighs + trochanteric area |

⊕ TLA    no ankle swelling
⊕ knee crepitus c ⊕ effusion

D 0106

Barbara Clark
180737
9-5-07

# McBride Clinic
## Orthopedics & Arthritis

Labs reviewed pertinent findings:     Date: 5/9/07

TCK - 86

Vit B12 - 346    CMP - WNL      CBC - OK
             CRP - 1.5        c̄ diff
                                ESR - 10

ANA: 1:1080 Nucleolar   DS: ⊖      RF: ⊖      HLA-B27:

ENA: ⊖                    Anti-CCP: ⊖

A/P:

1. UCTD - ⊕ ANA, rash, arthritis — has been
doing better on plaquenil as far as her joint
pain & stiffness. ⊖ rashes.

- continue plaquenil
- Depo medrol 160 IM x1 today
- darkened skin areas on thighs - related to plaquenil?
cautioned pt.
- ⊕ Depo medrol 160 IM x1
2. Fms -

- continue ultram ER c̄ PRN tramadol or
Darvocet for breakthrough
- pt declined sleep medication currently

3. ↓ Vit B12 — no replacement

4. RTC - 3 months

[signature]



180737

# **McBride**Clinic
## Orthopedics & Arthritis

Patient Name _Barbara Dianne Clark_    Date _9-5-07_

Address & Phone Number (if changed) _____

How are you feeling? _OK_

Please list all medications you are currently taking with dosage and how many times a day that you are taking them:

| | |
|---|---|
| Capoten 50mg TID | Naproxen 500mg 1 BID |
| HCTZ 25mg 1 daily | Neuroton 300mg 1 HS |
| Estrace 1mg daily | B-12 inj monthly |
| Xanax .25mg PRN TID | |
| Ultram 50mg 1-2 prn TSY-6 P/N pain | |
| Ultram ER 100mg 1 HS | |
| Darvocet 1 HS HAVE Taken more | |

List any medications written by this doctor that you need a WRITTEN RX for today.

Darvocet, B-12, Ultram ER, Ultram 50mg + Q4-6° 150t2
T 6-8° Pain/pm 100t2 T Q HS 30t2

Please mark on the diagram where you hurt.



Right Side     Left Side

CIRCLE A NUMBER FROM 0 TO 10 THAT BEST DESCRIBES YOUR PAIN

| NO PAIN | | | DISTRESSING PAIN | | | | | | | UNBEARABLE PAIN |
|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |



# Prudential Financial



## 1 Employer Information

Employer Name: DUNCAN REGIONAL HOSPITAL

Control Number: 80629

Location / Division: DUNCAN OK

Branch Number:

## 2 Employee Information

First Name: BARBARA

MI: D

Social Security Number: REDACTED

Last Name: CLARK

Suffix:

Mailing Address - Line 1: 5990 SOUTH 13TH

Mailing Address - Line 2:

Birth date (MM/DD/Year):

City: DUNCAN

State: OK

Zip Code: 73533 -

Gender: ○ Male  ● Female

Marital Status: ○ Unmarried  ● Married  ○ Divorced  ○ Widowed

Primary Phone Number: 580 - 252 - 1111

Work Phone Number:

Email Address:

Date Last Worked (MM/DD/Year): 8 / 19 / 2007

Date First Absent: 8 / 20 / 2007

Date First Treated for this Condition: 10 / / 2006

Date Expected to Return to Work: / /

Spouses Date of Birth: 09 / 11 / 1943

Is Spouse Employed? ☑ Yes  ○ No

EDUCATION: Highest Grade Completed: 12

Number of Children Under 18:

Age of Youngest Child: 33

## 3 Job Information

Occupation: LPN

What Job Category best describes your required job duties?  (Please check appropriate box)

○ Sedentary — Negligible Weight Mostly Sitting

○ Light — Up to 10 lbs. frequently Up to 20 lbs. occasionally and / or Frequent Walk/Stand and / or Constant Push/Pull

☑ Medium — 10 to 25 lbs. freq. Up to 50 lbs. occ.

○ Heavy — 25 to 50 lbs. freq. 50 to 100 lbs. occ.

○ Very Heavy — More than 50 lbs. freq. 100 lbs. occasionally

○ Other — (Please describe below)

## 4 Primary Care Physician

Physician Name: Amy SHULTZ M D

Primary Phone Number: 405 - 230 - 9600

Street Address: 3700 36TH AVENUE NW

Fax Number: 405 - 230 - 9601

City: NORMAN

State: OK

Zip Code: 73072 =

For Internal Use Only

Claim Number

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480, Philadelphia, PA 19
Tel: 1-800-842-1718   Fax: 1-877-8

D 0109

* 1 0 1 C 0 1 *

 **Prudential Financial**

**Group Disability Insurance
Employee Statement**

Employee Last Name

| C | L | A | R | K | | | | | | | | | | | | | | | | |

Social Security Number

# REDACTED

---

**5**

**Medical Information**

All Other Physicians You Have Consulted for this Condition

| Physician Name | Specialty | Phone Number |
|---|---|---|
| | | |
| | | |
| | | |

What medical condition is preventing you from working? *undifferentiated Connective Tissue disease, & Fibromyalgia*

How does this condition interfere with your ability to perform your job? *pain, fatigue, difficulty in concentration, memory,*

Have you been hospitalized for this condition?   ○ Yes  ⊘ No   ○ In-Patient  ○ Out-Patient

If hospitalized, give dates:
From: [ ] / [ ] / [ ]
To: [ ] / [ ] / [ ]

If you are pregnant:
Estimated Delivery Date [ ] / [ ] / [ ]
Actual Delivery Date [ ] / [ ] / [ ]

Name of Your Health Insurance Company
[ ]

Telephone Number [ ] - [ ] - [ ]

---

**6**

**Other Income & Workers' Comp. Information**

What other income are you entitled to receive as a result of your disability? (Examples: Social Security Disability or Retirement Benefits, Workers' Compensation, State Disability, Pension Disability or Retirement, No-Fault Auto Insurance, Salary Continuance, Group Life or Disability Plan, Health or Welfare Plan, Individual Disability Benefits.) Please send copies of any letters or notices approving or denying benefits.

| Source | Applied For Yes | Applied For No | Amount | Frequency | Date Benefit Begins | Date Benefit Ends |
|---|---|---|---|---|---|---|
| Salary Continuance | ○ | ⊘ | | | | |
| State Disability Benefits | ○ | ⊘ | | | | |
| Workers' Compensation | ○ | ⊘ | | | | |
| Other: | ○ | ○ | | | | |
| Other: | ○ | ○ | | | | |

Is this condition work related?   ○ Yes  ⊘ No   If Yes, do you intend to file a Workers' Compensation claim?   ○ Yes  ○ No

---

**7**

**Fraud Notice**

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties. This includes Employer and Attending Physician portions of the claim form. (Please see state specific fraud warnings attached.)

X *Barbara Deann Clark*
Employee Signature

| 9 | / | 0 | 6 | / | 2 | 0 | 0 | 7 |
Date Signed


*101C02*

D 0110

# Prudential  Financial

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Tel: 800-842-1718   Fax: 877-889-4885
http://www.prudential.com/inst/gldi

## Group Disability Insurance Authorization

**1** **Claimant's Information**

First Name: BARBARA    MI: D    Last Name: CLARK

Social Security Number: REDACTED

Employee Phone Number: 580 252 1111

Control Number: 80629

**2** **Authorization for Release of Information to Prudential Insurance Company**

This Authorization is intended to comply with the HIPAA Privacy Rule

I authorize any health plan, physician, health care professional, hospital, clinic, laboratory, pharmacy, medical facility, or other health care provider that has provided treatment, payment or services to me or on my behalf ("My Providers") to disclose my entire medical record and any other health information concerning me to the Prudential Insurance Company of America (Prudential) and its agents, employees, and representatives. This includes information on the diagnosis or treatment of Human Immunodeficiency Virus (HIV) infection and sexually transmitted diseases. This also includes information on the diagnosis and treatment of mental illness and the use of alcohol, drugs, and tobacco, but excludes psychotherapy notes.

I authorize any insurance company, employer, the Social Security Administration, or other person or institutions to provide any information, data or records relating to my Social Security, Workers' Compensation, credit, financial, earnings, activities or employment history to Prudential.

Unless limits* are shown below, this form pertains to all of the records listed above.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this authorization and I instruct My Providers to release and disclose my entire medical record without restriction.

This information is to be disclosed under this Authorization so that Prudential may: 1) administer claims and determine or fulfill responsibility for coverage and provision of benefits; 2) obtain reinsurance; 3) administer coverage; and 4) conduct other legally permissible activities that relate to any coverage I have or have applied for with Prudential.

This authorization shall remain in force for 24 months following the date of my signature below, while the coverage is in force, except to the extent that state law imposes a shorter duration. A copy of this authorization is as valid as the original. I understand that I have the right to revoke this authorization in writing, at any time, by sending a written request for revocation to Prudential at: P.O. Box 13480, Philadelphia, PA 19176. I understand that a revocation is not effective to the extent that any of My Providers has relied on this Authorization or to the extent that Prudential has a legal right to contest a claim under any insurance policy or to contest the policy itself. I understand that any information that is disclosed pursuant to this authorization may be redisclosed and no longer covered by federal rules governing privacy and confidentiality of health information.

I understand that if I refuse to sign this authorization to release the entire medical record, Prudential may not be able to process my claim for benefits and may not be able to make any benefit payments. I understand that I have the right to receive a copy of this authorization.

*Limits, if any: _____

X *Barbara Dianne Clark*
Employee Signature (indicate how related if signed by other than claimant)

Date (MM DD YYYY): 09 06 2007

**NOTICE TO MONTANA RESIDENTS:** You or your authorized representative are entitled to receive a copy of this Authorization, and upon request, a record of any subsequent disclosures of personal or privileged information.

Prudential Financial and the Rock logo are registered service marks of The Prudential Insurance Company of America and its affiliates.

# Prudential  Financial

**Group Disability Insurance**

The Prudential Insurance Company of America
**Disability Management Services**
P.O. Box 13480, Philadelphia, PA 19176
Tel: 800-842-1718  Fax: 877-889-4885
http://www.prudential.com/inst/gldi

## Group Disability Insurance Employee Tax Notice

**1** **Employee Information**

First Name: BARBARA   MI: D   Last Name: CLARK

Social Security Number: REDACTED   Employee Phone Number: 580 252 1111

Email Address:

Employer's Name: DUNCAN REGIONAL HOSPITAL   Control Number:

**\*Notice to all parties completing this form: It is fraudulent to fill out this form with information you know to be false or to omit important facts. Criminal and/or civil penalties can result from such acts.**

**2** **Federal and State Withholding**

Benefits provided under your Group Disability Income Plan may be subject to federal, state and local taxation. Contact your employee benefits representative or disability plan trustee for details on your rights and obligations under the various tax codes.

If you wish to have Federal Income Tax (FIT) withheld from any payments you may receive, indicate the amount to be withheld ($20 weekly minimum for STD/$88 monthly minimum for LTD) below and sign the authorization. Withholding requests may also be submitted on IRS Form W-4S. Withholding requests must be stated in whole dollar amounts. FIT will not be withheld if the disability benefit is not taxable.

I request voluntary Federal Income Tax withholding from each payment, as authorized under section 3402(c) of the Internal Revenue Code, in the amount(s) of:

For STD [    ] .00 weekly ($20.00 minimum)

For LTD [    ] .00 monthly ($88.00 minimum)

**3** **Employee Signature**

X _Barbara Diane Clark_   Date (MM DD YYYY): 09 06 2007
Employee Signature

Prudential Financial and the Rock logo are registered service marks of The Prudential Insurance Company of America and its affiliates.

# Prudential  Financial

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Tel: 800-842-1718   Fax: 877-689-4885
http://www.prudential.com/inst/gidi

## Employer Statement

### 1  Employer Information

**Employer's Name:** DUNCAN REGIONAL HOSPITAL
**Control Number (required):** 80629

**Street:** 1407 WHISENANT
**Suite:**
**STD Branch (required):**

**City:** DUNCAN
**State:** OK
**ZIP Code:** 73533
**LTD Branch (required):**

**Employer's Telephone Number:** 580 251 8838
**Extension:**
**Email Address:** patricia.vanderbriggen@
duncanregional.com

### 2  Employee Information

**First Name:** BARBARA
**MI:** D
**Last Name:** CLARK

**Address 1:** 5990 SOUTH 13TH
**Social Security Number:** REDACTED

**Address 2:**
**Telephone Number:**

**City:** DUNCAN
**State:** OK
**Zip:** 73533
**Gender:** ☐ Male ☐ Female

**Please check the type of claim you are filing. Check all that apply:**
☐ STD Core  ☐ STD Supplemental _____
☑ LTD Core  ☐ LTD Supplemental _____
☐ TDB (NJ)  ☐ DB (NY)  ☐ VDI (CA)

**Employment Status:**
☐ Salaried Employee
☑ Hourly Employee
☐ Other _____

**Coverage Effective Date (date the employee became covered under the policy):**
STD: 01 01 2007 w/ unum
LTD: 01 01 2002

**Date Hired (MM DD YYYY):** 08 06 1991
**Coverage Termination Date (MM DD YYYY):**
**Last Date Employer Paid Compensation (MM DD YYYY):**

**Date First Absent (MM DD YYYY):** 08 20 2007
**Date Last Worked (MM DD YYYY):** 08 19 2007
**Date Work Was Resumed (MM DD YYYY):**

**Normal Earnings Prior to this Absence (exclude bonus, overtime, etc.)**
$ ___ , 17 . 48 PER
☑ Hour  ☐ Week  ☐ Bi-Weekly (every two weeks)
☐ Month  ☐ Year  ☐ Other _____

**If employee does not work Monday thru Friday, check days worked:**
☑ Varies  ☐ Wednesday  ☐ Saturday
☐ Monday  ☐ Thursday  ☐ Sunday
☐ Tuesday  ☐ Friday

**Is the employee subject to FICA Withholding?**
☑ Yes  ☐ No
If "No" indicate reason
_____

**How was the STD premium paid for the plan year in which the disability occurred?** ___ 0 ___% paid by employer
**Was the premium amount paid by the employer included in the employee's W-2?** ☐ Yes ☑ No
**Has either percentage changed within the last 3 years?** ☐ Yes ☑ No

**How was the LTD premium paid for the plan year in which the disability occurred?** _____% paid by employer
**Was the premium amount paid by the employer included in the employee's W-2?** ☐ Yes ☑ No
**Has either percentage changed within the last 3 years?** ☐ Yes ☑ No

# Prudential Financial

Employee's Social Security Number
**REDACTED**

**3**

## Other Income, Deductions and Workers' Compensation Information

Please indicate any applicable deductions such as Local Tax, State Income Tax, Medical, Dental, Life, 401K, that should be withheld from the employee's benefits, if approved. Please also indicate if the employee is receiving, or is eligible to receive, benefits from any other sources because of this absence, such as Salary Continuance, Workers' Compensation, Social Security Disability or Retirement Benefits, Statutory Benefits, No-Fault Auto Insurance, Retirement or Pension Plan. **Please send copies of any letters or notices approving or denying benefits.**

| Source | Applied for Yes / No | Amount | Frequency | Date Benefit Begins | Date Benefit Ends |
|---|---|---|---|---|---|
| Salary Continuance | ☐ ☑ | | ☐ Weekly ☐ Monthly | | |
| State Disability Benefits | ☐ ☑ | | ☐ Weekly ☐ Monthly | | |
| Social Security | ☐ ☑ | | ☐ Weekly ☐ Monthly | | |
| Workers' Compensation | ☐ ☑ | | ☐ Weekly ☐ Monthly | | |
| Medical Deduction | ☐ ☑ | | ☐ Weekly ☐ Monthly | | |
| Dental Deduction | ☐ ☑ | | ☐ Weekly ☐ Monthly | | |
| Vision Deduction | ☐ ☑ | | ☐ Weekly ☐ Monthly | | |
| Life Deduction | ☐ ☑ | | ☐ Weekly ☐ Monthly | | |
| Other | ☐ ☐ | | ☐ Weekly ☐ Monthly | | |

Has the employee indicated that the absence is work related? ☐ Yes ☑ No   Has a Workers Compensation claim been filed? ☐ Yes ☑ No

**4**

## Job Information

Occupation: **LPN**

DOT Job Code **29-2061.00**

What Job Category best describes the employee's essential job duties? (Please check the appropriate box)

☐ **Sedentary** — Negligible Weight Mostly Sitting
☐ **Light** — Up to 10 lbs. frequently Up to 20 lbs. occasionally and/or Frequent Walk/Stand and/or Constant Push/Pull
☑ **Medium** — Up to 25 lbs. frequently Up to 50 lbs. occasionally
☐ **Heavy** — 25 to 50 lbs. frequently 50 to 100 lbs. occasionally
☐ **Very Heavy** — More than 50 lbs. frequently 100 lbs. occasionally

☐ **Other** (Please describe)

As the employer, would you be able to accommodate modified duty to facilitate early return to work? ☑ Yes ☐ No

If Yes, please explain (reduced hours, job modification, etc.):

_Would be able to make reasonable accommodations._

**5**

## Life Insurance

Is employee covered under a Prudential Group Life Insurance Policy? ☐ Yes ☑ No

If Yes, what is the Face Amount? $ _____

**6**

## Fraud Notice

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties. This includes the Employee and Attending Physician portions of the claim form.

Employer Signature **X** _Patricia Van der Boegen_

Date (MM DD YYYY) **08 28 2007**

Prudential Financial and the Rock logo are registered service marks of The Prudential Insurance Company of America and its affiliates.

# Prudential Financial

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Tel: 800-842-1718  Fax: 877-689-4885
http://www.prudential.com/inst/gldi

## Attending Physician Statement

**1 Employee Information**

Employer's Name: DUNCAN REGIONAL HOSPITAL

Control Number (insured): 80629

Employee First Name: BARBARA    MI: D    Last Name: CLARK

Social Security Number: REDACTED    Date of Birth (MM DD YYYY):    Gender: ☐ Male  ☒ Female

I hereby authorize the release of information requested on this form by the below named physician for the purpose of claim processing.

Employee Signature: X Barbara Deanne Clark    Date (MM DD YYYY): 09 06 2007

The Employee is responsible for the completion of this form without expense to Prudential.

**2 To Be Completed By Attending Physician**

Clinical Diagnosis / ICD-9 Code is Required

Primary: 710 9

Secondary: 229 1

Secondary:

Pregnancy EDC (MM DD YYYY):

Actual Delivery Date (MM DD YYYY):

Date of Surgical Procedure (MM DD YYYY):

Relevant tests and surgical procedure (s) performed (please be specific):
Lab: CMP, CRP, CPK, ESR, CBC, Vit B-12, RF, Reichlin Profile

Current Medications, Treatment and Prognosis:
Cyanocobalamin, Darvocet, Ultram ER, Ultram, plaquenil

First Visit (MM DD YYYY): 6 24 2006    Last Visit (MM DD YYYY): 09 05 2007    Next Visit (MM DD YYYY): 11 28 2007

Was Claimant hospital confined? ☐ Yes  ☒ No    From (MM DD YYYY):

If yes, please provide name and address of hospital    To (MM DD YYYY):

Check all that apply to this disability:

Work Related: ☐ Yes  ☒ No    Accident: ☐ Yes  ☒ No    Sickness: ☒ Yes  ☐ No    Maternity: ☐ Yes  ☒ No    Motor Vehicle Accident: ☐ Yes  ☒ No    If MVA, what State did it occur?

Other Treating Physicians or Consultants:

First Name: N/A    Last Name:

Specialty:    Telephone Number:

# Prudential Financial

Employee's Social Security Number
## REDACTED

**2** **Attending Physician Information (Cont'd.)**

Other Treating Physicians or Consultants

First Name: N/A

Last Name:

Specialty:

Telephone Number:

First Name:

Last Name:

Specialty:

Telephone Number:

Do you feel the claimant is competent to endorse checks and direct the use of proceeds? ☒ Yes ☐ No

Date when significant loss of function occurred: (MM DD YYYY)

Return to Work Target Date (MM DD YYYY)

Full Time ☐
Part Time ☐
With Limitations (functions lost) ☐

indeterminate at this time

Please describe Return to Work Plan and provide any corresponding Limitations:

Please describe any Medical Obstacles to Return to Work:

Chronic pain muscles and joints and chronic fatigue

Nature of Medical Impairment (i.e., loss of function):

decreased ability to concentrate, and limited physical functional capacity

Are there any Non-Medical Factors which have a significant impact on functional Abilities (i.e., interpersonal, financial, family)?

**3** **Physician Information**

First Name: A M Y

MI: L

Last Name: S H U L T Z

Primary Telephone Number: 4 0 5 2 3 0 9 6 0 0

Fax Number: 4 0 5 2 3 0 9 6 6 1

Office Address: 3 7 0 0 3 6 - T H A V E N W

Suite:

City: N O R M A N

State: O K

ZIP Code: 7 3 0 7 2

Specialty: R H E U M A T O L O G Y

**4** **Fraud Notice**

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties. This includes Employer and Attending Physician portions of the claim form. (Please see state specific fraud warnings attached.)

Physician Signature X 

Date (MM DD YYYY): 0 9 1 0 2 0 0 7

Prudential Financial and the Rock logo are registered service marks of The Prudential Insurance Company of America and its affiliates.



**McBride Clinic**
Orthopedics & Arthritis

September 5, 2007

RE: BARBARA D CLARK

To Whom It May Concern:

I am a board certified rheumatologist who has been taking care of Barbara Clark since October of 2006. She has an undifferentiated connective tissue disease with manifestations of rash, arthritis and chronic fatigue. She also suffers from fibromyalgia, which is a diffuse pain syndrome of muscles and joints associated with poor sleep, chronic fatigue and difficulty with concentration. She currently is having a particularly difficult time with pain and fatigue. This has required her to miss many days from work. She takes many medications in order to help control her pain, which also can cause potential drowsiness. At this time, she is unable to do substantial gainful employment due to the physical and mental problems caused by her diseases, until this becomes under better control. It is not expected to get any better in the foreseeable future. It is expected to last more than twelve months.

Please do not hesitate to contact me for any questions regarding this patient.

Sincerely,

Amy Shultz, MD
AS/cmb 8/20/07

# Prudential  Financial

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Tel: 800-842-1718  Fax: 877-889-4885
http://www.prudential.com/inst/gldi

## Disability Claim Instructions

**Instructions to File a Claim for Disability Benefits**

1. Notify your employer of your absence, that you will be filing a claim and request they provide Prudential with their Employer's Statement

2. Complete all Sections of the Employee's Statement

3. Ask your Doctor to complete the Attending Physician's Statement

4. Have these statements submitted according to the directions you received from your Benefits Office

5. If you wish to have voluntary Federal Income Tax withholding from disability benefit payments, read and complete the Tax Notice.

**In order for a claim for benefits to be considered filed, Prudential requires an employee's statement, employer's statement, and attending physician's statement to be submitted.**

**Your Claim Will Be Considered Filed When:**

- If you have STD coverage with Prudential, your claim for STD benefits will be considered filed the later of (1) when we receive the employee's statement, the employer's statement and the attending physician's statement, and (2) the start of your STD Elimination Period.

- If you have LTD coverage with Prudential, your claim for LTD benefits will be considered filed the later of (1) when we receive the employee's statement, the employer's statement, and the attending physician's statement, and (2) the date that is 45 days before the end of your LTD Elimination Period.

- If you have both STD and LTD coverages with Prudential and you have filed a claim for STD, there is no need to re-submit the statements noted above for the LTD portion of your claim. However, your claim for LTD benefits will be considered filed in this case the later of (1) when we receive the statements indicated above; and (2) the date that is 45 days before the end of your LTD Elimination period, provided you are receiving STD benefits on that date. If you are approved for STD benefits at a later date, your LTD claim will be considered filed on the date of the STD approval.

Prudential Financial and the Rock logo are registered service marks of The Prudential Insurance Company of America and its affiliates.



# Prudential  Financial

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Tel: 800-842-1718   Fax: 877-889-4895
http://www.prudential.com/inst/gldi

**For residents of all states except California, Florida, New Jersey, New York, Pennsylvania, Utah, Vermont, Virginia and Washington: WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurance company or other person, or knowing that he is facilitating commission of a fraud, submits incomplete, false, fraudulent, deceptive or misleading facts or information when filing an insurance application or a statement of claim for payment of a loss or benefit commits a fraudulent insurance act, is/may be guilty of a crime and may be prosecuted and punished under state law. Penalties may include fines, civil damages and criminal penalties, including confinement in prison. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant or if the applicant conceals, for the purpose of misleading, information concerning any fact material thereto.

**CALIFORNIA RESIDENTS—** For your protection, California law requires the following to appear on this form. Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FLORIDA RESIDENTS—** Any person knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing false, incomplete, or misleading information is guilty of a felony of the third degree.

**NEW JERSEY RESIDENTS—** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**NEW YORK RESIDENTS—** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**PENNSYLVANIA and UTAH RESIDENTS—** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any material fact thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**VERMONT RESIDENTS—** Any person who knowingly presents a false or fraudulent claim for payment of a loss or knowingly makes a false statement in an application for insurance may be guilty of a criminal offense under state law.

**VIRGINIA RESIDENTS—** Any person who knowingly and with intent to injure, defraud, or deceive any insurance company or other person, or knowing that he is facilitating commission of a fraud, submits incomplete, false, fraudulent, deceptive or misleading facts or information when filing a statement of claim for payment of a loss or benefit may have violated state law, is guilty of a crime and may be prosecuted and punished under state law. Penalties may include fines, civil damages and criminal penalties, including confinement in prison. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant or if the applicant conceals, for the purpose of misleading, information concerning any fact material thereto.

**WASHINGTON RESIDENTS—** Any person who knowingly provides false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company commits a crime. Penalties include imprisonment, fines, and denial of insurance benefits.

Prudential Financial and the Rock logo are registered service marks of The Prudential Insurance Company of America and its affiliates.

**DCMS**

# S O A P   Note

**Claim Number:**     **10996333**

*SOAP Date - 9/17/2007*

| | |
|---|---|
| **Claim Manager:** | **Gregory, Michael** |
| **Category:** | LTD Eligibility Pre Sort |
| **Reason:** | Eligibility Review |

## SUBJECTIVE:

CLAIMANT & MEDICAL INFORMATION:
Disability Dt: 08/20/2007
Secondary Dx: 729.1 -myalgia and myositis, unspecified
Medical Hx: n/a
Surgical Hx: n/a
Clmnt's reason for not working: Undifferentiated connective tissue disease and fibromyalgia with pa
in, fatigue, difficulty in concentration, memeory.
ADLs: n/a
ETEs: High School, Yes

Treating Physicians: Amy Shultz-Dr

## OBJECTIVE:

EMPLOYMENT INFORMATION:
 ER Job Description in file: No
 DOT Description: LPN
CONTRACTUAL & COVERAGE INFORMATION:
 Plan Type: Direct Offset
 Plan Effective Dt: 10/01/1993
 Employee Cov. EffDt: 01/01/2002
 Pre-Existing cond.: 3/12
 Pre-Ex per
iod dates: n/a
 Prudent Person Pre-ex: Yes
 Contrib Rate: EE Contrib 100% post-tax
 Enrollment Confirmed: Need enrollment card from ER
 Earnings Reviewed: Need to confirm with ER
 Branch Assignment Reviewed: Yes
 Gainful occ date: 11/19/2009
 Mandatory Voc Rehab: Yes
 ERISA/NonERISA: ERISA
OFFSET INFORMATION:
 Primary Social Security status: Yes; $0.00; Est.; 02/01/2008 -
 If ee has applied, has the offset screen been updated?  Yes
 Family Social Security status: No
 Worker's compen
sation Status: No
 If Buy-Up Branch, Core offset applied?  n/a
 Statutory offset applied: No
 Retirement: No

## ANALYSIS:

SOAP Note
ClaimId = 10996333



**D 0120**

# S O A P  Note

09/15/2009

**Claim Number:** 10996333

*SOAP Date - 9/17/2007*

| | |
|---|---|
| **Claim Manager:** | **Gregory, Michael** |
| **Category:** | LTD Eligibility Pre Sort |
| **Reason:** | Eligibility Review |

The claimant is a 59 yo LPN for Duncan Regional Hospital, LDW 8/19/07, DOD 8/20/07 due to diagnoses of Unspecified Diffuse Connective Tissue Disease and Unspecified Myalgia and Myositis.  A letter dated 9/5/07 from Dr. Shultz indicates treating since 10/0
6 for undifferentiated connective tissue disease with manifestations of rash, arthritis and chronic fatigue.  Clmt also suffers from fibromyalgia and is having difficult time with pain and fatigue. Dr. Shultz opines that clmt is unable to do substantial g
ainful employment due to physical and mental problems caused by her disease.  It is not expected to get any better in the forseeable future and is expected to last more than 12 months.

The clmt's enrollment needs to be documented with enrollment card.
Earnings also need to be clarified as ER Form doesn't indicate hours worked and days worked varies.  The Self Report Limit also needs to be confirmed as PDR doesn't list and SPARC does.  The policy has been requested.

## PLAN:

Initial TPC with clmt
Request EC, JD and confirm earnings with ER
Request medical from all providers
Schedule FCD

**Prudential  Financial**

**D 0121**

## DCMS

# S O A P  Note

**Claim Number:**     **10996333**

*SOAP Date - 11/2/2007*

| | |
|---|---|
| **Claim Manager:** | **Plamondon, Rebecca** |
| **Category:** | LTD File Plan |
| **Reason:** | FCD |

## OBJECTIVE:

Attendees: Mike Gregory, DCM; Rebecca Steele, DCS; Diana Turner, CRC

## ANALYSIS:

Per clinician, due to the subjective nature of the claim, recommends a full file review.

Voc:  occ is medium

## PLAN:

claim to go for full file review

**Prudential Financial**

**D 0122**

**Claim Number:**     **10996333**

*SOAP Date - 11/2/2007*

| | |
|---|---|
| **Claim Manager:** | **Chase RN, Denise** |
| **Category:** | Capacity/Clinical Review |
| **Reason:** | CI001 |

## ANALYSIS:

FCD Questions:

Comment on functional capacity & R/L's.

Analysis:

Based on the complexity of this claim file would recommend referral for a Clinical review to better understand the impact of all of the Clmt's conditions on her function al capacit
y.

Denise E Chase RN BSN

## PLAN:

DCM to set file plan

**Prudential Financial**

**D 0123**

## DCMS

# S O A P   Note

**Claim Number:** 10996333

*SOAP Date - 11/5/2007*

| | |
|---|---|
| **Claim Manager:** | **Malenfant RN, Stephen** |
| **Category:** | Capacity/Clinical Review |
| **Reason:** | CI002 |

## OBJECTIVE:

Synopsis/Introduction: Claimant is a 60 year-old female licensed practical nurse (LPN) out of work since 08/20/07 due to upper and lower extremity pain and discomfort associated with undifferentiated connective tissue disease and fibromyalgia. Medical his tory is significant for hypertension, hyperlipidemia, and diabetes mellitus.

Claimant is 5 feet 4 inches tall and weighs approximately 224 pounds. Calculated body mass index (BMI) is 38.4 and is consistent with morbid obesity.

Claimant reports/Ch
ief complaints:

10/24/06 (per exam) Claimant reports diffuse pain and discomfort. Claimant reports that her pain is located mainly in her shoulders, hips, and along her low back. Claimant reports that she has had this pain for years. Claimant reports i t is present daily and she does seem to have episodes of exacerbation. The claimant's pain is mostly in the tops of her shoulders, neck, and along her lateral hips. Claimant reports that the muscles in her upper arms and thighs are very painful at times. Claimant does report prolonged morning stiffness, sometimes lasting for hours. Claimant reports poor sleep due to her pain and discomfort.

07/30/07 (per exam) Claimant reports she is doing "pretty well." Claimant reports she is "actually thinking abou t quitting work in the next month or so. She works for Home Care through the hospital and it's just "really starting to take its wear and tear on her body."

09/05/07 (per exam) Claimant reports she is doing about the same. Claimant continues to report sleeping difficulty and chronic fatigue. Claimant reports her pain is mostly in her shoulder region and the muscles of her upper arms and hip region. Claimant denies any joint swelling, stiffness, or rashes since her last visit. Claimant continues to take  Plaquenil, Ultram ER, and Tramadol medications. Claimant continues to take Darvocet at night. Claimant reports occasional steroid injections help a lot. Claimant reports pain rating of 3 to 4 on scale of 0 to 10.

09/28/07 (per telephone call) Claima nt reports bilateral lower extremity pain and discomfort and bilateral upper extremity pain and discomfort. Reports poor concentration and memory. Claimant reports it feels like she has a bad case of the flu and her generalized aches and pains get real ba d at times. Claimant reports extreme fatigue at times and is always tired. Current medication list includes Darvocet, Naproxen, Ultram ER, Plaquinil, Capoten, Neurontin, HCTZ, Paxil, Xanax, Estrace, and vitamin B12 injections monthly. Claimant has been to ld to avoid heavy lifting, get plenty of rest, and get some exercise. Claimant reports she is able to tend to all her activities of daily living without assistance. In reference to returning to work, claimant reports she cannot go back and place her patie nts at risk (is a home care LPN) - since not working, her pain has improved a lot. Claimant reports difficulty getting into and out of car, walking up steps, cannot remember medications, giving injections, and difficulty lifting people for wound care.

Data reviewed:

2006 Orthopedics/arthritis progress notes Dr. Shultz. Claimant was seen and evaluated 10/24/06. On exam, there is no evidence of synovitis in any joints, there is decreased abduction of her bilateral shoulders due to pain along the to



**D 0124**

**Claim Number:** 10996333

*SOAP Date - 11/5/2007*

| | |
|---|---|
| **Claim Manager:** | **Malenfant RN, Stephen** |
| **Category:** | Capacity/Clinical Review |
| **Reason:** | CI002 |

p of her shoulders and the back of her neck, she has good range of motion of both hips, left knee with some crepitus but no effusions, right knee has been replaced, the claimant has tenderness to palpation over multiple muscle groups along the upper arms and across her trapezius area, and has tenderness to palpation over muscle groups along her lateral thighs and the paraspinous muscles of the lumbar spine. Recommendations - Continue with Tramadol and Ultram prescription medications for pain control.

2

007 Primary care progress notes Dr. Cox. Claimant was seen and evaluated 07/30/07. On exam, claimant is described as alert and orientated times four with findings within normal limits. Documented recommendations - Continue with diet and weight control and instructed to return in 6 months for re-evaluation.

2007 Orthopedics/arthritis progress notes Dr. Shultz. Claimant was seen and evaluated 09/05/07. Claimant is described as alert and oriented times three. There is no synovitis noted in any joints.
On exam, there is mildly decreased abduction to both shoulders due to pain and positive tender points over muscles in her upper arms. There is good hip range of motion. There are tender points over the lateral thighs and trochanteric bursa. There is left knee crepitus with no effusion. Impression - Has been doing better on Plaquenil as far as her joint pain and stiffness. Recommendations - Continue with Plaquenil, administer Depo-Medrol 160 mg injection today, continue with Ultram ER, Tramadol, and Darvoc
et medications for pain control and claimant was instructed to return in 3 months for re-evaluation.

Letter written by Dr. Shultz 09/05/07. Per letter, the claimant has had a particularly difficult time with pain and fatigue that has "required her t
o miss many days from work." In addition, "She takes many medications in order to help control her pain, which can cause potential drowsiness. At this time, she is unable to do substantial gainful employment due to the physical and mental problems caused by her diseases, until this becomes under better control. It is not expected to get any better in the foreseeable future. It is expected to last more than twelve months."

Diagnostic studies:

10/02/06 Sedimentation rate 32 (0 to 30). Positive ANA (8 or 1:80 to 1:320). Rheumatoid factor was negative.

10/24/06 CRP-1 1.8 (less than 0.7). Westergren sedimentation 9 (0 to 20).

04/12/07 Myocardial perfusion scan completed. Findings - Normal.

05/08/07 Vitamin B12 346 (200 to 1100). CRP 1.5, bl ood glucose 65 (70 to 110).

08/02/07 White blood cell count 8.6 (4.8 to 10.8), red blood cell count 5.24 (4.2 to 5.4), hemoglobin 15.1 (12 to 16), and hematocrit 45.5% (37 to 47%). HgbA1C 5% (4.4 to 6.4%). Thyroid stimulating hormone 1.166 (0.350 to 4 .940).

08/24/07 Screening mammogram completed. Findings - Benign.



**D 0125**

**Claim Number:      10996333**

*SOAP Date - 11/5/2007*

| | |
|---|---|
| **Claim Manager:** | **Malenfant RN, Stephen** |
| **Category:** | Capacity/Clinical Review |
| **Reason:** | CI002 |

## ANALYSIS:

Analysis including medical questions/conclusions (restrictions and/or limitations, prognosis, and next steps):

Please review information currently available in the claimant's file and answer the following medical questions:

1. Comment on the claima
nt's current level of functional capacity and any associated restrictions and/or limitations impacting the claimant's functional capacity.

Answers:

1. A. Hypertension, hyperlipidemia, and diabetes mellitus - There is no medical evidence that the cla
imant's functional capacity is currently limited by symptoms associated with these specific medical conditions after review of available information. In addition, there are no medical indications that any current restrictions need to be applied from these specific medical perspectives.

   B. Upper and lower extremity pain and discomfort/reported concentration and memory problems/undifferentiated connective tissue disease and fibromyalgia - The claimant was seen and evaluated by Dr. Shultz in October
2006 for the same reported symptoms as those documented in 2007. Treatment provided in October 2006 and September 2007 is based on symptoms of pain and fatigue reported by the claimant. It is noted that the claimant's last day of work was 08/20/07. On 07/30/07, the claimant reported that she was doing "pretty well" and reports that she is "actually thinking about quitting work in the next month or so".

There is no information provided by the claimant's employers to review in context with information
 reported by the claimant to her medical provider, Dr. Shultz, per 09/05/07 letter.

There were no significant adjustments made in the claimant's medical plan of care in July and September 2007 when compared with 2006 medical progress notes.

Based
on the above information, the claimant's decision to leave work was based on choice rather than a significant change in the claimant's medical condition after review of available information. There is no medical evidence that the claimant's functional cap acity is currently limited by symptoms associated with the above noted medical condition(s) and there are no medical indications that any restrictions need to be applied.

It is reasonable that the claimant's plan of care include daily, regular exerci
se to help maintain muscle strength/flexibility, help maintain joint mobility/function, help prevent further weight gain or help promote weight loss, help maintain blood glucose control, help maintain pain control and a sense of well being, and help maint

SOAP Note
ClaimId = 10996333



**D 0126**

# S O A P   Note

**Claim Number:**      **10996333**

*SOAP Date - 11/5/2007*

| | |
|---|---|
| **Claim Manager:** | **Malenfant RN, Stephen** |
| **Category:** | Capacity/Clinical Review |
| **Reason:** | CI002 |

ain and improve endurance and stamina.

Summary (level of functional capacity and associated restrictions and limitations):

(see answer section above for more information).

Prepared by: Stephen J. Malenfant RN, BSN

## PLAN:

DCT to set plan.



D 0127

## DCMS

# S O A P   Note

**Claim Number:** 10996333

**SOAP Date - 11/16/2007**

| | | |
|---|---|---|
| **Claim Manager:** | Gregory, Michael |
| **Category:** | Initial LTD Decision |
| **Reason:** | Disallow |

## OBJECTIVE:

See 11/5/07 Capacity /Clinical Review for detail.

## ANALYSIS:

The claimant is a 59 yo LPN for Duncan Regional Hospital, LDW 8/19/07, DOD 8/20/07 due to diagnoses of Unspecified Diffuse Connective Tissue Disease and Unspecified Myalgia and Myositis. A letter dated 9/5/07 from Dr. Shultz indicates treating since 10/0
6 for undifferentiated connective tissue disease with manifestations of rash, arthritis and chronic fatigue. Clmt also suffers from fibromyalgia and is having difficult time with pain and fatigue. Dr. Shultz opines that clmt is unable to do substantial g
ainful employment due to physical and mental problems caused by her disease. It is not expected to get any better in the foreseeable future and is expected to last more than 12 months.

Medical records were requested and obtained from the claimant's tr
eating providers, Dr. Shultz and Dr. Cox. The records underwent clinical review on 11/5/07 that indicated that there was no significant adjustments made in the clmt's medical plan of care in 7/07 and 9/07 when compared with the 2006 medical progress note
s. Clinical continues that based on the above information, the clmt's decision to leave work was based on choice rather than a significant change in the clmt's medical condition. There is no medical evidence that the clmt's functional capacity is curren
tly limited by symptoms associated with clmts noted medical conditions, and there are no medical indications that any restrictions need to be applied.

Based on the above information it is reasonable that clmt does not have any restrictions and limitati
ons that would preclude her from performing her occupation of LPN. Therefore, the LTD claim will be disallowed as medical does not support disability.

## PLAN:

** Convey disallow
** Send disallow ltr to EE and ER
** Disallow claim and close follows.



**D 0128**

# S O A P  Note

**Claim Number:** 10996333

*SOAP Date - 1/30/2008*

| | |
|---|---|
| **Claim Manager:** | **Boivin, Kimberly** |
| **Category:** | Appeals Plan |
| **Reason:** | ARU Initial File Plan |

## OBJECTIVE:

ARU File plan for 1st Recon

## ANALYSIS:

APPEAL ACTION PLAN

Claimant: Barbara Clark
Claim #:10996333
DOD: 8/20/2007
DOB: REDACTED
Age: 60
Occupation: LPN
LTD paid through: Disallowed

Policy Type: LTD
ERISA: Yes
State of Residence: OK
Policy Citus: OK
PH: Duncan Regional H
ospital
Control Number: 80629

Diagnoses: upper and lower extremity pain and discomfort associated with undifferentiated connective tissue disease and fibromyalgia. Medical history is significant for hypertension, hyperlipidemia, and diabetes mellitus
.

Current Restrictions and Limitations: To be reviewed on appeal

Prior medical reviews: 11/5/2007

Vocational Information: No ROR completed

Information submitted on appeal:
SSDI Award letter
Appeal letter from clmt
Additional medical r
ecords

Summary:
Claimant is a 60 year old LPN.  Date of disability is noted to be August 20, 2007. Diagnoses: upper and lower extremity pain and discomfort associated with undifferentiated connective tissue disease and fibromyalgia. Medical history



**D 0129**

# S O A P  Note

**Claim Number:**     10996333

*SOAP Date - 1/30/2008*

**Claim Manager:**     **Boivin, Kimberly**
**Category:**     Appeals Plan
**Reason:**     ARU Initial File Plan

is significant for hypertension, hyperlipidemia, and diabetes mellitus.  LTD benefits were disallowed as core operations opined medical did not support degree of impairment that would preclude her from performing her own occupation.  Claimant has been awarded SSDI benefits.

Claimant is 5 feet 4 inches tall and weighs approximately 224 pounds. Calculated body mass index (BMI) is 38.4 and is consistent with morbid obesity.

## PLAN:

Send Clmt ack letter
Set 45th day flup
Refer to VRC for ROR
Refer to CERT for EFR with Rheum

**Prudential Financial**

D 0130

## DCMS

# S O A P  Note

**Claim Number:**    10996333

**SOAP Date - 2/22/2008**

**Claim Manager:**    **Boivin, Kimberly**
**Category:**         Appeal Decision
**Reason:**           CU003

## OBJECTIVE:

ARU rationale for UH on 1st Recon

## ANALYSIS:

Clmt is noted to have last worked on August 19, 2007, at which time she was employed by Duncan Regional Hospital in the regular occupation of a LPN. The Attending Physician Statement completed by Dr. Schultz dated September 10, 2007, opines diagnoses of unspecified connective tissue disease and myalgia.

Current diagnoses are noted to be; upper and lower extremity pain discomfort associated with undifferentiated connective tissue disease, fibromyalgia, with significant hypertension, hyperlipidemia, a
nd diabetes

LTD benefits were disallowed as it was determined by Core, medical did not support disability from own-occ.

On first appeal the file was reviewed by a external physician Board Certified In IM/ Ortho; the physician reviewer concluded the re was no medical support to preclude clmt from own occ, no R&L's were identified. Additionally it was of the reviewers opinion that the diagnosis of diabetes and undifferentiated connective tissue disease were not supported based on the medical document ation in the claim file.

As such the decision to disallow LTD benefits on first appeal is upheld.

## PLAN:

ARU to send letter of rationale to clmt
Mcc letter to ER
Code as appropriate



D 0131

**DCMS**

# S O A P  Note

**Claim Number:** 10996333

*SOAP Date - 6/3/2008*

| | |
|---|---|
| **Claim Manager:** | **Boivin, Kimberly** |
| **Category:** | Appeals Plan |
| **Reason:** | ARU 2nd Recon File Plan |

## OBJECTIVE:

ARU 2nd Recon File plan

## ANALYSIS:

Clmt last worked on August 19, 2007, at which time she was employed by Duncan Regional Hospital in the regular occupation of a LPN. The Attending Physician Statement completed by Dr. Schultz dated September 10, 2007, opines diagnoses of unspecified conne
ctive tissue disease and myalgia.

Current diagnoses are noted to be; upper and lower extremity pain discomfort associated with undifferentiated connective tissue disease, fibromyalgia, with significant hypertension, hyperlipidemia, and diabetes.

Our November 16, 2007, letter advised you that your LTD benefits had been disallowed. Our February 25, 2008, letter advised clmt her first level of appeal had been upheld.

On first appeal the file was reviewed by external physician Board Certified in
 Internal Medicine and Rheumatology.

In summary the physician reviewer opined: The physician reviewer opined, based on the information available, the clmt has mild hyperlipidemia, hypertension without sequelae;, and the medical history does not suppor
t a diagnosis of undifferentiated connective tissue disease. As such, the physician reviewer opined, the clmt does not have any functional impairment from August 20, 2007 forward. There are no identifiable restrictions and/or limitations such as sitting, standing, walking, lifting, carrying, perform repetitive and fine motor activities.

We received the Atty's 2nd request for appeal on 6/2/08. on 2nd appeal he submitted letters of advocacy by her AP and ER.

## PLAN:

ARU to send Ack letter to Atty
Set 45th day flup
Refer to CERT for EFR with Dr.Shavell

SOAP Note
ClaimId = 10996333



**D 0132**

# S O A P   Note

09/15/2009

**Claim Number:**     **10996333**

**SOAP Date - 6/3/2008**

| | |
|---|---|
| **Claim Manager:** | **Boivin, Kimberly** |
| **Category:** | Appeals Plan |
| **Reason:** | CERT SOAP |

## ANALYSIS:

Please see prior SOAP for specific claim detail.

This is a second appeal.  Please include new medical documents rec on 6/2/08 as well as the appeal letter from the atty. with the EFR.

File should be referred back to Dr. Shavell for review/comment.

## PLAN:

As above, refer to CERT

SOAP Note
ClaimId = 10996333



D 0133

# S O A P   Note

**Claim Number:**     **10996333**

*SOAP Date - 6/25/2008*

| | |
|---|---|
| **Claim Manager:** | **Boivin, Kimberly** |
| **Category:** | Appeal Decision |
| **Reason:** | CU003 |

## OBJECTIVE:

Uphold on 2nd recon

## ANALYSIS:

Mrs. Clark is noted to have last worked on August 19, 2007, at which time you were employed by Duncan Regional Hospital in the regular occupation of a LPN. The Attending Physician Statement completed by Dr. Schultz dated September 10, 2007, opines diagnoses of unspecified connective tissue disease and myalgia.

Current diagnoses are noted to be: upper and lower extremity pain discomfort associated with undifferentiated connective tissue disease, fibromyalgia, with significant hypertension, hyperlipidemia, and diabetes

Our November 16, 2007, letter advised Mrs. Clark that her LTD benefits had been disallowed. Our February 25, 2008 letter advised Mrs. Clark that her first appeal for reconsideration had been upheld.
As part of the first appellate
eview of Mrs. Clark's claim, the available medical data in the administrative record was referred to an external physician Board Certified in Internal Medicine and Rheumatology for the purpose of completing a medical file review.

In the initial appell
ate medical file review the Physician-reviewer opined that during the time period in question of August 20, 2007 forward, based on the medical records contained in Mrs. Clarks file, she does not have documented findings to support a diagnosis of diabetes.
  It is noted the lab work done recently, was hemoglobin A1C, which was 5. This is the most recent lab. The blood sugar was 79. This result is not indicative of someone who is a diabetic. As such any impairment made on the basis of diabetes is not a medically supported.

Mrs. Clark has had elevated cholesterol throughout the chart, elevated LDLs, very mild elevation. Her stress test was negative. The medical records no not indicate a history of intermittent claudication. There are no examinations in
dicating bruits or any history of atherosclerotic disease. Therefore, you have mild hyperlipidemia. The physician reviewer noted there are no sequelae as a result of it, and Mrs. Clark can continue to function unlimited due to hyperlipidemia.

Thephy
sician reviewer noted Mrs. Clark is mildly hypertensive. Her blood pressure, mostly systolic have been high, but she has had some where the diastolic has been 100, going through the charts. This would not be limiting. This is a very mild hypertension an
d the physician reviewer opined, that Mrs. Clark could continue to work and be monitored for blood pressure.

In regards to Mrs. Clarks undifferentiated connective tissue disease, it is noted undifferentiated connective tissue disease is characteristi
c of collagen diseases which are a mix of lupus, rheumatoid arthritis, and scleroderma. It is noted, Dr. Amy Schultz did a rheumatoid profile on October 24, 2006, which was negative except for a low titer ANA. As such, Mrs. Clarks results were not indica
tive of an undifferentiated connective tissue disease. In reviewing these charts, from Dr. Schultz in particular, the physician reviewer found her statements from her reports to Dr. Clark and Dr. Cox were that you had fibromyalgia most likely. The physi



*SOAP Date - 6/25/2008*

| | |
|---|---|
| **Claim Manager:** | **Boivin, Kimberly** |
| **Category:** | Appeal Decision |
| **Reason:** | CU003 |

cian reviewer noted the laboratory work. Her SED rates were 9 and 32, which is normal for her age group and weight. There were no abnormal renal functions. There were no abnormal pulmonary functions. There were no abnormal cardiac functions. There is no report of severe arthritis or synovitis in any of Mrs. Clarks reports. There are no reports of Raynaud's, ulcers, sclerodactyly, and so forth. It is of the physician reviewer's opinion that there is no differential diagnosis that would be involved in diagnosing an undifferentiated connective tissue disease. It is nonexistent in the medical records contained in Mrs. Clarks file.

The physician reviewer opined, based on the information available, Mrs. Clark has mild hyperlipidemia, hypertension without sequelae; and the medical history does not support a diagnosis of undifferentiated connective tissue disease. As such, the physician reviewer opined, Mrs. Clark does not have any functional impairment from August 20, 2007 forward.

We receive
d the second appeal request on June 2, 2008. On second appeal atty submitted or we requested the following medical data for review:

£ May 19, 2008 letter by Anita Frogge
£ March 24, 2008 letter by Dr. Cox

As part of the second appellate review
of Mrs. Clarks claim, the available medical data in the administrative record was referred back to the external physician who completed the initial appeal medical file review for the purpose of completing a second medical file review; to determine if the a dditional documentation changed the prior medical assessment.

The physician reviewer noted the letter by Dr. Demetra Cox and opined the letter of advocacy does not show and medical documentation for the disability but rather gives an opinion.

Th
e report by Anita Frogge, R.N./B.C., dated May 19, 2008 was reviewed. The physician noted this documenation was opinions on some observations that Ms. Frogge has made stating that due to muscle work fatigue, weakness, and joint pain, they reduced Ms. Cla
rk's hours, and then finally, Ms. Clark was unable to go past noontime and was not able to spend the necessary time or the energy to perform home care.

The physician reviewer opined that the additional documentation does not alter the previous assess
ment.

Conclusion:
In summary, there is no significant difference between the reported complaints previously and the continued complaints noted by Mrs. Clark. There are no significant findings added by the additional documentation that would lead to any change in the previously outlined report. Based on the Physician Reviewer's assessment, there are no restrictions or limitations indicated. In total, review of the additional medical information in no way changes the previously outlined report. As suc h, there is no medical support that Mrs. Clark would have been precluded from performing the material and substantial duties of her regular occupation as a LPN as of August 20, 2007. The decision to disallow Long Term benefits has been determined on seco nd appeal to have been appropriate and is upheld.

*PLAN:*



D 0135

**Claim Number:**        **10996333**

*SOAP Date - 6/25/2008*

| | |
|---|---|
| **Claim Manager:** | **Boivin, Kimberly** |
| **Category:** | Appeal Decision |
| **Reason:** | CU003 |

Submit to Mgmt for 2nd recon UH review
ARU to send letter of rationale to atty
Mcc letter to ER
Code as appropriate
Per message Board no special handling requirements

**Prudential** **Financial**

**D 0136**

# Telephone Call Log

09/15/2009

**Claim Number :** 10996333
**Claimant SSN:** REDACTED
**Claimant Name :** CLARK

---

| | | | |
|---|---|---|---|
| **Reason:** | ER call/ Left VM | **Direction:** | Outgoing |
| **Call Date/Time:** | 09/28/2007 | **Contact Name:** | Patricia van der Breggen, ER |
| **Made/Rec'd by:** | Gregory, Michael | | |

CAlled ER and left VM to call me back in ref to LTD claim. I need to discuss enrollment of clmt, need EC, confirm earnings and hours worked each week and obtain JD. Did clmt enroll during an open enrollment in 2002? Please put call through to DCM.

| | | | |
|---|---|---|---|
| **Reason:** | Initial Interview | **Direction:** | Incoming |
| **Call Date/Time:** | 09/28/2007 | **Contact Name:** | EE |
| **Made/Rec'd by:** | Gregory, Michael | | |

History/Onset of Condition:

She had knee surgery 2-3 years ago and this didn't start to after that and was gradual offset. In Fall 2006 she began with rash and low grade fever. It got to wear she was hurting all over so bad. At first she thought i t was arthritis. She went to Dr. Shultz and was told it was Fibro. Her concentration is way off. The rash doesn't have anything with fibro it is from undifferentiated connective tissue disorder. Her knee used to be her main problem and thought once th at was fixed things would be great.

What are your symptoms?

The pain is from hips to almost knee in both legs down the sides. Here shoulders and arms _ the way down. They also burn. It's always there, but she has flares that are awful. She ha s some good days. Her concentration and memory are poor. She is real unsure of herself being a nurse. She sometimes has a rash all over her trunk due to undifferentiated connective tissue disorder. Her eyes will burn, but there is no itching. She jus t feels like she has bad case of flue and her aching will get real bad. Extreme fatigue at times. She is always tired, but at times she only wants to stay in bed.

Other Medical Conditions impeding Recovery?

She has HTN that is controlled with med ication, she has a lot of anxiety, depression, her doctor is watching her sugar, difficulty sleeping.

What tests have you had or are scheduled for?

She sees Dr. Shultz every 3 months. She last saw 9/5/07. She does a lot of blood work, but no other

---



testing.  She has been tested for Lyme Disease and many other things.

Results?

The blood work diagnosed the undifferentiated connective tissue disorder.

What is your treatment plan?

Currently treating with medications
Medications:

Darvoce
t, Naproxen, Ultram ER , Ultram 50 mg, Plaquinil, Capoten, Neurontin, HCTZ, Paxil, Xanax, Estrace, B-12 injection
monthly

Providers:

Dr. Demetra Cox is PCP 580-252-1373
Dr. Amy Shultz is Rheum 405-230-9600

R/L's?

No heavy lifting, do what
she can, plenty of rest, get some exercise.

ADL's:

She can do all without assistance.

RTW status:

She can't go back as she can't put patients at risk.  She is a home care LPN.  She doesn't think she could ever do
that job again.  This was very



**Claim Number :** **10996333**
**Claimant SSN:** REDACTED
**Claimant Name :** **CLARK**

hard for her.  Since she stopped working, her pain improved a lot.  It is still there, but not as bad.  She feels better physically, but cognitively she has not improved.

Physical requirements of your job - what parts of your job can't you do?

Getting into and out of car, walking up steps, couldn't remember medications, giving injections, lifting people for wound care.

Do you have other LTD insurance coverage?

No

Other income:
WC: NA
SSDB: She has applied, but no determination yet.

FSS:
Retirement:  401K
STD: $420.00 per week through UNUM

Spouse, Dependent DOB's: No children under 18
Education:  GED, VOTECH LPN

Contractual issues discussed: M&N limit, Def of Dis, Pre-Ex, COLA, All Source, WIB, Benefit %

I explnd , De
f of Dis, Ben %, EP, enrollment verification, SSD offset, possible STD offset, WIB, max duration.  She will call with STD gross amount and end date.  She stated that she signed up during an Open Enrollment and that a Rep from Pru was there.  She doesn't r
emeber any E of I.

| | | | |
|---|---|---|---|
| **Reason:** | E-Claim status inquiry | **Direction:** | Incoming |
| **Call Date/Time:** | 10/02/2007 | **Contact Name:** | Employee |
| **Made/Rec'd by:** | Johnson, Angela | | |

Subject: Claim: 10996333

ee states that her std carrier Unun Privident  09/03/07  to  11/18/07 for $420.00 weekly

Epiphany Call Doc ID: 2006611  Request Type: Claim Information
Caller Type: Employee
Caller Phone:    Ext.    Type:
Caller Addres
s:

         Type:
Escalated: NO
Complaint: NO



**Claim Number :** **10996333**
**Claimant SSN:** REDACTED
**Claimant Name :** **CLARK**

---

| **Reason:** | Left VM | **Direction:** | Outgoing |
|---|---|---|---|
| **Call Date/Time:** | 10/30/2007 | **Contact Name:** | Patricia Vanderbreggen, ER |
| **Made/Rec'd by:** | Gregory, Michael | | |

Called ER and left VM to call me back in ref to LTD claim.  I need to discuss enrollment of clmt, need EC, confirm earnings and hours worked each week and obtain JD.  Did clmt enroll during an open enrollment in 2002?  Please put call through to DCM.

| **Reason:** | E-Return Call to Claims Manager | **Direction:** | Incoming |
|---|---|---|---|
| **Call Date/Time:** | 10/30/2007 | **Contact Name:** | Employer |
| **Made/Rec'd by:** | Jenerette, Keith | | |

Subject: Claim: 10996333

spoke with er- patricia vanderbreggen
t/c to dcm per er reqst

Epiphany Call Doc ID: 2105456  Request Type: Claim Information
Caller Type: Employer
Caller Phone:    Ext.    Type:
Caller Address:

         Type:
Escalated: NO
Complaint: NO

| **Reason:** | ER call | **Direction:** | Incoming |
|---|---|---|---|
| **Call Date/Time:** | 10/30/2007 | **Contact Name:** | ER |
| **Made/Rec'd by:** | Gregory, Michael | | |

Spoke with ER and she stated that she has 2 EC for clmt and she will fax with the JD.  She doesn't remember any break in LTD covg for clmt.  She confirmed hrly rate of $17.48 and sheduled hours of 32 per week.  I thanked her for her help.

| **Reason:** | No Answer | **Direction:** | Outgoing |
|---|---|---|---|
| **Call Date/Time:** | 11/16/2007 | **Contact Name:** | EE |
| **Made/Rec'd by:** | Gregory, Michael | | |

Called clmt, but there was no answer.  Need to convey disallow of LTD claim.

| **Reason:** | Clmt not in | **Direction:** | Outgoing |
|---|---|---|---|
| **Call Date/Time:** | 11/16/2007 | **Contact Name:** | EE |
| **Made/Rec'd by:** | Gregory, Michael | | |

Spoke with clmt's husband.  I left VM to call as determination needs to be conveyed.  I am unable to discuss with him as not authorized.  She will recv a letter outlining our determination.  If she calls in a rep shoul dbe able to assist her.

| **Reason:** | E-Return Call to Claims Manager | **Direction:** | Incoming |
|---|---|---|---|



**Claim Number :** **10996333**
**Claimant SSN:** REDACTED
**Claimant Name :** **CLARK**

---

**Call Date/Time:** 11/16/2007      **Contact Name:** Accountant

**Made/Rec'd by:** Green, Mary

Subject: Claim: 10996333

SPOUSE RC TO DCM WAS U/A

Epiphany Call Doc ID: 2166577  Request Type: Claim Information
Caller Type: Accountant
Caller Phone:   Ext.   Type:
Caller Address:

        Type:
Escalated:
 NO
Complaint: NO

**Reason:** E-Claim process review      **Direction:** Incoming

**Call Date/Time:** 11/16/2007      **Contact Name:** Employee

**Made/Rec'd by:** Scurry, Naisha

Subject: Claim: 10996333

QR pending
ee inq if dcm left for the day
adv ee automated system not recognizing ssn because dcm has clm open
ee adv that she will c/b mon
offered further asst/declined

Epiphany Call Doc ID: 2166907  Request Type: Claim
 Information
Caller Type: Employee
Caller Phone:   Ext.   Type:
Caller Address:

        Type:
Escalated: NO
Complaint: NO

**Reason:** informed of disallowal      **Direction:** Outgoing

**Call Date/Time:** 11/19/2007      **Contact Name:** ee

**Made/Rec'd by:** Basting, Nathaniel

---



**Claim Number :** **10996333**
**Claimant SSN:** REDACTED
**Claimant Name :** **CLARK**

I informed EE that her claim was disallowed based on review of medical documentation we were unable to identify r/l's or significant change in condition which led to inability to perform o/o.

EE stated that she has physical pain, fatigue as well as pro
blems with memory and concentration and therefore could not do her job and she was worried about doing something wrong and harming a patient at work.

I informed her that she will receive a letter outlining our determination and that she can appeal is s
he chooses.

| | | | |
|---|---|---|---|
| **Reason:** | VM from ER | **Direction:** | Incoming |
| **Call Date/Time:** | 12/04/2007 | **Contact Name:** | ER |
| **Made/Rec'd by:** | Gregory, Michael | | |

REcvd VM from ER stating she was with clmt and had question about why claim disallowed and what they can do.

| | | | |
|---|---|---|---|
| **Reason:** | ER Call | **Direction:** | Outgoing |
| **Call Date/Time:** | 12/04/2007 | **Contact Name:** | ER, Pat Vanderbreggan |
| **Made/Rec'd by:** | Gregory, Michael | | |

Called and spoke with ER.  I explnd appeal provision and if clmt does not agree she could appeal.  If clmt has any questions, please have her call me.

| | | | |
|---|---|---|---|
| **Reason:** | E-Request to s/w Claims Manager Only | **Direction:** | Incoming |
| **Call Date/Time:** | 01/28/2008 | **Contact Name:** | Employer |
| **Made/Rec'd by:** | Cartagena, Evelyn | | |

Subject: Pat ER //reqst dcm

er decline asst
er reqst dcm, dcm not avail trans call to dcm vm

Epiphany Call Doc ID: 2385636  Request Type: Claim Information
Caller Type: Employer
Caller Phone:    Ext.    Type:
Caller Address:

          Type:
Escalated: NO
Complaint: NO

| | | | |
|---|---|---|---|
| **Reason:** | Recvd VM from ER | **Direction:** | Incoming |
| **Call Date/Time:** | 01/28/2008 | **Contact Name:** | ER |
| **Made/Rec'd by:** | Gregory, Michael | | |

Recvd VM from ER asking for call back.

| | | | |
|---|---|---|---|
| **Reason:** | Left VM | **Direction:** | Outgoing |
| **Call Date/Time:** | 01/28/2008 | **Contact Name:** | ER |



09/15/2009

**Claim Number :** **10996333**
**Claimant SSN:** REDACTED
**Claimant Name :** **CLARK**

---

**Made/Rec'd by:**  Gregory, Michael
Called ER and left VM that I was returning call and would be in the office tomorrow.

| | | | |
|---|---|---|---|
| **Reason:** | E-Request to s/w Claims Manager Only | **Direction:** | Incoming |
| **Call Date/Time:** | 01/29/2008 | **Contact Name:** | Employer |
| **Made/Rec'd by:** | Johnson, Angela | | |

Subject: Claim: 10996333

Pat V ( er ) c/i
offerred er assit but delcined

dcm- xferred er to dcm's vm

Epiphany Call Doc ID: 2390324  Request Type: Claim Information
Caller Type: Employer
Caller Phone:   Ext.   Type:
Caller Address:


            Type:
Escalated: NO
Complaint: NO

| | | | |
|---|---|---|---|
| **Reason:** | Clmt Appealing, Awarded SSDB | **Direction:** | Outgoing |
| **Call Date/Time:** | 01/29/2008 | **Contact Name:** | ER |
| **Made/Rec'd by:** | Gregory, Michael | | |

Called and spoke with ER.  She stated that clmt was appealing our decision.  She faxed in the info today.  I will look for it.  She also stated that clmt was awarded SSDB.

The ER also wanted to know about pension offsets for 403b plans.  I will have to reseach and get back with her

| | | | |
|---|---|---|---|
| **Reason:** | E-Claim status inquiry | **Direction:** | Incoming |
| **Call Date/Time:** | 07/07/2008 | **Contact Name:** | Employee |
| **Made/Rec'd by:** | Fuchs, Carolyn | | |



**D 0143**

**Claim Number :**  **10996333**
**Claimant SSN:**  REDACTED
**Claimant Name :**  **CLARK**

Subject: Ctrl# 080629 Claim: 10996333

\*\*\* 7/7/08 11:25 AM by: Fuchs, Carolyn \*\*\*

ee called to inq needed LTD benefits book
adv ee t/f to Client Center

Epiphany Call Doc ID: 2901593  Request Type: Claim Information
Caller Type: Employee
Caller
 Phone:    Ext.    Type:
Caller Address:

             Type:
Escalated: NO
Complaint: NO

| | | | |
|---|---|---|---|
| **<u>Reason:</u>** | E-Claim Payment Clarification | **<u>Direction:</u>** | Incoming |
| **<u>Call Date/Time:</u>** | 07/14/2008 | **<u>Contact Name:</u>** | Employee |
| **<u>Made/Rec'd by:</u>** | Gonye, Richard | | |

Subject: Ctrl# 080629 Claim: 10996333

\*\*\* 7/14/08 11:39 AM by: Gonye, Richard \*\*\*

ee  called to inq needed LTD benefits book, discription of LTD benefits.
csp adv DCM will call to advice her or send somthing within the next few weeks

Epiphany C
all Doc ID: 2927537  Request Type: Claim Information
Caller Type: Employee
Caller Phone:    Ext.    Type:
Caller Address:

             Type:
Escalated: NO
Complaint: NO





**Kim Boivin**
Senior Appeals Analyst

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 84567
Fax: (877) 889-4885
**Website: www.prudential.com/disability**

June 25, 2008

Duncan Regional Hospital                     Claimant: Barbara D Clark
Human Resources                              Claim No.: 10996333
1407 Whisenant Drive                         Date of Birth: REDACTED
Duncan, OK  73533                            Control No./Br.: 80629  /  00001

||ıı|ıı||ıı||ıı||ıı||ıı||ı|ı|ıı|

Dear Sir or Madam:

We have completed our review of Mrs. Clark's second request for reconsideration of our decision to disallow her claim for Long Term Disability (LTD) benefits under the Group Policy #80629 issued to Duncan Regional Hospital. We have determined that our decision was appropriate and have upheld our decision on second appeal to disallow her claim for LTD benefits.

If you have questions, you may call the number listed above.

Sincerely,

*Kim Boivin*

Kim Boivin
Senior Appeals Analyst

D 0145



**Kim Boivin**
Senior Appeals Analyst

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 84567
Fax: (877) 889-4885
**Website: www.prudential.com/disability**

June 25, 2008

O.D. Sanders                                    Claimant: Barbara D Clark
402 N. Main                                     Claim No.: 10996333
Noble, OK  73068                                Date of Birth: REDACTED
                                                Control No./Br.: 80629 / 00001

ԻԽԻԼԻԱԼԻԱԼԻԱԼԻԱԼԻԱԼ

Dear Mr. O.D. Sanders:

We have completed our review of your second request for reconsideration of our decision to disallow Mrs. Clark's claim for Long Term Disability (LTD) benefits under the Group Policy #80629 issued to Duncan Regional Hospital. We have determined that our decision was appropriate and have upheld our decision on second appeal to disallow her claim for LTD benefits. This letter outlines the reasons for our determination.

In order to receive LTD benefits under Group Plan #80629, covered employees must meet all contractual requirements including the following definition of disability:

"**How Does Prudential Define Disability?**

You are disabled when Prudential determines that:

- you are unable to perform the *material and substantial duties* of *your regular occupation* due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim."

"**Material and substantial duties** means duties that :

- are normally required for the performance of your regular occupation; and

**D 0146**

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week."

"**Regular occupation** means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location."

Mrs. Clark is noted to have last worked on August 19, 2007, at which time she was employed by Duncan Regional Hospital in the regular occupation of an LPN. The Attending Physician Statement completed by Dr. Schultz dated September 10, 2007, opines diagnoses of unspecified connective tissue disease and myalgia.

Current diagnoses are noted to be: upper and lower extremity pain discomfort associated with undifferentiated connective tissue disease, fibromyalgia, with significant hypertension, hyperlipidemia, and diabetes

Our November 16, 2007, letter advised Mrs. Clark that her LTD benefits had been disallowed. Our February 25, 2008 letter advised Mrs. Clark that her first appeal for reconsideration had been upheld.

As part of the first appellate review of Mrs. Clark's claim, the available medical data in the administrative record was referred to an external physician Board Certified in Internal Medicine and Rheumatology for the purpose of completing a medical file review.

In the initial appellate medical file review the Physician-reviewer opined that during the time period in question of August 20, 2007 forward, based on the medical records contained in Mrs. Clark's file, she does not have documented findings to support a diagnosis of diabetes. It is noted the lab work done recently, was hemoglobin A1C, which was 5. This is the most recent lab. The blood sugar was 79. This result is not indicative of someone who is a diabetic. As such any impairment made on the basis of diabetes is not a medically supported.

Mrs. Clark has had elevated cholesterol throughout the chart, elevated LDLs, very mild elevation. Her stress test was negative. The medical records do not indicate a history of intermittent claudication. There are no examinations indicating bruits or any history of atherosclerotic disease. Therefore, she has evidence of mild hyperlipidemia. The physician reviewer noted there are no sequelae as a result of it, and Mrs. Clark can continue to function unlimited due to hyperlipidemia.

The physician reviewer noted Mrs. Clark is mildly hypertensive. Her blood pressures, mostly systolic have been high, but she has had some where the diastolic has been 100, going through the charts. This would not be limiting. This is a very mild hypertension and the physician reviewer opined, that Mrs. Clark could continue to work and be monitored for blood pressure.

In regards to Mrs. Clark's undifferentiated connective tissue disease, it is noted undifferentiated connective tissue disease is characteristic of collagen diseases which are a mix of lupus, rheumatoid arthritis, and scleroderma. It is noted, Dr. Amy Schultz did a rheumatoid profile on October 24, 2006, which was negative except for a low titer ANA. As such, Mrs. Clark's results were not indicative of an undifferentiated connective tissue disease. In reviewing these charts, from Dr. Schultz in particular, the physician reviewer found her statements from her reports to Dr. Clark and Dr. Cox were that Mrs. Clark had fibromyalgia most likely. The physician reviewer noted the laboratory work. Her SED rates were 9 and 32, which is normal for her age group and weight. There were no abnormal renal functions. There were no abnormal pulmonary functions. There were no abnormal cardiac functions. There is no report of severe arthritis or

synovitis in any of Mrs. Clark's reports. There are no reports of Raynaud's, ulcers, sclerodactyly, and so forth. It is of the physician reviewer's opinion that there is no differential diagnosis that would be involved in diagnosing an undifferentiated connective tissue disease. It is nonexistent in the medical records contained in Mrs. Clark's file.

The physician reviewer opined, based on the information available, Mrs. Clark has mild hyperlipidemia, hypertension without sequelae; and the medical history does not support a diagnosis of undifferentiated connective tissue disease. As such, the physician reviewer opined, Mrs. Clark does not have any functional impairment from August 20, 2007 forward.

We received your second appeal request on June 2, 2008. On second appeal you submitted or we requested the following medical data for review:

- May 19, 2008 letter by Anita Frogge
- March 24, 2008 letter by Dr. Cox

As part of the second appellate review of Mrs. Clark's claim, the available medical data in the administrative record was referred back to the external physician who completed the initial appeal medical file review for the purpose of completing a second medical file review; to determine if the additional documentation changed the prior medical assessment.

The physician reviewer noted the letter by Dr. Demetra Cox and opined the letter of advocacy does not show any medical documentation for Mrs. Clark's disability but rather gives an opinion.

The report by Anita Frogge, R.N./B.C., dated May 19, 2008 was reviewed. The physician noted this documentation was opinions on some observations that Ms. Frogge has made stating that due to muscle work fatigue, weakness, and joint pain, they reduced Ms. Clark's hours, and then finally, Ms. Clark was unable to go past noontime and was not able to spend the necessary time or the energy to perform home care.

The physician reviewer opined that the additional documentation does not alter the previous assessment.

**Vocational Assessment:**

As previously stated, we review Mrs. Clark's occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location. Based on the information we have received it appears Mrs. Clark's job as an LPN would be classified as a medium level occupation.

The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at time (or involve equivalent exertion in pushing and pulling), but are performed primarily in a sitting position, e.g.,

taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

**Conclusion:**

In summary, there is no significant difference between the reported complaints previously and the continued complaints noted by Mrs. Clark. There are no significant findings added by the additional documentation that would lead to any change in the previously outlined report. Based on the Physician Reviewer's assessment, there are no restrictions or limitations indicated. In total, the review of the additional medical information in no way changes the previously outlined report. As such, there is no medical support that Mrs. Clark would have been precluded from performing the material and substantial duties of her regular occupation as a LPN as of August 20, 2007. The decision to disallow Long Term benefits has been determined on second appeal to have been appropriate and is upheld.

This decision is final and cannot be appealed further to Prudential. If you still disagree with the above decision, you may file a lawsuit under the Employee Retirement Income Security Act (ERISA). ERISA allows you to file suit for policy benefits and reasonable attorney's fees.

If you have questions about our decision, you may call the number listed above.

Sincerely,

*Kim Boivin*

Kim Boivin
Senior Appeals Analyst

 **Prudential**

**Kim Boivin**
Senior Appeals Analyst

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone:  (800) 842-1718  Ext: 84567
Fax: (877) 889-4885
**Website:  www.prudential.com/disability**

June 6, 2008

QME                                             Claimant: Barbara D Clark
Attn: Janice Terrebrood                          Claim No.: 10996333
23077 Greenfield Road, Suite 245                 Date of Birth: REDACTED
Southfield, MI  48075-3744                        Control No./Br.: 80629  /  00001

Dear Ms. Terrebrood:

Thank you for Dr. Shavell's prompt review of Barbara D Clark's file.

We are in receipt of additional records from since that review.  Upon our evaluation of Dr. Shavell's file review report we note that these records had not been included in his review.

We ask that Dr. Shavell review these additional records and provide us with a professional opinion regarding the following:

1. Does review of the attached documentation alter your prior assessment?  If so, please detail how and why it alters your assessment, providing information supporting your opinion.

2. If review of the attached documentation does not alter your prior assessment, please explain why not.

We have provided a copy of Dr. Shavell's previous file review and the additional medical records. We request that the report be returned to us no later than June 22, 2008.

If you have questions you may call Dorothy Banda at (973) 548-5157.

Sincerely,

*Kim Boivin*

Kim Boivin
Senior Appeals Analyst

**D 0150**



**Kim Boivin**
Senior Appeals Analyst

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718  Ext: 84567
Fax: (877) 889-4885
**Website: www.prudential.com/disability**

June 3, 2008

OD Sanders                              Claimant: Barbara D Clark
402 N. Main                             Claim No.: 10996333
Noble, OK  73068                        Date of Birth: REDACTED
                                        Control No./Br.: 80629  /  00001

‖₁₁‖₁‖₁‖₁‖₁₁‖₁‖₁‖₁‖₁‖

Dear O.D. Sanders:

We are writing regarding Barbara D Clark's claim for Long Term Disability (LTD) benefits under Group Policy No. 80629 issued to DUNCAN REGIONAL HOSPITAL.

We have received your request for reconsideration of Mrs. Clark's claim.  We are performing a thorough evaluation based on the information currently in her file.

We anticipate making a determination on Mrs. Clark's claim by July 16, 2008. .

If you have any questions, please contact me directly at the phone number and extension listed above.

Sincerely,

*Kim Boivin*

Kim Boivin
Senior Appeals Analyst

D 0151



**Kim Boivin**
Senior Appeals Analyst

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 84567
Fax: (877) 889-4885
**Website: www.prudential.com/disability**

February 25, 2008

Duncan Regional Hospital                              Claimant: Barbara D Clark
Human Resources                                      Claim No.: 10996333
1407 Whisenant Drive                                 Date of Birth: REDACTED
Duncan, OK  73533                                    Control No./Br.: 80629  /  00001

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

Dear Sir or Madam:

We have completed our review of Barbara Clarks' first request for reconsideration of our decision to disallow her Long Term Disability (LTD) benefits under the Group policy #80629 issued to Duncan Regional Hospital. We have determined that our decision was appropriate and have upheld it on first reconsideration.

If you have any questions, please contact me directly at the phone number and extension listed above.

Sincerely,

*Kim Boivin*

Kim Boivin
Senior Appeals Analyst



**Kim Boivin**
Senior Appeals Analyst

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 84567
Fax: (877) 889-4885
**Website: www.prudential.com/disability**

February 25, 2008

Barbara D Clark
5990 South 13th
Duncan, OK 73533

Claimant: Barbara D Clark
Claim No.: 10996333
Date of Birth: REDACTED
Control No./Br.: 80629 / 00001

||ı.ıl.ıll.ıl.ıl.ıılı.ıll.ıl.ıl.ıl

Dear Mrs. Clark:

We have completed our review of your first request for reconsideration of our decision to disallow your Long Term Disability (LTD) benefits under the Group policy #80629 issued to Duncan Regional Hospital. We have determined that our decision was appropriate and have upheld it on first reconsideration. This letter outlines the reason for our determination.

You are noted to have last worked on August 19, 2007, at which time you were employed by Duncan Regional Hospital in the regular occupation of a LPN. The Attending Physician Statement completed by Dr. Schultz dated September 10, 2007, opines diagnoses of unspecified connective tissue disease and myalgia.

Current diagnoses are noted to be; upper and lower extremity pain discomfort associated with undifferentiated connective tissue disease, fibromyalgia, with significant hypertension, hyperlipidemia, and diabetes

Our appellate review included a determination of your eligibility for LTD benefits from August 20, 2007, forward.

"**How Does Prudential Define Disability?**

You are disabled when Prudential determines that:

- you are unable to perform the *material and substantial duties* of *your regular occupation* due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

**D 0153**

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim."

**"Material and substantial duties** means duties that :

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week."

**"Regular occupation** means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location."

Our November 16, 2007, letter advised you that your LTD benefits had been disallowed. We received your request for appellate review on January 29, 2008. On appeal you submitted the following documentation for review:

- December 27, 2007, letter from Dr. Amy Schultz
- December 11, 2007, office visit note
- Social Security Disability Award Letter

As part of the appellate review of your claim, the available medical data in the administrative record was referred to a external physician for the purpose of completing a medical file review. The external physician who reviewed your records is Board Certified in Internal Medicine and Rheumatology.

## Medical Review:

The physician reviewer opined that based on the medical records contained in your file, you do not have documented findings to support a diagnosis of diabetes. It is noted the lab work done recently, was hemoglobin A1C, which was 5. This is the most recent lab. The blood sugar was 79. This result is not indicative of someone who is a diabetic. As such any impairment made on the basis of diabetes is not a medically supported.

It is noted you have had elevated cholesterol throughout the chart, elevated LDLs, very mild elevation. Your stress test was negative. The medical records no not indicate a history of intermittent claudication. There are no examinations indicating bruits or any history of atherosclerotic disease. Therefore, you have mild hyperlipidemia. The physician reviewer noted there are no sequelae as a result of it, and you can continue to function unlimited due to hyperlipidemia.

The physician reviewer noted you are mildly hypertensive. Your blood pressure, mostly systolic have been high, but you have had some where the diastolic has been 100, going through the charts. This would not be limiting. This is a very mild hypertension, noted and the physician reviewer opined, that you could continue to work and be monitored for blood pressure. It is noted you have no sequelae, no strokes, no heart disease, no claudication; nothing to indicate that you are limited as a result of your hypertension.

In regards to your undifferentiated connective tissue disease, it is noted undifferentiated connective tissue disease is characteristic of collagen diseases which are a mix of lupus,

rheumatoid arthritis, and scleroderma. What is seen on these diseases are 1) skin changes, hair loss, oropharyngeal ulcers, interstitial fibrosis of the lungs, persistent thick rashes, Raynaud's disease, ulcerations of the fingertips, severe arthritis, blood dyscrasias involving hemolytic anemias, anti clotting, anti phospholipid antibodies, renal disease with elevated BUN (blood urea nitrogen), creatinines, or combinations thereof. Any multiple combinations of these findings with positive laboratory results would indicate that you had an undifferentiated connective tissue disease. It is noted, Dr. Amy Schultz did a rheumatoid profile on October 24, 2006, which was negative except for a low titer ANA. As such, your results were not indicative of an undifferentiated connective tissue disease. In reviewing these charts, from Dr. Schultz in particular, the physician reviewer found her statements from her reports to Dr. Clark and Dr. Cox were that you had fibromyalgia most likely. The physician reviewer noted the laboratory work. It is noted your SED rates were 9 and 32, which is normal for your age group and weight. There are no abnormal renal functions. There are no abnormal pulmonary functions. There are no abnormal cardiac functions. There is no report of severe arthritis or synovitis in any of your reports. There are no reports of Raynaud's, ulcers, sclerodactyly, and so forth. It is of the physician reviewer's opinion that there is no differential diagnosis that would be involved in diagnosing an undifferentiated connective tissue disease. It is nonexistent in this your medical history.

The physician reviewer opined, based on the information available, you have mild hyperlipidemia, hypertension without sequelae;, and the medical history does not support a diagnosis of undifferentiated connective tissue disease. As such, the physician reviewer opined, you do not have any functional impairment from August 20, 2007 forward. There are no identifiable restrictions and/or limitations such as sitting, standing, walking, lifting, carrying, perform repetitive and fine motor activities.

**Vocational Assessment:**

As previously stated, we review your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location. Based on the information we have received it appears your job as an LPN would be classified as a medium level occupation.

The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at time (or involve equivalent exertion in pushing and pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

**Conclusion:**

Based on the Physician Reviewer's assessment, there are no restrictions or limitations indicated. As such, there is no medical support that you would have been precluded from performing the material and substantial duties of your regular occupation as a LPN as of August 20, 2007. The decision to disallow Long Term Disability benefits has been determined on first appeal to have been correct and is upheld.

You may again appeal this decision to Prudential's Appeals Review Unit for a final decision. If you elect to do so, the appeal must be made in writing by you or your authorized representative. Your complete appeal must be submitted within 180 days of the receipt of this letter. The appeal may identify the issues and provide other comments or additional evidence you wish considered. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim. Please forward your appeal request to me at the above address.

A determination on your claim appeal will be made within 45 days of the receipt of your appeal request. This period may be extended by 45 days if special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which Prudential expects to render a decision shall be furnished to you within the initial 45-day period. However if Prudential requests additional information from you and you fail to respond, this period of time may be extended until you provide the requested information.

Please note that this second appeal is voluntary. You are entitled to receive upon request, sufficient information to make a decision about filing this appeal.

Since you have now completed the first level of appeal, you may file a lawsuit under the Employee Retirement Income Security Act (ERISA). ERISA allows you to file suit for policy benefits and reasonable attorney's fees. Your decision on whether to file a second appeal will not affect your rights to sue under ERISA.

If you have any questions, please contact me directly at the phone number and extension listed above.

Sincerely,

*Kim Boivin*

Kim Boivin
Senior Appeals Analyst



**Kim Boivin**
Senior Appeals Analyst

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 84567
Fax: (877) 889-4885
**Website: www.prudential.com/inst/gldi**

February 5, 2008

QME                                          Claimant: Barbara D Clark
Attn: Janice Terrebrood                      Claim No.: 10996333
23077 Greenfield Road, Suite 245             Date of Birth: REDACTED
Southfield, MI 48075-3744                    Control No./Br.: 80629 / 00001

Dear Ms. Terrebrood:

Thank you for arranging the independent file review for Barbara Clark's claim for Long Term Disability (LTD) benefits.

**Brief Claim Summary**

Ms. Clark is a 60 year old LPN. Date of disability is noted to be August 20, 2007. Diagnoses: upper and lower extremity pain and discomfort associated with undifferentiated connective tissue disease and fibromyalgia. Medical history is significant for hypertension, hyperlipidemia, and diabetes mellitus. LTD benefits were disallowed as core operations opined medical did not support degree of impairment that would preclude her from performing her own occupation. Claimant is 5 feet 4 inches tall and weighs approximately 224 pounds. Calculated body mass index (BMI) is 38.4 and is consistent with morbid obesity. This is an Appeal.

We request that a physician who specializes in RHEUMATOLOGY review Ms.Clark's file and provide his/her professional opinion in a written report including the information reviewed with discussion, their overall assessment, and responses to the following:

1.  Based on the documentation reviewed, does the claimant have functional impairment(s) from August 20, 2007, forward? If so, please list the functional impairment(s) and the evidence supporting your opinion.

2.  Please identify appropriate restrictions and/or limitations (e.g. sit, stand, walk, reach, lift, carry, perform repetitive and fine motor hand activities, etc), based on any functional impairment(s) you have noted above. Please also note the duration of any applicable restrictions and/or limitations (e.g. temporary or permanent) and the evidence supporting your opinion if not elsewhere documented.

3.  If medical records are indicating significant impairment, please comment on expected treatment, duration and prognosis (Is improvement likely?)

4.  Is the Claimant's self-reported chronic pain supported by and/or consistent with diagnostic testing and physical examination findings? Please provide detailed information supporting your opinion.

5.  Do the medical records support significant adverse side effects (including cognitive deficits and sedation) from any medication or combination of medication(s)? If so, please specify which medication(s) and for what time period, providing evidence of your opinion.

6.  If you opine that the claimant is not functionally impaired, please provide a detailed explanation supporting your opinion.

All medical documentation contained within Ms. Clark's file has been provided for this review as well as all pertinent correspondence, telephone calls, or other claim documentation. We request that the physician's report be returned to us no later than February 20, 2008.

Thank you in advance for your expedited handling of this request. If you have any questions, please contact Dorothy Banda directly at (973) 548-5157.

Sincerely,

*Kim Boivin*

Kim Boivin
Senior Appeals Analyst



**Kim Boivin**
Senior Appeals Analyst

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718  Ext: 84567
Fax: (877) 889-4885
**Website:** www.prudential.com/inst/gldi

January 30, 2008

Barbara D Clark
5990 South 13th
Duncan, OK 73533

Claimant: Barbara D Clark
Claim No.: 10996333
Date of Birth: REDACTED
Control No./Br.: 80629  /  00001

||ıııdıllıllılllıllıdıldıldıl

Dear Ms. Clark:

We are writing regarding your claim for Long Term Disability (LTD) benefits under Group Policy No. 80629 issued to DUNCAN REGIONAL HOSPITAL.

We have received your request for reconsideration of your claim. We are performing a thorough evaluation based on the information currently in your file.

We anticipate making a determination on your claim by March 13, 2008.

If you have any questions, please contact me directly at the phone number and extension listed above.

Sincerely,

*Kim Boivin*

Kim Boivin
Senior Appeals Analyst

**D 0159**

**Prudential Financial**

**Michael J Gregory, Jr., ALHC**
Sr. Disability Claims Examiner

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 84597
Fax: (877) 889-4885
**Website: www.prud**ential.com/inst/gldi

November 16, 2007

Duncan Regional Hospital                     Claimant: Barbara D Clark
Human Resources                              Claim No.: 10996333
1407 Whisenant Drive                         Date of Birth: REDACTED
Duncan, OK  73533                            Control No./Br.: 80629  /  00001

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

Dear Sir or Madam:

We have completed our review of Barbara D Clark's claim for Long Term Disability (LTD) benefits under the Group Policy No. 80629 issued to DUNCAN REGIONAL HOSPITAL. Based on our review, we have determined that she is not entitled to Long Term Disability benefits and have disallowed her LTD claim.

Under separate cover, we have written and advised Barbara D Clark of our determination and because of the confidentiality of her medical condition we are unable to share this information with you.

If you have any questions, please contact me at (800) 842-1718, extension 84597.

Sincerely,

*Michael J Gregory, Jr., ALHC*

Michael J Gregory, Jr., ALHC
Sr. Disability Claims Examiner

cc:  Barbara D Clark

**D 0160**

 **Prudential Financial**

**Michael J Gregory, Jr., ALHC**
Sr. Disability Claims Examiner

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718  Ext: 84597
Fax: (877) 889-4885
**Website:  www.prudential.com/inst/gldi**

November 16, 2007

Barbara D Clark                                       Claimant: Barbara D Clark
5990 South 13th                                      Claim No.: 10996333
Duncan, OK  73533                                   Date of Birth: REDACTED
                                                     Control No./Br.: 80629 / 00001

||ıı|ıl||ıl||ıl||ıı||ıl||ıl||ıl|

Dear Ms. Clark:

We have completed our review of your claim for Long Term Disability (LTD) benefits under
Group Policy No. 80629 issued to DUNCAN REGIONAL HOSPITAL.  After careful review, we
have denied your claim and no benefits are payable.  This letter outlines our reasons for this
determination.

In order to receive benefits under Group Policy No. 80629,  covered employees must meet all
contractual requirements including the following definition of  "Disability":

"You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation
  due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to that sickness or
  injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same
sickness or injury, you are unable to perform the duties of any gainful occupation for which you
are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute
disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts
of our choice.  Prudential will pay for these examinations.  We can require examinations as often
as it is reasonable to do so.  We may also require you to be interviewed by an authorized
Prudential Representative.  Refusal to be examined or interviewed may result in denial or
termination of your claim."

**"Material and substantial duties** means duties that :

- are normally required for the performance of your regular occupation; and

**D 0161**

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week."

"**Regular occupation** means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location."

We requested and obtained medical records from Dr. Amy Shultz and Dr. Demetra Cox. A summary follows:

- On October 24, 2006 you were seen and evaluated by Dr. Shultz. On examination, there was no evidence of synovitis in any joints. It was noted that there was decreased abduction of your bilateral shoulders due to pain along the top of your shoulders and the back of your neck. You had good range of motion in both hips, and your left knee had some crepitus, but no signs of effusions. Your right knee had been replaced. You had tenderness to palpation over multiple muscle groups along your upper arms and across your trapezius area, and you had tenderness to palpation over muscle groups along your lateral thighs and the paraspinous muscles of your lumbar spine. It was recommended that you continue with Tramadol and Ultram for pain control.

- On July 30, 2007 you were seen and evaluated by Dr. Cox. On examination it was noted that you were alert and oriented with findings within normal limits. It was recommended that you continue with diet and weight control, and return in six months for re-evaluation. Dr. Cox noted that you reported that you were doing "pretty well" and that you reported that you were thinking about quitting work in the next month or so as it is really starting to take its wear and tear on your body.

- On September 5, 2007 you were seen and evaluated by Dr. Shultz. She described you as alert and oriented. There was no synovitis noted in any joints. On exam, there was mildly decreased abduction to both shoulders due to pain and positive tender points over muscles in your upper arms. There was good hip range of motion. There were tender points over your lateral thighs and trochanteric bursa. There was left knee crepitus with no effusion. Dr. Cox noted that you had been doing better on Plaquenil as far as her joint pain and stiffness, and recommended that you continue with Plaquenil, Ultram ER, Tramadol, and Darvocet medications for pain control. You were administered Depo-Medrol 160 mg injection, and you were instructed to return in three months for re-evaluation.

- On September 5, 2007 a letter was written by Dr. Shultz. The letter noted that you have had a particularly difficult time with pain and fatigue that has required you to miss many days from work. In addition, you take many medications in order to help control your pain, which could cause potential drowsiness. Dr. Shultz continued that you are unable to do substantial gainful employment due to the physical and mental problems caused by your diseases, until they become under better control. Your condition is not expected to get any better in the foreseeable future, and is expected to last more than twelve months.

A medical review was completed based on records obtained from Dr. Cox and Dr. Shultz. The medical review determined that there is no medical evidence that your functional capacity is currently limited by symptoms associated with hypertension, hyperlipidemia and diabetes mellitus. In addition, there is no medical indications that any current restrictions need to be applied.

We also evaluated your claim in regard to your upper and lower extremity pain and discomfort, reported concentration and memory problems, undifferentiated connective tissue disease and

fibromyalgia. As noted above, you were seen and evaluated by Dr. Shultz on October 24, 2006 for the same reported symptoms as those that were documented in your September 5, 2007 evaluation by Dr. Shultz. The treatment provided was based on symptoms of pain and fatigue. There were no significant adjustments made in your medical plan of care in July and September 2007 when compared with your 2006 progress notes.

Based on the above information, it was determined that your decision to leave work was based on choice rather than significant change in your medical condition. There is no medical evidence that your current functional capacity is limited by symptoms associated with the above noted medical conditions, and there are no medical indications that any restrictions need to be applied.

After a thorough evaluation of the above information, we have determined that you do not meet the definition of disability as defined above. Therefore, we have disallowed your claim.

## **Appeal Rights**

You have a right to appeal this decision. If you choose to do so, your appeal must be made in writing by you or your authorized representative, and submitted within 180 days of the date of receipt of this letter. Your appeal should contain:

- Your name, control number, and Social Security number (or claim number)
- The reasons that you disagree with our determination
- Medical evidence or information to support your position such as:
    - Copies of therapy treatment notes
    - Any additional treatment records from physicians
    - Actual test results (e.g. EMG, MRI)

You may submit with your appeal any other written comments, documents, records, or information related to your claim.

You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim.

Your written claim appeal should be submitted to Appeals Review Unit at the address listed above.

A determination on your appeal will be made within 45 days of the receipt of your appeal request. This period may be extended by 45 days, if special circumstances require an extension. You will receive written notice of the extension, the reason for the extension, and the date by which the Appeals Review Unit expects to render a decision, within the initial 45-day period. However, if the Appeals Review Unit requests additional information, the extension may be delayed until you provide the requested information.

If our decision to deny benefits is upheld at the first level of appeal, you or your authorized representative may file a voluntary second appeal. You are entitled to receive upon request and at no cost, sufficient information to make a decision about filing this appeal. The same time frame for the first appeal will apply to the second appeal.

After completion of the first level of appeal, you may also file a lawsuit under the Employee Retirement Income Security Act (ERISA). ERISA allows you to file suit for policy benefits and reasonable attorney's fees. Your decision on whether to file a second appeal will not affect your rights to sue under ERISA.

D 0163

If you have any questions, please contact me at (800) 842-1718**,** extension 84597.

Sincerely,

*Michael J Gregory, Jr.,  ALHC*

Michael J Gregory, Jr.,  ALHC
Sr. Disability Claims Examiner

**Michael J Gregory, Jr., ALHC**
Sr. Disability Claims Examiner

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 84597
Fax: (877) 889-4885
**Website: www.prudential.com/inst/gldi**


## Prudential Financial

September 17, 2007

Barbara D Clark
5990 South 13th
Duncan, OK 73533

Claimant: Barbara D Clark
Claim No.: 10996333
Date of Birth: REDACTED
Control No./Br.: 80629 / 00001

IIııılıIıIlıılıılIıullıIılıı

Dear Ms. Clark:

This letter is being sent to advise you that we are in receipt of your Long Term Disability (LTD) claim under Group LTD Policy No. 80629 issued to DUNCAN REGIONAL HOSPITAL.

We have completed our initial review of your claim and have determined that additional information is needed to make a determination for your eligibility for LTD benefits.

In order to receive benefits, under Group Policy No. 80629, covered employees must meet all contractual requirements including the following definition of "Disability":

**"How Does Prudential Define Disability?**

You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

After  months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice.  Prudential will pay for these examinations.  We can require examinations as often as it is reasonable to do so.  We may also require you to be interviewed by an authorized Prudential Representative.  Refusal to be examined or interviewed may result in denial or termination of your claim."

Our LTD review includes the analysis of your medical and vocational information.  In order to satisfy the above definition of disability, the information in your file must support any restrictions

and limitations that would preclude you from the material and substantial duties of your regular occupation.

At this time we have requested the following information:
1.  Medical Records for the period September 1, 2006 to present from Dr. Shultz.


The policy under which you are covered also states the following:

**"What Information Is Needed as Proof of Your Claim?**

Your proof of claim, provided at your expense, must show:

1. That you are under the regular care of a doctor.
2. The appropriate documentation of your monthly earnings.
3. The date your disability began.
4. Appropriate documentation of the disabling disorder.
5. The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or gainful occupation.
6. The name and address of any hospital or institution where you received treatment, including all attending doctors.
7. The name and address of any doctor you have seen.

We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted."

Your claim was considered filed as of September 12, 2007. We have until November 19, 2007 to make an initial decision. All of the above outlined information needs to be returned to our office by October 17, 2007. Please note, that our initial decision date of November 19, 2007 may be extended up to two additional periods of 30 days should there be circumstances beyond our control. Furthermore, any extension period may be tolled until information necessary to make a decision on your claim has been received.

If you have any questions, please contact me at (800) 842-1718, extension 84597.

Sincerely,

*Michael J Gregory, Jr., ALHC*
Michael J Gregory, Jr., ALHC
Sr. Disability Claims Examiner

**Prudential Financial**

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718
Fax: (877) 889-4885
**Website: www.prudential.com/inst/gldi**

September 14, 2007

Barbara D Clark
5990 South 13th
Duncan, OK  73533

Claimant: Barbara D Clark
Claim No.: 10996333
Date of Birth: REDACTED
Control No./Br.: 80629  /  00001

|||..|||..||.|||.||..|||..||.||.||.||.|

Dear Ms. Clark:

Thank you for submitting your information and request for Long Term Disability (LTD) benefits under Group Plan No. 80629 issued to DUNCAN REGIONAL HOSPITAL.  In order for a claim for benefits to be considered filed, Prudential requires an employee's statement, employer's statement and an attending physician's statement  to be submitted.

We are reviewing the information we have received to date.  You do not have to contact us at this time.  We will contact you shortly regarding any additional information needed in order for us to process your request.

**Important Information For You to Know:**

- Included in this mailing is a copy of the Fraud Warning.  Please review this information carefully.
- Note that telephone calls to and from Prudential may be recorded for quality control purposes.
- Benefits under your Group Disability Income Plan may be subject to federal, state and local taxation.

**If You Wish to Contact Prudential:**

- You may obtain claim and payment status online at our website, www.Prudential.com/inst/gldi
- You may obtain claim and payment status 24 hours per day at 1-800-842-1718 (English and Spanish speaking).
- The toll free number (1-800-842-1718) is serviced with Customer Service Professionals from 8 a.m. to 8 p.m. (eastern time) Monday through Friday.
- Prudential's secure, toll free fax number is 1-877-889-4885.

Please feel free to contact us with any questions.

Sincerely,

*Prudential Financial*
Prudential Financial

<u>**Claim Fraud Warning Statements:**</u>

**For residents of all states except California, Florida, New Jersey, New York, Pennsylvania, Utah, Vermont, Virginia and Washington:**
**WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurance company or other person, or knowing that he is facilitating commission of a fraud, submits incomplete, false, fraudulent, deceptive or misleading facts or information when filing an insurance application or a statement of claim for payment of a loss or benefit commits a fraudulent insurance act, is/may be guilty of a crime and may be prosecuted and punished under state law. Penalties may include fines, civil damages and criminal penalties, including confinement in prison. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant or if the applicant conceals, for the purpose of misleading, information concerning any fact material thereto.

**CALIFORNIA RESIDENTS**: For your protection, California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**FLORIDA RESIDENTS:** Any person knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing false, incomplete, or misleading information is guilty of a felony of the third degree.

**NEW JERSEY RESIDENTS**: Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**NEW YORK RESIDENTS**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**PENNSYLVANIA and UTAH RESIDENTS**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any material fact thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**VERMONT**: Any person who knowingly presents a false or fraudulent claim for payment of a loss or knowingly makes a false statement in an application for insurance may be guilty of a criminal offense under state law.

**VIRGINIA RESIDENTS**: Any person who knowingly and with intent to injure, defraud, or deceive any insurance company or other person, or knowing that he is facilitating commission of a fraud, submits incomplete, false, fraudulent, deceptive or misleading facts or information when filing a statement of claim for payment of a loss or benefit may have violated state law, is guilty of a crime and may be prosecuted and punished under state law. Penalties may include fines, civil damages and criminal penalties, including confinement in prison. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant or if the applicant conceals, for the purpose of misleading, information concerning any fact material thereto.

**WASHINGTON RESIDENTS**: Any person who knowingly provides a false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company commits a crime. Penalties include imprisonment, fines, and denial of insurance benefits.

| ClaimantName | EventDate | EventType | Reason | CMSUser |
|---|---|---|---|---|
| Barbara Clark | 09/10/2009 | DCM Reassignment | Serv DCM From X144250 To X093725 | Celeste Kolodin |
| Barbara Clark | 09/10/2009 | DCM Reassignment | Acct DCM From X130159 To X093725 | Celeste Kolodin |
| Barbara Clark | 09/10/2009 | Other | Referred to Copy Team | Celeste Kolodin |
| Barbara Clark | 07/28/2008 | Other | ARU Copy of LTD policy mailed to Clmt | Kimberly Boivin |
| Barbara Clark | 07/14/2008 | Other | Policy req. from client center | Kimberly Boivin |
| Barbara Clark | 06/25/2008 | Coverage Status Descriptor Change | Cov#:1 - Medical Does Not Support Disability, X144250 | Kimberly Boivin |
| Barbara Clark | 06/25/2008 | Other | ARU letters mailed to Atty and ER | Kimberly Boivin |
| Barbara Clark | 06/25/2008 | Authorize Decision | Agree with dec as presented | Tara Johnson |
| Barbara Clark | 06/17/2008 | Other | FRA-QME-RHE-J. Shavell, MD-report to claim & DCM | Dorothy Banda RN |
| Barbara Clark | 06/06/2008 | Other | Addendum sent overnight-QME Dr. Shavell | Dorothy Banda RN |
| Barbara Clark | 06/03/2008 | CERT Intake Review | Accepted - FR - RHE (Shavell-QME) | Sue DeBenedictis MA Rehab. |
| Barbara Clark | 06/03/2008 | Other | Referred to Clinical External Resource Team | Kimberly Boivin |
| Barbara Clark | 06/03/2008 | Coverage Status Descriptor Change | Cov#:1 - None, X144250 | Kimberly Boivin |
| Barbara Clark | 02/25/2008 | Coverage Status Descriptor Change | Cov#:1 - Medical Does Not Support Disability, X144250 | Kimberly Boivin |
| Barbara Clark | 02/25/2008 | Other | ARU letters mailed to Clmt and ER | Kimberly Boivin |
| Barbara Clark | 02/14/2008 | Other | QME Rheum FR report rec'd & faxed to the claim | Dorothy Banda RN |
| Barbara Clark | 02/05/2008 | Other | sorted file sent overnight-QME-Rheum FR | Dorothy Banda RN |
| Barbara Clark | 02/04/2008 | FILE SORT Completed | File Sorted | Luis Correa |
| Barbara Clark | 01/31/2008 | Other | Referred to Copy Team | Luis Correa |
| Barbara Clark | 01/31/2008 | FILE PRINT/COPY Completed | File printed.spss-Sort bin | Luis Correa |
| Barbara Clark | 01/30/2008 | CERT Intake Review | Accepted - FR - Rheum | Sue DeBenedictis MA Rehab. |
| Barbara Clark | 01/30/2008 | Other | Referred to Clinical External Resource Team | Kimberly Boivin |
| Barbara Clark | 01/30/2008 | Other | Referred to Copy Team | Kimberly Boivin |
| Barbara Clark | 01/30/2008 | DCM Reassignment | Serv DCM From X148531 To X144250 | Angela Holland |
| Barbara Clark | 01/30/2008 | DCM Reassignment | Acct DCM From X133302 To X130159 | Angela Holland |
| Barbara Clark | 01/30/2008 | Coverage Status Descriptor Change | Cov#:1 - None, X140873 | Angela Holland |
| Barbara Clark | 11/16/2007 | Coverage Status Descriptor Change | Cov#:1 - Medical Does Not Support Disability, X148531 | Michael Gregory |
| Barbara Clark | 11/05/2007 | Other | RECS/PMT$16.00/MEDICNT/DR.SHULTZ/BARBARA CLARK/10996333/SP40 | Kisha Fridy |
| Barbara Clark | 11/02/2007 | Other | Referred to LTD Clinical Team 51 | Rebecca Plamondon |
| Barbara Clark | 09/13/2007 | Other | Pending claim reassigned today | Doreen Riorden |
| Barbara Clark | 09/13/2007 | DCM Reassignment | Serv DCM From X127836 To X148531 | Doreen Riorden |
| Barbara Clark | 09/13/2007 | DCM Reassignment | Acct DCM From X127836 To X133302 | Doreen Riorden |
| Barbara Clark | 09/13/2007 | Reassign | Cov#:1 -> From: 80629-00001-LTD-1 To: 80629-00001-LTD-2 | DCMS Batch Processing |



Group Contract
80629

Duncan Regional
Hospital

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA**

# Group Insurance Contract

**Contract Holder:  DUNCAN REGIONAL HOSPITAL**

**Group Contract No.:  DG-80629-OK**

Prudential will provide or pay the benefits described in the Group Insurance Certificate(s) listed in the Schedule of Plans of the Group Contract, subject to the Group Contract's terms.  This promise is based on the Contract Holder's application and payment of the required premiums.

All of the provisions of the Group Insurance Certificate(s), attached to and made a part of the Group Contract, apply to the Group Contract as if fully set forth in the Group Contract.

The Group Contract takes effect on the Contract Date, if it is duly attested under the Group Contract Schedule.  It continues as long as the required premiums are paid, unless it ends as described in its General Rules.  Dividends are apportioned each year.

The Group Contract is delivered in and is governed by the laws of the Governing Jurisdiction.

Secretary                                                    Chairman of the Board

# Group Contract Schedule

**Contract Date:** October 1, 1998

**Contract Anniversaries:** October 1 of each year, beginning in 1999.

**Premium Due Dates:** The Contract Date, and the first day of the month beginning with November 1998.

**Governing Jurisdiction:** State of Oklahoma

**Associated Companies:** Associated Companies are employers who are the Contract Holder's subsidiaries or affiliates and are reported to Prudential in writing for inclusion under the Group Contract, provided that Prudential has approved such request.

**Minimum Participation Number:** 25

## INCLUDED EMPLOYERS

Included Employers under the Group Contract are the Contract Holder and its Associated Companies, if any.

An Employee of more than one Included Employer will be considered an Employee of only one of those employers for the purpose of the Group Contract. That Employee's service with all other Included Employers will be treated as service with that one.

On any date when an employer ceases to be an Included Employer, the Group Contract will be considered to end for Employees of that employer. This applies to all of those Employees except those who, on the next day, are still within the Covered Classes of a plan of benefits of the Group Contract as Employees of another Included Employer. The plans of benefits for Covered Classes are listed in the Group Contract's Schedule of Plans.

The Contract Holder must let Prudential know, in writing, when an employer listed as an Associated Company is no longer one of its subsidiaries or affiliates.

———————————————

**Table of Contents** (as of the Contract Date): The Group Contract includes these forms with an 83500 prefix: COV 1004, GCS 1027, SPR 1001, GR 5002, MOD 1001(1-1), SCH 1001, APP 1002.

———————————————

Attest: _____

# Schedule of Premium Rates

DG-80629-OK

**Classes of Employees to which this Schedule applies:**

All Classes

| **Applicable Coverage** | **Monthly Rate Per Employee** |
|---|---|
| All Coverages | The premium rates in effect on the Contract Date are those determined by Prudential.  Those rates will be shown on the billing notice(s) sent to the Contract Holder (subject to any subsequent corrections). |

# General Rules

## A.  PAYMENT OF PREMIUMS - GRACE PERIOD.

Premiums are to be paid by the Contract Holder to Prudential.  Each may be paid at a Prudential office or to one of its authorized agents.  One is due on each Premium Due Date stated in the Group Contract Schedule.  The Contract Holder may pay each premium other than the first within 31 days of the Premium Due Date without being charged interest.  Those days are known as the grace period.  The Contract Holder is liable to pay premiums to Prudential for the time the Group Contract is in force.

## B.  PREMIUM AMOUNTS.

The premium due on each Premium Due Date is the sum of the premium charges for the insurance under the Coverages.  Those charges are determined from the premium rates then in effect and the Employees then insured.

The following will apply if one or more premiums paid include premium charges for an Employee whose insurance has ended before the due date of that premium.  Prudential will not have to refund more than the amount of the premium charges for such Employee that were included in the premiums paid for the two month period immediately before the date Prudential receives written notice from the Contract Holder that the Employee's insurance has ended.

Premiums may be determined in another way.  But it must produce about the same amounts and be agreed to by the Contract Holder and Prudential.

No premium charge will be made for an insured Employee under the Long Term Disability Coverage while the Employee:

(1)   is Disabled; and

(2)   is entitled, after the Elimination Period, to benefits under the Coverage.

## C.  PREMIUM RATE CHANGES.

The premium rates in effect on the Contract Date are shown in the Group Contract's Schedule of Premium Rates.  A change in premium rates will not take effect before the second Contract Anniversary.  But, Prudential has the right to change premium rates at any time for reasons which affect the risk assumed, including the reasons shown below:

(1)   A change occurs in the plan design.

(2)   A division, subsidiary or associated company is added or deleted.

(3)   The number of insured persons changes by 25% or more.

(4)   A new law or a change in any existing law is enacted which applies to this plan.

Prudential will notify the Contract Holder in writing at least 31 days before a premium rate is changed. A change may take effect on an earlier date when both Prudential and the Contract Holder agree.

## D.  DIVIDENDS.

Prudential will determine the share, if any, of its divisible surplus allocable to the Group Contract as of each Contract Anniversary, if the Group Contract stays in force by the payment of all premiums to that date.  The share will be credited to the Group Contract as a dividend as of that date.

Each dividend will be paid to the Contract Holder in cash unless the Contract Holder asks that it be applied toward the premium then due.

Prudential's sole liability as to any dividend is as set forth above.

**Non-profit Clause:**  This applies if the aggregate dividends under the Group Contract and any other group contract(s) of the Contract Holder exceed the aggregate payments toward their cost made from the Employer's own funds.  The Contract Holder will see that an amount equal to the excess is applied for the benefit of insured persons.

## E.  END OF THE GROUP CONTRACT OR OF AN INSURANCE.

**During or at End of Grace Period - Failure to Pay Premiums:**  If any premium is not paid by the end of its grace period, the Group Contract will end when the grace period ends.  The Contract Holder may request in writing that the Group Contract be ended at the end of the period for which premiums have been paid or at any time during the grace period.  Then the Group Contract will end on the requested date, but in no event will it end before the date Prudential receives the written request from the Contract Holder.  The Contract Holder is liable to pay premiums to Prudential for the time the Group Contract is in force.

**On a Premium Due Date - Failure to Maintain Insuring Conditions:**  On any Premium Due Date, Prudential may end the part of the Group Contract for Contributory or Non-contributory Insurance under a Coverage if one or more of the following conditions then exists for that plan.  But notice of its intent to do so must be given to the Contract Holder at least 31 days in advance.

Contributory Insurance:  The insured Employees are:

(1)  less than the Minimum Participation Number; or

(2)  less than 75% of the Employees who are eligible to request the insurance; or

(3)  contributing at a rate higher than the maximum, if any, stated in the Group Contract for the insurance.

Non-contributory Insurance:  The insured Employees are:

(1)  less than the Minimum Participation Number; or

(2)  contributing for the insurance.

The Minimum Participation Number is shown in the Group Contract Schedule.

**On a Contract Anniversary:**  Prudential may end the Group Contract on any Contract Anniversary. But notice of its intent to do so must be given to the Contract Holder at least 31 days in advance.

## F.   AGE ADJUSTMENT.

If an age is used to determine the premium charge for an Employee's insurance and the age is found to be in error, the premium charge for that insurance will then be adjusted to reflect the correct age. If this adjustment results in a change in the amount of premium, any difference between the premium paid and the premium required on the basis of the correct age will be paid as follows:

(1)   If the adjustment results in an increased premium, the difference will be paid by the Contract Holder when notified by Prudential.

(2)   If the adjustment results in a decreased premium, the difference will be refunded by Prudential.

If the change in age affects the amount of the Employee's insurance under any Coverage, such amount will be changed on the basis of the correct age.  Any premium adjustment will take this into account.

## G.   EMPLOYEE'S CERTIFICATE.

Prudential will give the Contract Holder an individual certificate to give each insured Employee.  It will describe the Employee's coverage under the Group Contract.  It will include (1) to whom Prudential pays benefits, (2) any protection and rights when the insurance ends, and (3) claim rights and requirements.

## H.   RECORDS - INFORMATION TO BE FURNISHED.

Either the Contract Holder or Prudential, as they agree, will keep a record of the insured Employees. It will contain the key facts about their insurance.

At the times set by Prudential, the Contract Holder will send the data required by Prudential to perform its duties under the Group Contract, and to determine the premium rates.  All records of the Contract Holder and of the Employer which bear on the insurance must be open to Prudential for its inspection at any reasonable time.

Prudential will not have to perform any duty that depends on such data before it is received in a form that satisfies Prudential.  The Contract Holder may correct wrong data given to Prudential, if Prudential has not been harmed by acting on it.  An Employee's insurance under a Coverage will not be made invalid by failure of the Contract Holder or the Employer, due to clerical error, to record or report the Employee for that insurance.

## I.   THE CONTRACT - INCONTESTABILITY OF THE CONTRACT.

The entire Group Contract consists of:  (1) the Group Insurance Certificate(s) listed in the Schedule of Plans, a copy of which is attached to the Group Contract; (2) all modifications and endorsements to such Group Insurance Certificates which are attached to and made a part of the Group Contract by amendment to the Group Contract; (3) the forms shown in the Table of Contents as of the Contract Date; (4) the Contract Holder's application, a copy of which is attached to the Group Contract; (5) any endorsements or amendments to the Group Contract; and (6) the individual applications, if any, of the persons insured.  No statement of the Contract Holder shall be used in any contest of the insurance under the Group Contract.

There will be no contest of the validity of the Group Contract, except for not paying premiums, after it has been in force for one year.

The Group Contract may be amended, at any time, without the consent of the insured Employees or of anyone else with a beneficial interest in it. This can be done through written request made by the Contract Holder and agreed to by Prudential. But an amendment will not affect a claim incurred before the date of change.

Only an officer of Prudential has authority: to waive any conditions or restrictions of the Group Contract; or to extend the time in which a premium may be paid; or to make or change a contract; or to bind Prudential by a promise or representation or by information given or received. A Prudential agent is not an officer.

No change in the Group Contract is valid unless shown in:

(1)   an endorsement on it signed by an officer of Prudential; or

(2)   an amendment to it signed by the Contract Holder and by an officer of Prudential.

But a change in the Group Contract may be made in an amendment to it that is signed only by an officer of Prudential if:

(a)   The amendment reflects a change in the Group Contract that has been automatically made to satisfy the requirements of any state or federal law or regulation that applies to the Group Contract, as provided in the Conformity With Law section. This change is known as a Statutory Amendment.

(b)   The amendment reflects a change in Prudential's administration of its group insurance benefits and is intended to apply to all group insurance contracts which are affected by the change. This change is known as a Portfolio Amendment. Prudential will give the Contract Holder written notice of its intent to make a Portfolio Amendment in the Group Contract at least 31 days in advance of the effective date of the Amendment. When the Group Contract is so amended, payment by the Contract Holder of the next premium due under the Group Contract will constitute acceptance of the Portfolio Amendment, unless the Contract Holder has rejected the Amendment, in writing, prior to its effective date.

## J.   CONFORMITY WITH LAW.

If the provisions of the Group Contract do not conform to the requirements of any state or federal law or regulation that applies to the Group Contract, the Group Contract is automatically changed to conform with Prudential's interpretation of the requirements of that law or regulation.

_____

# Modifications of the Group Contract of a Contract Holder Who is a Medicare Provider

The purpose of these Modifications is to allow access, under certain conditions, to: the Group Contract; and books, documents, and records that relate to the Group Contract.

The Group Contract is modified to add the following provisions.

As used in these provisions:

"Secretary" means the Secretary of the United States Department of Health and Human Services.

"Comptroller General" means the Comptroller General of the United States.

"Section 1861 (v) (1) (I)" means that section of the United States Social Security Act.

1. If Prudential receives a written request from the Secretary or the Comptroller General, Prudential will make the items below available to: (a) the one of them who makes the request; or (b) a person authorized by the one of them who makes the request.

   The items referred to above are:

   (i) the Group Contract;

   (ii) those books, documents, and records that are needed to confirm the nature and extent of costs under the Group Contract.

   Prudential will have to make such items available only if all of these conditions are met:

   (a) the request is made before the end of four years after the date Prudential furnishes a service under the Group Contract; and

   (b) access to such items is needed because of the Contract Holder's need to comply with Section 1861 (v) (1) (I); and

   (c) during the 12 months before the time for which information is sought, the value of payments made by the Contract Holder under the Group Contract was more than $10,000; and

   (d) making such items available does not violate any federal or state law.

2. The following applies if:

   (i) Prudential carries out any of its duties under the Group Contract through a subcontract with a related organization (as defined in 42 C.F.R. 405.427 (b)); and

   (ii) that subcontract has a value or cost of $10,000 or more over a period of 12 months.

In that case, the subcontract will contain a provision to the following effect:

If the related organization receives a written request from the Secretary or the Comptroller General, the related organization will make the items below available to:  (a) the one of them who makes the request; or (b) a person authorized by the one of them who makes the request.

The items referred to above are:

(i)   the subcontract;

(ii)  those books, documents, and records of the related organization that are needed to verify the nature and extent of costs under the subcontract.

The related organization will have to make such items available only if the request is made before the end of four years after the date the related organization furnishes a service pursuant to the subcontract.

3.   Anything above to the contrary, these provisions will cease to have effect upon a finding by a court that the Group Contract does not meet the regulatory or statutory definition of contract, as that term is used in Section 1861 (v) (1) (I).  As used in the last sentence, "court" includes a quasi-judicial body of competent jurisdiction.

———————————————————

# Schedule of Plans

**Effective Date:**  October 1, 1998

**Group Contract No.:**  DG-80629-OK

This Schedule of Plans sets forth the Plan of Benefits that applies to each Covered Class under the Group Contract listed below as of the Effective Date.  The Plan of Benefits for a Covered Class is determined by: (1) the Group Insurance Certificates that apply to the Covered Class; and (2) any modification to those Certificates, provided the modification is listed below or included in an amendment to the Group Contract.  A copy of each Certificate and any modification to it are attached to the Group Contract and made a part of it.

**Covered Class:**

All Employees included in the Covered Classes of the Group Insurance Certificate(s) listed below.

### Plan of Benefits that Applies to this Covered Class:

(1)  The Coverage(s) described in the Group Insurance Certificate prepared for the Group Contract shown above:

    (a)  With the Program Date of October 1, 1998;

    (b)  and bearing the code "80629-LTD-I; Ed. 11-99".

(2)  The Coverage(s) described in the Group Insurance Certificate prepared for the Group Contract shown above:

    (a)  With the Program Date of October 1, 1998;

    (b)  and bearing the code "80629-LTD-II; Ed. 11-99".

_____

# Application to

**The Prudential Insurance Company of America (Prudential)**

**For Group Contract No.** DG-80629-OK

**Applicant**:     DUNCAN REGIONAL HOSPITAL

**Address:**     1407 Whisenant Drive
Duncan, Oklahoma  73533

The Group Contract is approved and its terms are accepted.

This Application is made in duplicate.  One is attached to the Group Contract.  The other is to be returned to Prudential.

It is agreed that for all Employees, other than those other than those who are not in Active Employment due to disability, the Group Contract's coverage replaces a part of the Coverage of Group Contract No. G-80629

- DUNCAN REGIONAL HOSPITAL -

_____
(Full or Corporate Name of Applicant)

Dated at _____     By _____
(Signature and Title)

On _____, 19_____     Witness _____
(To be signed by Resident
Agent where required by law)

D 0183

**AMENDMENT TO GROUP CONTRACT NO. DG-80629-OK**

By their signatures below, the Contract Holder and Prudential agree that the Group Contract is changed as follows:

- Each Notice of Change listed below is attached to this Amendment and forms part of the Group Contract as of its Effective Date.

  Notice of Change coded 83500 CNC 1001 (80629, CNC, Admin, 10-01-1998, 1), effective October 1, 1998.

  Notice of Change coded 83500 CNC 1001 (80629, CNC, All other EE, 10-01-1998, 3), effective October 1, 1998.

Date: _____, 20 ____      - DUNCAN REGIONAL HOSPITAL -
                                              (Contract Holder)

Witness: _____      By: _____
                                              (Signature and Title)

Roseland, NJ                         THE PRUDENTIAL INSURANCE COMPANY
                                              OF AMERICA

                                     By: _Michael G. Fausto_____
October 7, 2008                           Vice President, Contracts

83500
AMD 1001                                                          A

# RIDER TO BE ATTACHED TO YOUR CERTIFICATE

**NOTICE OF CHANGE**

**Covered Classes:**  All Employees classified by the Employer as Administrators other then Physicians.

**Effective Date of Change:**  The first day on or after October 1, 1998 on which you are insured (see the section of your Certificate entitled "When Does Your Coverage Begin?").  The section of your Certificate entitled "What If You Are Absent from Work on the Date Your Coverage Would Normally Begin?" does not apply to this change.

**Group Contract No.:**  DG-80629-OK

Your Certificate coded 80629-LTD-I; Ed. 11-99 is changed as follows:

- The **What Are Your Monthly Earnings?** provision of the **BENEFIT INFORMATION** section of the **Long Term Disability Coverage** is replaced by the following:

## What Are Your Monthly Earnings?

Monthly earnings means your gross monthly income from your Employer in effect just prior to your date of disability.  It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

All other provisions in your Certificate remain unchanged.

_____

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA**

# RIDER TO BE ATTACHED TO YOUR CERTIFICATE

**NOTICE OF CHANGE**

**Covered Classes:**  All Employees other than those classified by the Employer as Administrators and Physicians.

**Effective Date of Change:**  The first day on or after October 1, 1998 on which you are insured (see the section of your Certificate entitled "When Does Your Coverage Begin?").  The section of your Certificate entitled "What If You Are Absent from Work on the Date Your Coverage Would Normally Begin?" does not apply to this change.

**Group Contract No.:**  DG-80629-OK

Your Certificate coded 80629-LTD-II; Ed. 11-99 is changed as follows:

* The **What Are Your Monthly Earnings?** provision of the **BENEFIT INFORMATION** section of the **Long Term Disability Coverage** is replaced by the following:

## What Are Your Monthly Earnings?

Monthly earnings means your gross monthly income from your Employer in effect just prior to your date of disability.  It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.


All other provisions in your Certificate remain unchanged.

_____

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA**

# Duncan Regional Hospital

**Long Term Disability Coverage**



# Benefit Highlights

## LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for you by paying a portion of your income while you have a long period of disability. The amount you receive is based on the amount you earned before your disability began. In some cases, you can receive disability payments even if you work while you are disabled. Benefits start after the elimination period.

**Program Date:** October 1, 1998

**Contract Holder:** DUNCAN REGIONAL HOSPITAL

**Group Contract Number:** DG-80629-OK

**Covered Classes:** All Employees other than those classified by the Employer as Administrators and Physicians.

**Minimum Hours Requirement:** Employees must be working at least 30 hours per week.

**Employment Waiting Period:** You may need to work for your Employer for a continuous period before you become eligible for the plan. The period must be agreed upon by your Employer and Prudential.

Your Employer will let you know about this waiting period.

**Elimination Period:** 13 weeks.

**Benefits begin the day after the Elimination Period is completed.**

**Monthly Benefit:** 60% of your monthly earnings, but not more than $5,000.

Your benefit may be reduced by deductible sources of income and disability earnings. Some disabilities may not be covered or may be limited under this coverage.

**Maximum Period of Benefits:**

| Your Age on Date Disability Begins | Your Maximum Benefit Duration |
| --- | --- |
| Under age 61 | To your normal retirement age*, but not less than 60 months |
| Age 61 | To your normal retirement age*, but not less than 48 months |
| Age 62 | To your normal retirement age*, but not less than 42 months |
| Age 63 | To your normal retirement age*, but not less than 36 months |
| Age 64 | To your normal retirement age*, but not less than 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

**\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.**

No contributions are required for your coverage while you are receiving payments under this plan.

**Cost of Coverage:**   The long term disability plan is provided to you on a contributory basis.  You will be informed of the amount of your contribution when you enroll.

**The above items are only highlights of your coverage.  For a full description please read this entire Group Insurance Certificate.**

# Table of Contents

Benefit Highlights-Long Term Disability Plan ................................................................1

Certificate of Coverage................................................................................................4

General Provisions ......................................................................................................5

Long Term Disability Coverage-General Information ..................................................9

Long Term Disability Coverage-Benefit Information ..................................................10

Long Term Disability-Other Benefits ........................................................................21

Long Term Disability-Claim Information ...................................................................23

Long Term Disability-Other Services.........................................................................26

Glossary.....................................................................................................................28

**The Prudential Insurance Company of America**

# Certificate of Coverage

The Prudential Insurance Company of America (referred to as Prudential) welcomes you to the plan.

This is your Certificate of Coverage as long as you are eligible for coverage and you meet the requirements for becoming insured. You will want to read this certificate and keep it in a safe place.

Prudential has written this certificate in booklet format to be understandable to you. If you should have any questions about the content or provisions, please consult Prudential's claims paying office. Prudential will assist you in any way to help you understand your benefits.

The benefits described in this Certificate of Coverage are subject in every way to the entire Group Contract which includes this Group Insurance Certificate.

## Prudential's Address

The Prudential Insurance Company of America
80 Livingston Avenue
Roseland, New Jersey 07068

# General Provisions

## What Is the Certificate?

This certificate is a written document prepared by Prudential which tells you:

- the coverage to which you may be entitled;

- to whom Prudential will make a payment; and

- the limitations, exclusions and requirements that apply within a plan.

## General Definitions used throughout this certificate include:

*You* means a person who is eligible for Prudential coverage.

*We, us, and our* means The Prudential Insurance Company of America.

*Employee* means a person who is in active employment with the Employer for the minimum hours requirement.

*Insured* means any person covered under a coverage.

*Plan* means a line of coverage under the Group Contract.

## When Are You Eligible for Coverage?

If you are working for your Employer in a covered class, the date you are eligible for coverage is the later of:

- the plan's program date; and

- the day after you complete your *employment waiting period*.

*Employment waiting period* means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan  The period must be agreed upon by the Employer and Prudential.

## When Does Your Coverage Begin?

When your Employer pays the entire cost of your coverage under a plan, you will be covered at 12:01 a.m. on the date you are eligible for coverage, provided you are in *active employment* on that date.

You do not have to meet this active employment requirement if:

- you were previously covered under any disability benefit plan; and

- less than 31 days elapse before you became eligible for coverage without applying the employment waiting period.

D 000192

When you and your Employer share the cost of your coverage under a plan, you will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;

- the date you apply for insurance, if you apply within 31 days after your eligibility date; or

- the date Prudential approves your application, if **evidence of insurability** is required.

Evidence of insurability is required if you:

- are a late applicant, which means you apply for coverage more than 31 days after the date you are eligible for coverage; or

- voluntarily canceled your coverage and are reapplying; or

- apply after any of your coverage ended because you did not pay a required contribution; or

- have not met a previous evidence requirement to become insured under any plan the Employer has with Prudential.

An evidence of insurability form can be obtained from your Employer.

**Active employment** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least 30 hours per week.

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel.

Normal vacation is considered active employment.

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

**Evidence of insurability** means a statement of your medical history which Prudential will use to determine if you are approved for coverage. Evidence of insurability will be provided at your own expense.

## What If You Are Absent from Work on the Date Your Coverage Would Normally Begin?

If you are absent from work due to injury, sickness, temporary layoff or leave of absence your coverage will begin on the date you return to active employment.

D 000193

## Once Your Coverage Begins, What Happens If You Are Temporarily Not Working?

If you are on a temporary **layoff**, and if premium is paid, you will be covered to the end of the month following the month in which your temporary layoff begins.

If you are on a **leave of absence**, and if premium is paid, you will be covered to the end of the month following the month in which your leave of absence begins.

With respect to leave under the federal Family and Medical Leave Act of 1993 (FMLA) or similar state law, continuation of coverage under the plan during such leave will be governed by your Employer's policies regarding continuation of such coverage for non-FMLA leave purposes and any applicable law. Continuation of such coverage pursuant to this provision is contingent upon Prudential's timely receipt of premium payments and written confirmation of your FMLA leave by your Employer.

If you are working less than 30 hours per week, for reasons other than disability, and if premium is paid, you will be covered to the end of the month following the month in which your reduced hours begin.

**Layoff** or **leave of absence** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff.

## When Will Changes to Your Coverage Take Effect?

Once your coverage begins, any increased or additional coverage will take effect immediately upon the effective date of the change, if you are in active employment or if you are on a covered layoff or leave of absence. If you are not in active employment due to injury or sickness, any increased or additional coverage will begin on the date you return to active employment. An increase in your long term disability coverage may be subject to a pre-existing condition limitation as described in the plan. Any decrease in coverage will take effect immediately upon the effective date of the change. Neither an increase nor a decrease in coverage will affect a **payable claim** that occurs prior to the increase or decrease.

**Payable claim** means a claim for which Prudential is liable under the terms of the Group Contract.

## When Does Your Coverage End?

Your coverage under the Group Contract or a plan ends on the earliest of:

- the date the Group Contract or a plan is canceled;

- the date you are no longer a member of the covered classes;

- the date your covered class is no longer covered;

- the last day of the period for which you made any required contributions;

D 000194

- the last day you are in active employment except as provided under the temporary absence from work provisions; or

- the date you are no longer in active employment due to a disability that is not covered under the plan.

## Does the Coverage under a Plan Replace or Affect any Workers' Compensation or State Disability Insurance?

The coverage under a plan does not replace or affect the requirements for coverage by workers' compensation or state disability insurance.

## Does Your Employer Act as Prudential's Agent?

For purposes of the Group Contract, your Employer acts on its own behalf. Under no circumstances will your Employer be deemed the agent of Prudential.

## Does This Certificate Address Any Rights to Other Benefits or Affect Your Employment with Your Employer?

This certificate sets forth only the terms and conditions for coverage and receipt of benefits for Long Term Disability. It does not address and does not confer any rights, or take away any rights, if any, to other benefits or employment with your Employer. Your rights, if any, to other benefits or employment are solely determined by your Employer. Prudential plays no role in determining, interpreting, or applying any such rights that may or may not exist.

## How Can Statements Made in Your Application for this Coverage be Used?

Prudential considers any statements you or your Employer make in a signed application for coverage a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or

- cancel your coverage from the original effective date.

If a statement is used in a contest, a copy of that statement will be furnished to you or, in the event of your death or incapacity, to your eligible survivor or personal representative.

A statement will not be contested after the amount of insurance has been in force, before the contest, for at least two years during your lifetime.

We will use only statements made in a signed application as a basis for doing this.

If the Employer gives us information about you that is incorrect, we will:

- use the facts to decide whether you have coverage under the plan and in what amounts; and

- make a fair adjustment of the premium.

D 000195

# Long Term Disability Coverage

## GENERAL INFORMATION

### Who Is in the Covered Class(es) for the Insurance?

The Covered Classes are:

All Employees other than those classified by the Employer as Administrators and Physicians.

### How Many Hours Must You Work to be Eligible for Coverage?

You must be working at least 30 hours per week.

### What Is Your Employment Waiting Period?

You may need to work for your Employer for a continuous period before you become eligible for the coverage. The period must be agreed upon by your Employer and Prudential.

Your Employer will let you know about this waiting period.

### Who Pays for Your Coverage?

Your coverage is paid for by you. Your Employer will inform you of the amount of your contribution when you enroll.

D 000196

# Long Term Disability Coverage

## BENEFIT INFORMATION

### How Does Prudential Define Disability?

You are disabled when Prudential determines that:

- you are unable to perform the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and

- you have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or **injury**.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

**Material and substantial duties** means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

**Regular occupation** means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

**Gainful occupation** means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 60% of your indexed monthly earnings within 12 months of your return to work.

**Sickness** means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

**Injury** means a bodily injury that is the direct result of an accident and not related to any other cause. Injury which occurs before you are covered under the plan will be treated as a sickness. Disability must begin while you are covered under the plan.

*Indexed monthly earnings* means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date. Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor. Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

## How Long Must You Be Disabled Before Your Benefits Begin?

You must be continuously disabled through your *elimination period*. Prudential will treat your disability as continuous if your disability stops for 30 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

Your elimination period is 13 weeks.

*Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

## Can You Satisfy Your Elimination Period If You Are Working?

Yes, provided you meet the definition of disability.

## When Will You Begin to Receive Disability Payments?

You will begin to receive payments when we approve your claim, providing the elimination period has been met. We will send you a payment each month for any period for which Prudential is liable.

## How Much Will Prudential Pay If You Are Disabled and Not Working?

We will follow this process to figure out your *monthly payment*:

1. Multiply your monthly earnings by 60%.

2. The maximum *monthly benefit* is $5,000.

3. Compare the answer in item 1 with the maximum monthly benefit. The lesser of these two amounts is your *gross disability payment*.

4. Subtract from your gross disability payment any *deductible sources of income*.

That amount figured in item 4 is your monthly payment.

After the elimination period, if you are disabled for less than 1 month, we will send you 1/30th of your payment for each day of disability.

*Monthly payment* means your payment after any deductible sources of income have been subtracted from your gross disability payment.

*Monthly benefit* means the total benefit amount for which you are insured under this plan subject to the maximum benefit.

*Gross disability payment* means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

*Deductible sources of income* means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

## What Are Your Monthly Earnings?

Monthly earnings means your gross monthly income from your Employer in effect just prior to your date of disability. It includes your total income before taxes but does not include deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan or flexible spending account. It does not include income received from commissions, bonuses, overtime pay, any other extra compensation, or income received from sources other than your Employer.

## What Will We Use to Determine Monthly Earnings If You Become Disabled During a Covered Layoff or Leave of Absence?

If you become disabled while you are on a covered layoff or leave of absence, we will use your monthly earnings from your Employer in effect just prior to the date your absence begins.

## How Much Will Prudential Pay If You Work While You Are Disabled?

We will send you the monthly payment if you are disabled and your monthly *disability earnings*, if any, are less than 20% of your indexed monthly earnings due to the same sickness or injury.

If you are disabled and your monthly disability earnings are 20% or more of your indexed monthly earnings, due to the same sickness or injury, Prudential will figure your payment as follows:

During the first 12 months of payments, while working, your monthly payment will not be reduced as long as disability earnings plus the gross disability payment does not exceed 100% of indexed monthly earnings.

1.   Add your monthly disability earnings to your gross disability payment.

2.   Compare the answer in item 1 to your indexed monthly earnings.

If the answer from item 1 is less than or equal to 100% of your indexed monthly earnings, Prudential will not further reduce your monthly payment.

If the answer from item 1 is more than 100% of your indexed monthly earnings, Prudential will subtract the amount over 100% from your monthly payment.

After 12 months of payments, while working, you will receive payments based on the percentage of income you are losing due to your disability.

D 000199

1. Subtract your disability earnings from your indexed monthly earnings.

2. Divide the answer in item 1 by your indexed monthly earnings. This is your percentage of lost earnings.

3. Multiply your monthly payment by the answer in item 2.

This is the amount Prudential will pay you each month.

During the first 24 months of disability payments, if your monthly disability earnings exceed 80% of your indexed monthly earnings, Prudential will stop sending you payments and your claim will end.

Beyond 24 months of disability payments, if your monthly disability earnings exceed 60% of your indexed monthly earnings, Prudential will stop sending you payments and your claim will end.

Prudential may require you to send proof of your monthly disability earnings on a monthly basis. We will adjust your payment based on your monthly disability earnings.

As part of your proof of disability earnings, we can require that you send us appropriate financial records, including copies of your IRS federal income tax return, W-2's and 1099's, which we believe are necessary to substantiate your income.

***Disability earnings*** means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible. This would be, based on your restrictions and limitations:

- During the first 24 months of disability payments, the greatest extent of work you are able to do in your regular occupation, that is reasonably available.

- Beyond 24 months of disability payments, the greatest extent of work you are able to do in any occupation, that is reasonably available, for which you are reasonably fitted by education, training or experience.

Salary continuance paid to supplement your disability earnings will not be considered payment for work performed.

## What Happens If Your Disability Earnings Fluctuate?

If your disability earnings are expected to fluctuate widely from month to month, Prudential may average your disability earnings over the most recent 3 months to determine if your claim should continue subject to all other terms and conditions in the plan.

If Prudential averages your disability earnings, we will terminate your claim if:

- During the first 24 months of disability payments, the average of your disability earnings from the last 3 months exceeds 80% of indexed monthly earnings; or

- Beyond 24 months of disability payments, the average of your disability earnings from the last 3 months exceeds 60% of indexed monthly earnings.

We will not pay you for any month during which disability earnings exceed the above amounts.

## What Are Deductible Sources of Income?

Prudential will deduct from your gross disability payment the following deductible sources of income:

1. The amount that you receive or are entitled to receive as loss of time benefits under:

   (a) a workers' compensation law;

   (b) an occupational disease law; or

   (c) any other *act* or *law* with similar intent.

2. The amount that you receive or are entitled to receive as loss of time disability income payments under any:

   (a) state compulsory benefit act or law;

   (b) automobile liability insurance policy;

   (c) other group insurance plan; or

   (d) governmental retirement system as the result of your job with your Employer.

3. The amount that you, your spouse and children receive or are entitled to receive as loss of time disability payments because of your disability under:

   (a) the United States Social Security Act;

   (b) the Railroad Retirement Act;

   (c) the Canada Pension Plan;

   (d) the Quebec Pension Plan; or

   (e) any similar *plan* or *act*.

   Amounts paid to your former spouse or to your children living with such spouse will not be included.

4. The amount that you receive as retirement payments or the amount your spouse and children receive as retirement payments because you are receiving payments under:

   (a) the United States Social Security Act;

   (b) the Railroad Retirement Act;

   (c) the Canada Pension Plan;

   (d) the Quebec Pension Plan; or

   (e) any similar plan or act.

   Benefits paid to your former spouse or to your children living with such spouse will not be included.

5.  The amount that you:

    (a)  receive as disability payments under your Employer's ***retirement plan***;

    (b)  voluntarily elect to receive as retirement or early retirement payments under your Employer's retirement plan; or

    (c)  receive as retirement payments when you reach normal retirement age, as defined in your Employer's retirement plan.

    Disability payments under a retirement plan will be those benefits which are paid due to disability and do not reduce the retirement benefits which would have been paid if the disability had not occurred.

    Retirement payments will be those benefits which are paid based on your Employer's contribution to the retirement plan.  Disability benefits which reduce the retirement benefits under the plan will also be considered as a retirement benefit.

    Amounts received do not include amounts rolled over or transferred to any eligible retirement plan.  Prudential will use the definition of eligible retirement plan as defined in Section 402 of the Internal Revenue Code including any future amendments which affect the definition.

6.  The amount you receive under the maritime doctrine of maintenance, wages and cure.  This includes only the "wages" part of such benefits.

7.  The amount that you receive, due to your disability, from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise.

8.  The amount that you receive from a partnership, proprietorship or any similar draws.

With the exception of retirement payments, or amounts that you receive from a partnership, proprietorship or any similar draws, Prudential will only subtract deductible sources of income which are payable as a result of the same disability.

We will not reduce your payment by your Social Security income if your disability begins after age 65 and you were already receiving Social Security retirement payments.

***Law, plan or act*** means the original enactment of the law, plan or act and all amendments.

***Retirement plan*** means a defined contribution plan or defined benefit plan.  These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

## What Are Not Deductible Sources of Income?

Prudential will not deduct from your gross disability payment income you receive from, but not limited to, the following sources:

*  401(k) plans;

*  profit sharing plans;

*  thrift plans;

- tax sheltered annuities;

- stock ownership plans;

- non-qualified plans of deferred compensation;

- pension plans for partners;

- military pension and disability income plans;

- credit disability insurance;

- franchise disability income plans;

- a retirement plan from another Employer;

- individual retirement accounts (IRA).

## What If Subtracting Deductible Sources of Income Results in a Zero Benefit? (Minimum Benefit)

The minimum monthly payment is $100.00.

Prudential may apply this amount toward an outstanding overpayment.

## What Happens When You Receive a Cost of Living Increase from Deductible Sources of Income?

Once Prudential has subtracted any deductible source of income from your gross disability payment, Prudential will not further reduce your payment due to a cost of living increase from that source.

## What If Prudential Determines that You May Qualify for Deductible Income Benefits?

If we determine that you may qualify for benefits under item 1, 2 or 3 in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amount if such benefits have not been awarded.

However, we will NOT reduce your payment by the estimated amount under item 1, 2 or 3 in the deductible sources of income section if you:

- apply for the benefits;

- appeal any denial to all administrative levels Prudential feels are necessary; and

- sign Prudential's Reimbursement Agreement form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or

- that benefits have been denied and all appeals Prudential feels are necessary have been completed.  In this case, a lump sum refund of the estimated amount will be made to you.

## What Happens If You Receive a Lump Sum Payment?

If you receive a lump sum payment from any deductible source of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given.  If no time period is stated, we will use a reasonable one.

## How Long Will Prudential Continue to Send You Payments?

Prudential will send you a payment each month up to the *maximum period of payment*.  Your maximum period of payment is:

| Your Age on Date Disability Begins | Your Maximum Benefit Duration |
|---|---|
| Under age 61 | To your normal retirement age*, but not less than 60 months |
| Age 61 | To your normal retirement age*, but not less than 48 months |
| Age 62 | To your normal retirement age*, but not less than 42 months |
| Age 63 | To your normal retirement age*, but not less than 36 months |
| Age 64 | To your normal retirement age*, but not less than 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

**\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.**

We will stop sending you payments and your claim will end on the earliest of the following:

1. During the first 24 months of payments, when you are able to work in your regular occupation on a *part-time basis* but you choose not to; after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to.

2. The end of the maximum period of payment.

3. The date you are no longer disabled under the terms of the plan.

4. The date you fail to submit proof of continuing disability satisfactory to Prudential.

5. The date your disability earnings exceed the amount allowable under the plan.

6. The date you die.

7. The date you decline to participate in a rehabilitation program that Prudential considers appropriate for your situation and that is approved by your doctor.

*Maximum period of payment* means the longest period of time Prudential will make payments to you for any one period of disability.

**Part-time basis** means the ability to work and earn 20% or more of your indexed monthly earnings.

## What Disabilities Have a Limited Pay Period Under Your Plan?

Disabilities due to a sickness or injury which, as determined by Prudential, are primarily based on **self-reported symptoms** have a limited pay period during your lifetime.

Disabilities which, as determined by Prudential, are due in whole or part to **mental illness** also have a limited pay period during your lifetime.

The limited pay period for self-reported symptoms and mental illness combined is 24 months during your lifetime.

Prudential will continue to send you payments for disabilities due in whole or part to mental illness beyond the 24 month period if you meet one or both of these conditions:

1. If you are **confined** to a **hospital or institution** at the end of the 24 month period, Prudential will continue to send you payments during your **confinement**.

   If you are still disabled when you are discharged, Prudential will send you payments for a recovery period of up to 90 days.

   If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Prudential will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2. In addition to item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Prudential will send payments during the length of the confinement.

Prudential will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Prudential will not apply the mental illness limitation to dementia if it is a result of:

- stroke;
- trauma;
- viral infection;
- Alzheimer's disease; or
- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

**Self-reported symptoms** means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

D 000205

*Mental illness* means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive or bipolar illness, anxiety, somatization, substance related disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Confined or confinement* for this section means a hospital stay of at least 8 hours per day.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

## What Disabilities Are Not Covered Under Your Plan?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:

- intentionally self-inflicted injuries;

- active participation in a riot; or

- commission of a crime for which you have been convicted under state or federal law.

Your plan does not cover a disability which:

- begins within 12 months of the date your coverage under the plan becomes effective; and

- is due to a pre-existing condition.

Your plan does not cover a disability due to war, declared or undeclared, or any act of war.

Prudential will not make a payment for any period of disability during which you are incarcerated as a result of a conviction.

## What Is a Pre-Existing Condition?

You have a pre-existing condition if:

1. You received medical treatment, consultation, care or services including diagnostic measures, took prescribed drugs or medicines, or followed treatment recommendation in the 3 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available; or

2. You had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available.

## How Does a Pre-Existing Condition Affect an Increase in Your Benefits?

If there is an increase in your benefits due to an amendment of the plan; or your enrollment in another plan option, a benefit limit will apply if your disability is due to a pre-existing condition.

You will be limited to the benefits you had on the day before the increase if your disability begins during the 12 month period starting with the date the increase in benefits would have been effective. The increase will not take effect until your disability ends.

## How Does the Pre-Existing Condition Work If You Were Covered Under Your Employer's Prior Plan?

Special rules apply to pre-existing conditions, if this long term disability plan replaces your Employer's prior plan and:

- you were covered by that plan on the day before this plan became effective; and

- you became covered under this plan within thirty-one days of its effective date.

The special rules are:

1. If the Employer's prior plan did not have a pre-existing condition exclusion or limitation, then a pre-existing condition will not be excluded or limited under this plan.

2. If the Employer's prior plan did have a pre-existing condition exclusion or limitation, then the limited time does not end after the first 12 months of coverage. Instead it will end on the date any equivalent limit would have ended under the Employer's prior plan.

3. If the change from your Employer's prior plan to this plan of coverage would result in an increase in your amount of benefits, the benefits for your disability that is due to a pre-existing sickness or injury will not increase. Instead the benefits are limited to the amount you had on the day before the plan change.

## What Happens If You Return to Work Full Time and Your Disability Occurs Again?

If you have a ***recurrent disability***, as determined by Prudential, we will treat your disability as part of your prior claim and you will not have to complete another elimination period if:

- you were continuously insured under this plan for the period between your prior claim and your current disability; and

- your recurrent disability occurs within 6 months of the end of your prior claim.

Your recurrent disability will be subject to the same terms of the plan as your prior claim. Any disability which occurs after 6 months from the date your prior claim ended will be treated as a new claim. The new claim will be subject to all of the plan provisions.

If you become covered under any other group long term disability plan, you will not be eligible for payments under the Prudential plan.

***Recurrent disability*** means a disability which is:

- caused by a worsening in your condition; and

- due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

# Long Term Disability Coverage

## OTHER BENEFIT FEATURES

### What Benefits Will be Provided to Your Family If You Die? (Survivor Benefit)

When Prudential receives proof that you have died, we will pay your *eligible survivor* a lump sum benefit equal to 6 months of your gross disability payment if, on the date of your death:

- your disability had continued for 180 or more consecutive days; and

- you were receiving or were entitled to receive payments under the plan.

If you have no eligible survivors, payment will be made to your estate.

However, we will first apply the survivor benefit to any overpayment which may exist on your claim.

*Eligible survivor* means your spouse, if living; otherwise, your children under age 25.

### What Insurance Is Available If You End Employment? (Conversion)

If you end employment with your Employer, your coverage under the plan will end. You may be eligible to purchase insurance under Prudential's group conversion policy. To be eligible, you must have been insured under your Employer's group plan for at least 12 consecutive months. We will consider the amount of time you were insured under the Prudential plan and the plan it replaced, if any.

You are not eligible to apply for coverage under Prudential's group conversion policy if:

- you are or become insured under another group long term disability plan within 31 days after your employment ends;

- you are disabled under the terms of the plan;

- you are age 70 or more when your employment ends;

- your coverage under the plan ends for any of the following reasons:

  -- the plan is canceled;

  -- the plan is changed to exclude the group of employees to which you belong;

  -- you are no longer in an eligible group;

  -- you retire;

D 000208

-- you fail to pay the required premium under this plan.

You must apply for insurance under the conversion policy and pay the first premium to Prudential within 31 days after the date your employment ends. Evidence of insurability will be required for certain higher amounts of monthly payments.

Prudential will determine the coverage you will have under the conversion policy. The conversion policy may not be the same coverage we offered you under your Employer's group plan. It may be any form of conversion plan that we then make available. The benefits will comply with any state laws or regulations that may apply.

Your amount of coverage under the conversion plan will not be more than your amount under this plan when your coverage ends. It may be lower than under this plan.

Your rates for the conversion plan will be based on Prudential's rate as it applies to the form and amount of insurance it provides, the premium period and your age at the time of conversion. Your premiums will not be due less often than quarterly, unless you agree to another frequency.

D 000209

# Long Term Disability Coverage

## CLAIM INFORMATION

### When Do You Notify Prudential of a Claim?

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner.  Written notice of a claim should be sent within 30 days after the date your disability begins.  However, you must send Prudential written proof of your claim no later than 90 days after your elimination period ends.  If it is not possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

The claim form is available from your Employer, or you can request a claim form from us.  If you do not receive the form from Prudential within 15 days of your request, send Prudential written proof of claim without waiting for the form.

You must notify us immediately when you return to work in any capacity.

### How Do You File a Claim?

You and your Employer must fill out your own section of the claim form and then give it to your attending doctor.  Your doctor should fill out his or her section of the form and send it directly to Prudential.

### What Information Is Needed as Proof of Your Claim?

Your proof of claim, provided at your expense, must show:

(1)  That you are under the ***regular care*** of a ***doctor***.

(2)  The appropriate documentation of your monthly earnings.

(3)  The date your disability began.

(4)  Appropriate documentation of the disabling disorder.

(5)  The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or gainful occupation.

(6)  The name and address of any hospital or institution where you received treatment, including all attending doctors.

(7)  The name and address of any doctor you have seen.

We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor.  This proof, provided at your expense, must be received within 30 days of a request by us.

In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information as part of your proof of claim, or proof of continuing disability.  Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted.

***Regular care*** means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

***Doctor*** means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including, but not limited to, you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

## Who Will Prudential Make Payments To?

Prudential will make payments to you.

## What Happens If Prudential Overpays Your Claim?

Prudential has the right to recover any overpayments due to:

- fraud;

- any error Prudential makes in processing a claim; and

- your receipt of deductible sources of income.

You must reimburse us in full. We will determine the method by which the repayment is to be made.

Prudential will not recover more money than the amount we paid you.

## What Are the Time Limits for Legal Proceedings?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

D 000211

## How Will Prudential Handle Insurance Fraud?

Prudential wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Prudential promises to focus on all means necessary to support fraud detection, investigation and prosecution.

In some jurisdictions, if you knowingly and with intent to defraud Prudential, file an application or a statement of claim containing any materially false information or conceal for the purpose of misleading, information concerning any fact material thereto, you commit a fraudulent insurance act, which is a crime and subjects you to criminal and civil penalties. These actions will result in denial or termination of your claim, and, where such laws apply, are subject to prosecution and punishment to the full extent under any applicable law. Prudential will pursue all appropriate legal remedies in the event of insurance fraud.

# Long Term Disability Coverage

## OTHER SERVICES

### How Can Prudential Help Your Employer Identify and Provide Worksite Modification?

A worksite modification might be what is needed to allow you to perform the material and substantial duties of your regular occupation with your Employer. One of our designated professionals will assist you and your Employer to identify a modification we agree is likely to help you remain at work or return to work. This agreement will be in writing and must be signed by you, your Employer and Prudential.

When this occurs, Prudential will reimburse your Employer for the cost of the modification up to the greater of:

- $1,000; or

- the equivalent of 2 months of your monthly benefit.

This benefit is available to you on a one time only basis.

### How Can Prudential's Rehabilitation Program Help You Return to Work?

Prudential has a rehabilitation program available. A rehabilitation program means a program designed to assist you to return to work.

As your file is reviewed, medical and vocational information will be analyzed to determine if rehabilitation services might help you return to work.

Once the initial review is completed by our rehabilitation program specialists working along with your doctor and other appropriate specialists, Prudential may elect to offer you and pay for a return to work program. If the return to work program is not developed by Prudential's rehabilitation program specialists, you must receive written approval from Prudential for the program before it begins.

The return to work program may include, but is not limited to, the following services:

- coordination with your Employer to assist you to return to work;

- evaluation of adaptive equipment to allow you to work;

- child care during your return-to-work program;

- vocational evaluation to determine how your disability may impact your employment options;

- job placement services;

- resume preparation;

D 000213

- job seeking skills training;

- retraining for a new occupation; or

- assistance with relocation that may be part of an approved return to work program.

If at any time, you decline to take part in or cooperate in a rehabilitation evaluation/assessment or program that Prudential feels is appropriate for your disability and that has been approved by your Doctor, we will cease paying your monthly benefit.

### How Can Prudential's Social Security Claimant Assistance Program Help You With Obtaining Social Security Disability Benefits?

Prudential can arrange for expert advice regarding your Social Security disability benefits claim and assist you with your application or appeal, if you are disabled under the plan.

Receiving Social Security disability benefits may enable:

- you to receive Medicare after 24 months of disability payments;

- you to protect your retirement benefits; and

- your family to be eligible for Social Security benefits.

We can assist you in obtaining Social Security disability benefits by:

- helping you find appropriate legal representation;

- obtaining medical and vocational evidence; and

- reimbursing pre-approved case management expenses.

D 000214

# Glossary

***Active employment*** means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. You must be working at least 30 hours per week.

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel.

Normal vacation is considered active employment.

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

***Confined or confinement*** for this section means a hospital stay of at least 8 hours per day.

***Contract Holder*** means the Employer to whom the Group Contract is issued.

***Deductible sources of income*** means income from deductible sources listed in the plan which you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

***Disability earnings*** means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible as explained in the plan. Salary continuance will not be included as disability earnings since it is not payment for work performed.

***Doctor*** means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including but not limited to you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

***Eligible survivor*** means your spouse, if living; otherwise, your children under age 25.

***Elimination period*** means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

***Employee*** means a person who is in active employment with the Employer for the minimum hours requirement.

***Employer*** means the Contract Holder, and includes any division, subsidiary or affiliate who is reported to Prudential in writing for inclusion under the Group Contract, provided that Prudential has approved such request.

***Employment waiting period*** means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan  The period must be agreed upon by the Employer and Prudential.

***Evidence of insurability*** means a statement of your medical history which Prudential will use to determine if you are approved for coverage.  Evidence of Insurability will be provided at your own expense.

***Gainful occupation*** means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 60% of your indexed monthly earnings within 12 months of your return to work.

***Gross disability payment*** means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

***Hospital or institution*** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

***Indexed monthly earnings*** means your monthly earnings adjusted on each July 1 provided you were disabled for all of the 12 months before that date.  Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index.  Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor.  Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

***Injury*** means a bodily injury that is the direct result of an accident and not related to any other cause.  Injury which occurs before you are covered under the plan will be treated as a sickness.  Disability must begin while you are covered under the plan.

***Insured*** means any person covered under a coverage.

***Law, plan or act*** means the original enactment of the law, plan or act and all amendments.

***Layoff or leave of absence*** means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement.  Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff.

***Material and substantial duties*** means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

***Maximum period of payment*** means the longest period of time Prudential will make payments to you for any one disability.

***Mental illness*** means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive, or bipolar illness, anxiety, somatization, substance related disorders, and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

***Monthly benefit*** means the total benefit amount for which an employee is insured under this plan subject to the maximum benefit.

***Monthly earnings*** means your gross monthly income from your Employer as defined in the plan.

***Monthly payment*** means your payment after any deductible sources of income have been subtracted from your gross disability payment.

***Part-time basis*** means the ability to work and earn 20% or more of your indexed monthly earnings.

***Payable claim*** means a claim for which Prudential is liable under the terms of the Group Contract.

***Plan*** means a line of coverage under the Group Contract.

***Pre-existing condition*** means:

- a condition for which you received medical treatment, consultation, care or services including diagnostic measures, took prescribed drugs or medicines or followed treatment recommendation for your condition during the given period of time as stated in the plan; or

- you had symptoms for which an ordinarily prudent person would have consulted a health care provider during the given period of time as stated in the plan.

***Recurrent disability*** means a disability which is:

- caused by a worsening in your condition; and

- due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

***Regular care*** means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

**Regular occupation** means the occupation you are routinely performing when your disability occurs. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

**Retirement plan** means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

**Self-reported symptoms** means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

**Sickness** means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

**We, us, and our** means The Prudential Insurance Company of America.

**You** means a person who is eligible for Prudential coverage.

**This ERISA Statement**

**is not part of the**

**Group Insurance Certificate.**

# ERISA STATEMENT

**Plan Benefits Provided by**

The Prudential Insurance Company of America
751 Broad Street
Newark, New Jersey  07102

This Group Contract underwritten by The Prudential Insurance Company of America provides insured benefits under your Employer's ERISA plan(s).  For all purposes of this Group Contract, the Employer/Policyholder acts on its own behalf or as an agent of its employees.  Under no circumstances will the Employer/Policyholder be deemed the agent of The Prudential Insurance Company of America, absent a written authorization of such status executed between the Employer/Policyholder and The Prudential Insurance Company of America.  Nothing in these documents shall, of themselves, be deemed to be such written execution.

The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits.  The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

**Claim Procedures**

**1.  Determination of Benefits**

Prudential shall notify you of the claim determination within 45 days of the receipt of your claim.  This period may be extended by 30 days if such an extension is necessary due to matters beyond the control of the plan.  A written notice of the extension, the reason for the extension and the date by which the plan expects to decide your claim, shall be furnished to you within the initial 45-day period.  This period may be extended for an additional 30 days beyond the original 30-day extension if necessary due to matters beyond the control of the plan.  A written notice of the additional extension, the reason for the additional extension and the date by which the plan expects to decide on your claim, shall be furnished to you within the first 30-day extension period if an additional extension of time is needed.  However, if a period of time is extended due to your failure to submit information necessary to decide the claim, the period for making the benefit determination by Prudential will be tolled (i.e., suspended) from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If your claim for benefits is denied, in whole or in part, you or your authorized representative will receive a written notice from Prudential of your denial.  The notice will be written in a manner calculated to be understood by you and shall include:

(a)  the specific reason(s) for the denial,

(b)  references to the specific plan provisions on which the benefit determination was based,

(c)  a description of any additional material or information necessary for you to perfect a claim and an explanation of why such information is necessary,

(d) a description of Prudential's appeals procedures and applicable time limits, including a statement of your right to bring a civil action under section 502(a) of ERISA following your appeals, and

(e) if an adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment for the determination will be provided free of charge upon request.

## 2. Appeals of Adverse Determination

If your claim for benefits is denied or if you do not receive a response to your claim within the appropriate time frame (in which case the claim for benefits is deemed to have been denied), you or your representative may appeal your denied claim in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

A full review of the information in the claim file and any new information submitted to support the appeal will be conducted by Prudential, utilizing individuals not involved in the initial benefit determination. This review will not afford any deference to the initial benefit determination.

Prudential shall make a determination on your claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to an additional 45 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date that Prudential expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled (i.e., suspended) from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

If the claim on appeal is denied in whole or in part, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include:

(a) the specific reason(s) for the adverse determination,

(b) references to the specific plan provisions on which the determination was based,

(c) a statement that you are entitled to receive upon request and free of charge reasonable access to, and make copies of, all records, documents and other information relevant to your benefit claim upon request,

(d) a description of Prudential's review procedures and applicable time limits,

(e) a statement that you have the right to obtain upon request and free of charge, a copy of internal rules or guidelines relied upon in making this determination, and

(f) a statement describing any appeals procedures offered by the plan, and your right to bring a civil suit under ERISA.

If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

If the appeal of your benefit claim is denied or if you do not receive a response to your appeal within the appropriate time frame (in which case the appeal is deemed to have been denied), you or your representative may make a second, voluntary appeal of your denial in writing to Prudential within 180 days of the receipt of the written notice of denial or 180 days from the date such claim is deemed denied. You may submit with your second appeal any written comments, documents, records and any other information relating to your claim. Upon your request, you will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge.

Prudential shall make a determination on your second claim appeal within 45 days of the receipt of your appeal request. This period may be extended by up to an additional 45 days if Prudential determines that special circumstances require an extension of time. A written notice of the extension, the reason for the extension and the date by which Prudential expects to render a decision shall be furnished to you within the initial 45-day period. However, if the period of time is extended due to your failure to submit information necessary to decide the appeal, the period for making the benefit determination will be tolled from the date on which the notification of the extension is sent to you until the date on which you respond to the request for additional information.

Your decision to submit a benefit dispute to this voluntary second level of appeal has no effect on your right to any other benefits under this plan. If you elect to initiate a lawsuit without submitting to a second level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies. If you elect to submit the dispute to the second level of appeal, the plan agrees that any statute of limitations or other defense based on timeliness is tolled during the time that the appeal is pending.

If the claim on appeal is denied in whole or in part for a second time, you will receive a written notification from Prudential of the denial. The notice will be written in a manner calculated to be understood by the applicant and shall include the same information that was included in the first adverse determination letter. If a decision on appeal is not furnished to you within the time frames mentioned above, the claim shall be deemed denied on appeal.

## Rights and Protections

As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

### Receive Information about Your Plan and Benefits

Examine, without charge, at the plan administrator's office and at other specified locations, such as worksites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The plan administrator may make a reasonable charge for the copies.

ERISA Statement (80629-LTD-II)

Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report.

**Prudent Actions by Plan Fiduciaries**

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions**

If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, DC 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

80629-LTD-II; Ed. 11-99

D 000225